**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Borteanu,<br><br>             Plaintiff,<br>vs.<br><br>Nikola Corporation, et al.,<br><br>             Defendants. | No. CV-20-01797-PHX-SPL<br><br>No. CV-20-01819-PHX-DLR (cons.)<br>No. CV-20-02123-PHX-JJT (cons.)<br>No. CV-20-02168-PHX-DLR (cons.)<br>No. CV-20-02237-PHX-DLR (cons.)<br>No. CV-20-02374-PHX-DWL (cons.)<br><br>**ORDER** |

On December 15, 2020, this Court issued an Order consolidating six cases and naming Angelo Baio as lead plaintiff pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Doc. 50). On July 23, 2021, the Ninth Circuit granted a petition for writ of mandamus to the extent it sought to vacate the December 2020 Order's appointment of Angelo Baio as lead plaintiff. *In re Mersho*, 6 F.4th 891 (9th Cir. 2021). The Ninth Circuit remanded to this Court to redetermine the lead plaintiff in a manner consistent with its opinion. (*Id.*).

Having reviewed the briefing submitted to the Court (Docs. 16, 17, 19, 24, 28, 30, 31, 34, 37, 39, 40, 41, 42, 46, 47, 48, 49) and pursuant to the Ninth Circuit's July 23, 2021 decision, this Court now issues the following ruling as to appointment of lead plaintiff.[1]

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

The Court also denies Angelo Baio's Motion for an Evidentiary Hearing (Doc. 77) because it would not assist the Court in determining the lead plaintiff in accordance with

## I. BACKGROUND

### A. Factual Background

This action concerns alleged violations of the Securities Exchange Act of 1934 ("SEA") (15 U.S.C. §§ 78a *et seq.*) by Defendants Nikola Corporation (comprised of merged companies VectoIQ and Nikola) and its officers, founder of Nikola and Executive Chairman Trevor R. Milton; former VectoIQ Chief Executive Officer and current Director Steve Girsky; former VectoIQ Chief Financial Officer Steve Shindler; Nikola CEO, President, and Director Mark A. Russell; and Nikola Chief Financial Officer Kim J. Brady (Doc. 5 at 3–4; CV-20-01819, Doc. 1 at 5; CV-20-02123, Doc. 1 at 7–9; CV-20-02168, Doc. 1 at 6–7; CV-20-02237, Doc. 1 at 5; CV-20-02374, Doc. 1 at 5).

Defendant Nikola Corporation is a publicly traded Delaware corporation with its headquarters in Arizona. (Doc. 5 at 3; CV-20-01819, Doc. 1 at 5; CV-20-02123, Doc. 1 at 7; CV-20-02168, Doc. 1 at 6; CV-20-02237, Doc. 1 at 2; CV-20-02374, Doc. 1 at 5). It designs and manufactures electric vehicles and their components. (Doc. 5 at 3; CV-20-01819, Doc. 1 at 2; CV-20-02123, Doc. 1 at 6–7; CV-20-02168, Doc. 1 at 7; CV-20-02237, Doc. 1 at 2; CV-20-02374, Doc. 1 at 6). Defendant Nikola Corporation is the result of a 2020 merger between Nikola and VectoIQ Acquisition Corporation. (Doc. 5 at 3; CV-20-01819, Doc. 1 at 2; CV-20-02123, Doc. 1 at 4; CV-20-02168, Doc. 1 at 8; CV-20-02374, Doc. 1 at 6). VectoIQ is a shell corporation formed for the purposes of acquiring other companies. (CV-20-01819, Doc. 1 at 6; CV-20-02123, Doc. 1 at 4). The companies announced the merger on March 3, 2020. (Doc. 5 at 5; CV-20-01819, Doc. 1 at 7; CV-20-02123, Doc. 1 at 13; CV-20-02168, Doc. 1 at 8). They filed the necessary documents with the Securities and Exchange Commission. (Doc. 5 at 7–14; CV-20-01819, Doc. 1 at 7–9; CV-20-02123, Doc. 1 at 17–26; CV-20-02168, Doc. 1 at 9–16; CV-20-02374, Doc. 1 at

---

the Ninth Circuit's opinion. *See United States v. Batiste*, 868 F.2d 1089, 1091 n.4 (9th Cir. 1989) (noting the "well-settled principle that a district court has broad discretion to manage its own calendar"); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.").

7,11). Nikola and VectorIQ finalized their merger on June 3, 2020, forming Nikola corporation. (Doc. 5 at 3). Throughout the process and after the merger was complete, Defendant Nikola Corporation, individual Defendants, and other Nikola employees shared press releases, other advertising materials, and promotional videos and images of Nikola products. (Doc. 5 at 14–17; CV-20-01819, Doc. 1 at 7–8; CV-20-02123, Doc. 1 at 17, 24–28; CV-20-02168, Doc. 1 at 7–9, 14–15, 20–21; CV-20-02374, Doc. 1 at 2, 6–7, 12–16).

After the merger was completed, Defendant Nikola Corporation's securities were publicly traded on the NASDAQ. (CV-20-01819, Doc. 1 at 2; CV-20-02168, Doc. 1 at 3; CV-20-02374, Doc. 1 at 7). Plaintiffs purchased Nikola Corporation securities at allegedly artificially inflated prices based on misrepresentations made by Defendants. (Doc. 5 at 3; CV-20-01819, Doc. 1 at 5; CV-20-02123, Doc. 1 at 7; CV-20-02168, Doc. 1 at 6; CV-20-02237, Doc. 1 at 2; CV-20-02374, Doc. 1 at 5). On September 10, 2020, non-party Hindenburg Research Group published a report describing apparent falsities in the statements made by founder Defendant Trevor Milton and advertising materials published by Nikola, VectorIQ, and Defendant Nikola Corporation. (Doc. 5 at 18–31; CV-20-01819, Doc. 1 at 16–20; CV-20-02123, Doc. 1 at 15, 27; CV-20-02168, Doc. 1 at 22–25; CV-20-02374, Doc. 1 at 3). On September 15, Hindenburg Research Group published a second report, accusing Defendant Nikola Corporation of Securities Fraud. (Doc. 5 at 31; CV-20-02168, Doc. 1 at 25–27). After these reports were publicized, the price of Defendant Nikola Corporation securities fell. (Doc. 5 at 31–36; CV-20-01819, Doc. 1 at 20; CV-20-02123, Doc. 1 at 27–28; CV-20-02168, Doc. 1 at 25–27; CV-20-02374, Doc. 1 at 4). Plaintiffs allege the fall in price caused them to lose great sums of money. (Doc. 5 at 36; CV-20-01819, Doc. 1 at 20; CV-20-02123, Doc. 1 at 28; CV-20-02168, Doc. 1 at 27; CV-20-02237, Doc. 1 at 6; CV-20-02374, Doc. 1 at 4). They seek relief under Sections 10(b) and 20(a) of the SEA, and Securities and Exchange Commission Rule 10b-5. 15 U.S.C. §§ 78j(b), 78t. (Doc. 5 at 39, 41; CV-20-01819, Doc. 1 at 24–25; CV-20-02123, Doc. 1 at 31, 33; CV-20-02168, Doc. 1 at 31–32; CV-20-02237, Doc. 1 at 15–17; CV-20-02374, Doc. 1 at 20–24). The Holzmacher Plaintiffs also assert a third claim for relief under Section 14(a)

of the SEA against Defendants Nikola Corporation and Steve Girsky. 15 U.S.C. § 78n-1(a)(1). (CV-20-02123, Doc. 1 at 33). Plaintiff Douglas Malo also brings a claim for a violation of California's unfair competition law against all Defendants. (CV-20-02237, Doc. 1 at 11–15).

The movants seeking to consolidate and appoint lead counsel also invested in Nikola Corporation stock, based on the promises made in the media by Defendant Milton and other Nikola employees, and lost great sums of money. (Docs. 17 at 6, 19 at 11, 20 at 9–10, 21 at 11, 24 at 7–8, 28 at 16, 30 at 11–12, 31 at 5).

### B. Procedural Background

Four related Complaints were filed in this Court. The first was filed by Plaintiff Daniel Borteanu on September 15, 2020. (Doc. 1). That same day, Plaintiff Borteanu also issued notice as is required by the PSLRA by publishing a press release on *Businesswire*. (Doc. 19-2). Plaintiff Borteanu later filed an Amended Complaint on September 21, 2020. (Doc. 5). The second complaint was filed by Plaintiff John Wojichowski on September 17, 2020. (CV-20-01819, Doc. 1). The third complaint was filed by Plaintiffs Albert Holzmacher, Michael Wood, and Tate Wood on November 1, 2020. (CV-20-02123, Doc. 1). Finally, the fourth complaint was filed by Plaintiff William Eves on November 10, 2020. (CV-20-02168, Doc. 1).

Two other related Complaints were transferred to this Court. The first was filed by Plaintiff Arab Salem in the Eastern District of New York on September 16, 2020. *Salem v. Nikola Corp.*, No. 20-cv-04354 (E.D.N.Y.). That Court granted a stipulation to transfer on November 24, 2020, and the case was transferred to this District on December 8, 2020. *Salem v. Nikola Corp.*, No. 20-CV-02374-PHX-DWL (D. Ariz.). The second was filed by Plaintiff Douglas Malo in the Eastern District of California on October 16, 2020. *Malo v. Nikola Corp.*, No. 20-cv-02168 (C.D. Cal.). That Court granted a stipulation to transfer on November 16, 2020, and the case was transferred to this District on November 20, 2020. *Malo v. Nikola Corp.*, No. 20-CV-02237-PHX-DLR (D. Ariz.). Both Salem and Malo assert the same causes of action under Sections 10(b) and 20(a) of the SEA, against the

same Defendants, though not all the individual Defendants were included in both Complaints. (CV-20-02237, Doc. 1 at 5, 15–17; CV-20-02374, Doc. 1 at 5, 20–24).

Six Motions to Appoint Lead Plaintiff were filed with this Court.[2] (Docs. 16, 19, 24, 28, 30, 31). In addition to consolidation of related actions, these movants sought to be named lead plaintiff and to have their attorneys appointed lead counsel. Two of the six, Shahab Sandhu and The Investor Group, filed notices of non-opposition, meaning they accept that they are not the most qualified to serve as lead plaintiff but would do so if the Court so needed. (Docs. 34 & 37). The other four movants are Angelo Baio (Doc. 16), Nayankumar Patel (Doc. 19), Nikola Investor Group II (Vincent Chau, Stanley Karcynski, George Mersho) (Doc. 24), and Mahjabin Dinyarian (Doc. 30).

On December 15, 2020, this Court issued an Order consolidating the six cases.[3] (Doc. 50). The Order also named Angelo Baio as Lead Plaintiff and approved Baio's choice of counsel. (Doc. 50). Following the Order, Nikola Investor Group II ("Group II") petitioned the Ninth Circuit for a writ of mandamus to vacate the Order. On July 23, 2021, the Ninth Circuit granted Group II's petition for a write of mandamus "to the extent it seeks to vacate the district court's order appointing Angelo Baio as lead plaintiff." *In re Mersho*, 6 F.4th at 903. The Ninth Circuit declined to instruct this Court to appoint Group II as lead plaintiff and instead remanded the case to this Court to redetermine the lead plaintiff in a manner consistent with the Ninth Circuit's opinion. *Id.*

The Court now takes the six Motions (Docs. 16, 19, 24, 28, 30, 31), three Responses (Docs. 39, 40, 41), two Notices of Non-opposition (Docs. 34 & 37), five Replies (Docs. 42, 46, 47, 48, 49), and the Ninth Circuit's opinion (Doc. 69) under review.

---

[2] Four other Motions to Appoint Lead Plaintiff were filed by Dennis Stacy (Doc. 20), Nikola Investor Group I (Doc. 21), T3 Trading Group LLC (Doc. 25), and Patrick Brostowin (Doc. 32). All four Motions were later withdrawn. (Docs. 35, 36, 38, 45). The Court omits these withdrawn Motions.

[3] The Ninth Circuit only addressed this Court's Order with respect to its appointment of lead plaintiff. (*See* Doc. 69). Therefore, the Order (Doc. 50) remains in effect to the extent it consolidated the six cases.

## II.    LEGAL STANDARDS

### A. Lead Plaintiff Appointment

The PSLRA provides the framework for selecting a lead plaintiff in a securities class action case. *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *2 (D. Ariz. Apr. 7, 2008). "The party who files the action must publicize its pendency, the proposed class period, and the nature of the claims." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)). "The publication must also inform potential class members that they have 60 days to come forward and move to be appointed lead plaintiff." *Id.* (citing § 78u-4(a)(3)(A)(ii)). If multiple class actions are brought "asserting substantially the same claims," publication is required only of the first plaintiff to file. § 78u-4(a)(3)(A)(ii). The statute expressly allows a "group of persons" to move for appointment. § 78u-4(a)(3)(B)(iii)(I). Once the 60-day window closes, the Court determines the lead plaintiff ("most adequate plaintiff"). § 78u–4(a)(3)(B)(i).

The PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice. . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§ 78u-4(a)(3)(B)(iii)(I); *Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689-PHX-DLR, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016). As to Rule 23, the typicality and adequacy requirements are the only requirements relevant to the selection of a lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "The test for typicality asks 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Cloudera, Inc. Sec. Litig.*, No. 19-cv-03221-LHK, 2019 WL 6842021, at *5 (N.D. Cal. Dec. 16, 2019) (citation omitted). "The

test for adequacy asks whether the class representative and counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

"If the would-be lead plaintiff establishes that it meets the Rule 23 requirements, other potential lead plaintiffs may try to rebut the presumption." *Tsirekidze*, 2008 WL 942273, at *2 (citing § 78u-4(a)(3)(B)(iii)(II)). The presumption "is rebuttable only by proof that the presumptively adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Lomingkit*, 2016 WL 3345514, at *2 (citing § 78u-4(a)(3)(B)(iii)(II)). "This perplexing statutory scheme suggests that the initial determination on typicality and adequacy should be a product of the court's independent judgment, and that arguments by members of the purported plaintiff class . . . should be considered only in the context of assessing whether the presumption has been rebutted." *Tsirekidze*, 2008 WL 942273, at *2 (internal quotations omitted). Potential lead plaintiffs are ranked in terms of their financial interest in the litigation, from greatest to least. *Id.* at *3. Courts then move down the line to determine whether the potential lead plaintiffs satisfy the Rule 23 requirements, until it finds one who does. *Cavanaugh*, 306 F.3d at 732.

### B. Lead Counsel Appointment

The PSLRA also provides guidelines for selecting lead counsel. It dictates that the appointed lead plaintiff designates the lead counsel. "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." § 78u–4(a)(3)(B)(v). Under this rule, the Court has the authority to reject the lead plaintiff's choice of counsel, but not the authority to select its own. *See Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 707–10 (9th Cir. 2009). In the event of a rejection by the Court, the appointed lead plaintiff would simply put forth another option. *Id.*

///

///

## III. DISCUSSION

### A. Lead Plaintiff Appointment

In its December 2020 Order, this Court found that Group II timely filed a Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel in response to a notice. (Doc. 50 at 10). This Court also found that Group II had the largest financial interest because it calculated its damages at $6,010,333.00, which is millions higher than any other would-be lead plaintiff. (*Id.* at 9). The Ninth Circuit took no issue with either of these findings. *In re Mersho*, 6 F.4th at 896. Now on remand, this Court reaffirms both. Group II timely made a motion in response to a notice, and it has the largest financial interest in the relief sought by the class.

This Court also found that Group II "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" because it meets the typicality and adequacy requirements. (Doc. 50 at 10). As to typicality, it remains true that Group II's claims arise out of the same events as the six original Plaintiffs: Group II members bought Nikola stock at allegedly artificially inflated prices during the class period and lost money when the value of the stock dropped after the fraud allegations against Nikola came out. (Doc. 24 at 17, 19). The other movants, who suffered the same kind of loss, describe the same events in their motions to consolidate, to varying degrees of specificity. (Docs. 17 at 6, 19 at 11, 20 at 9–10, 21 at 11, 28 at 16, 30 at 11–12, 31 at 5). Again, the Ninth Circuit took no issue with this Court's typicality finding. *In re Mersho*, 6 F.4th at 896. This Court now reaffirms its finding that Group II's claims are typical of the class.

As to the adequacy requirement, this Court found that Group II was adequate because it has no conflicts with other members of the class, its losses are such that it has a significant interest in the outcome of the case, and its proposed counsel—Pomerantz LLP and Block & Leviton LLP—is highly qualified and will assist in vigorous prosecution. (Doc. 50 at 10). Having found Group II to be both typical and adequate—satisfying the Rule 23 requirements—this Court held that the presumption in favor of Group II was established. (*Id.*). At step three, however, this Court found that "it is not clear how the

members of [Group II] found each other, and courts generally prefer group members to have a prelitigation relationship." (*Id.* at 11). The absence of evidence concerning the members' prelitigation relationship gave the Court "misgivings" about Group II's cohesion and "its ability to control the litigation without undue influence from counsel." (*Id.* at 11–12). As a result, this Court found that the presumption had been rebutted and held that Group II would not be appointed lead plaintiff. (*Id.* at 12).

It was this final step—rebutting the presumption—that the Ninth Circuit took issue with. The Ninth Circuit found that by relying on the *absence* of evidence showing Group II's cohesion, this Court failed to give effect to the presumption, effectively leaving the burden on Group II to prove its adequacy. *In re Mersho*, 6 F.4th at 901 ("By penalizing [Group II] for not explaining how they found each other, the district court continued to place the burden on [Group II] to prove adequacy."). The burden "should have shifted to the competing movants to show inadequacy" and the presumption should have only been rebutted upon a showing of evidence casting "genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* Because of this error, the Ninth Circuit vacated this Court's order and remanded the case so this Court could "redetermine the lead plaintiff in a manner that is consistent with [the Ninth Circuit's] opinion." *Id.* at 903.

Now on remand, this Court begins by noting the Ninth Circuit's remark that this Court *could* have considered "the lack of a pre-litigation relationship as part of [its] adequacy analysis at step two," as opposed to where this Court considered it—at step three. *Id.* at 901 ("This is not to say that district courts are precluded from considering pre-litigation relationships or cohesion altogether. District courts have 'latitude' in what information they can consider to assess adequacy."). Accordingly, this Court will start by reassessing Group II's Rule 23 adequacy at step two, specifically focusing on its group members' cohesion, prelitigation relationships, and ability to prosecute the litigation and control counsel.

As noted, the PSLRA expressly allows a "group of persons" to move for

appointment. § 78u-4(a)(3)(B)(iii)(I). A group can serve as lead plaintiff, so long as it satisfies the same statutory requirements as any other movant. *Cloudera*, 2019 WL 6842021, at *6. This includes the Rule 23 adequacy requirement, which—as mentioned—means showing that "the group will 'fairly and adequately protect the interests of the class.'" *Id.* (citing Fed. R. Civ. P. 23(a)(4)). One helpful factor in determining whether a plaintiff group is adequate is the extent to which the group members are related or have a prelitigation relationship. The *lack* of a pre-litigation relationship is relevant to adequacy because "it may indicate that members may not work together well to vigorously prosecute the litigation or they might not be able to control counsel." *In re Mersho*, 6 F.4th at 901 (citing *Cloudera*, 2019 WL 6842021, at *6–8); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3rd Cir. 2001) ("If the court determines that the way in which a group . . . was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class.").

Courts disagree on what weight to give the absence of a prelitigation relationship when determining a plaintiff group's adequacy. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008) ("There is widespread disagreement amongst district courts regarding this issue."); *Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP, C10-480MJP, C10-559MJP, 2010 WL 3064427, at *4 (W.D. Wash. Aug. 2, 2010) ("[N]o other aspect of the appointment process has generated more controversy (and more inconsistent methodologies) than consideration of the adequacy of groups to serve as Lead Plaintiff."). Some courts "do not seem to inquire about the relationship between the parties that comprise a group" unless there is a concern about the plaintiff's ability to monitor counsel. *Eichenholtz*, 2008 WL 3925289, at *8 (listing cases). Other courts, however, "directly inquire into group composition." *Id.* (listing cases). The Ninth Circuit has never directly addressed the issue.

The leading case in this District, *Tsirekidze*, held that "courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the

sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *Tsirekidze*, 2008 WL 942273, at *3 (internal quotations omitted) (citing *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002)). The general concern with appointing such groups is that it encourages lawyers to "cobble together" otherwise unrelated investors to aggregate their losses and obtain lead plaintiff status. *Id.* From that point, the lawyers will control the entire litigation, presumably not in the best interests of the class. *Id.*; *see Sabbagh*, 2010 WL 3064427, at *4. This "defeats the purpose of choosing a lead plaintiff" and cuts against the purpose of the PLSRA. *Tsirekidze*, 2008 WL 942273, at *3.

While this concern is valid, caselaw indicates that just because group members are unrelated does not necessarily preclude the group from being appointed lead plaintiff. The relatedness between the group members, including the existence of a prelitigation relationship, is just one consideration in the analysis; the critical test is whether the group can fairly and adequately protect the interests of the class—and this test can be met even where the group members lack a prelitigation relationship. As the Third Circuit has explained:

> [W]e disagree with those courts that have held that the statute invariably precludes a group of "unrelated individuals" from serving as a lead plaintiff. . . . The statute contains no requirement mandating that the members of a proper group be "related" in some manner; it requires only that any such group "fairly and adequately protect the interests of the class." We do not intimate that the extent of the prior relationships and/or connection between the members of a movant group should not properly enter into the calculus of whether that group would "fairly and adequately protect the interests of the class," *but it is this test, not one of relatedness, with which courts should be concerned*.

*Cendant*, 264 F.3d at 266–67 (citations omitted) (emphasis added); *see also In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D. S.D. 2003) ("[A]s recognized by the District Court for the District of Columbia, '[t]he text of the PSLRA does not limit the composition of a group of persons to those only with a pre-litigation relationship, nor does the legislative history provide a sound enough foundation to support such a gloss.'" (citing *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216 (D.D.C. 1999))).

A review of decisions reveals that courts in the Ninth Circuit generally agree. For example, in *Borenstein v. Finova Group Inc.*, this District found "[t]he reasons for limiting the types of groups that can qualify as lead plaintiffs" to be "generally persuasive." *Borenstein v. Finova Grp. Inc.*, No. Civ. 00-619PHXSMM, Civ. 00-926PHXPGR, Civ. 00-978PHXSMM, Civ. 00-1010PHXEHC, Civ. 00-1100PHXROS, 2000 WL 34524743, at *7 (D. Ariz. Aug. 30, 2000). In determining whether two individual investors could be appointed lead plaintiff, however, the *Borenstein* court found that their education and experience as investors and their attested ability and willingness to take an active role outweighed the fact that "counsel may have initiated [their] joint motion [for lead plaintiff appointment]."[4] *Id.* And in *Ferreira v. Funko, Inc.*, the Central District of California recognized that many courts refuse "to aggregate the losses of a group of unrelated persons," but nonetheless appointed a three-member group as lead plaintiff after finding that (1) the group was not too large to represent the class adequately and (2) the group could capably perform the lead plaintiff function. *Ferreira v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020); *see also Eichenholtz*, 2008 WL 3925289, at *8 (finding that "a pre-existing relationship between entities that comprise a group is not required if the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation"); *Sabbagh*, 2010 WL 3064427, at *4–5 ("The trend in recent years . . . seems to be away from a blanket prohibition against 'lead plaintiff groups' with no pre-existing relationship."); *In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, C 01-1559 SI, C 01-1703 SI, C 01-1731 SI, C 01-1786 SI, 2001 WL 34012374, at *5 (N.D. Cal. Aug. 20, 2001) ("Requiring a pre-litigation relationship, though appealing in its simplicity, is too rigid; it is not the only way, or necessarily the best way, to ensure that the lead plaintiffs will 'actively represent the

---

[4] The *Borenstein* court ultimately denied lead plaintiff appointment to the two individual investors, but not because of their lack of relatedness or prelitigation relationship. *Borenstein*, 2000 WL 34524743, at *8. Instead, the court found that their objections to certain types of claims in the litigation "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected." *Id.*

interests of the purported class.'").

"The beneficial characteristics sought in a group with a pre-existing relationship—cohesiveness, an ability to direct litigation, and collective confluence with the interests of the class—can be found in unrelated groups on a case-by-case basis." *Versata*, 2001 WL 34012374, at *5. This Court—like others in this Circuit—opts for a case-by-case approach to the issue, as opposed to the more rigid relatedness requirement that *Tsirekidze* suggests.

Here, it is undisputed that the three members of Group II—Vincent Chau, Stanley Karczynski, and George Mersho—had no relationship prior to this litigation. They are individual investors who reside in Texas, New Jersey, and California, respectively. (Doc. 24-5 at 2). While all three are experienced investors who transacted in the Nikola securities that are the subject of this case, they did not know one another, had never worked with one another, and had no other connections prior to this litigation. *Id.* Counsel for Group II does not dispute this. (*See* Doc. 78 at 4 ("[T]he Joint Declaration . . . already makes clear that Mersho, Chau, and Karczynski did not know each other prior to agreeing that they would move as a group for lead plaintiff.")). Instead, it appears that they joined together solely for purposes of litigation. (Doc. 24-5 at 2). While *Tsirekidze*'s language—that courts "uniformly" refuse to appoint plaintiff groups of unrelated individuals, brought together to aggregate their claims—may indicate that this unrelatedness alone is enough to preclude a presumption in Group II's favor, this Court recognizes that the *true* test of adequacy is not solely a measure of relatedness but rather whether Group II would "fairly and adequately protect the interests of the class." *See In re Mersho*, 6 F.4th at 902 (citing *Cendant*, 264 F.3d at 266–67). Aside from relatedness and the existence of a prelitigation relationship, courts also consider the size of the group, the group's prosecution procedures as set out in their filings, the group's explanations of how it was formed and how its members would function, and the group's descriptions of the mechanisms "that its members and the proposed lead counsel have established to communicate with one another about the litigation." *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999); *see also In re Mersho*, 6 F.4th at 902 (citing *Cloudera*, 2019 WL 6842021, at *6).

After considering all these factors, this Court finds that Group II has shown sufficient evidence of its adequacy, despite the absence of a prelitigation relationship between its members. First, Group II is not so large that its size would impact its ability to adequately represent the class. *See Cendant*, 264 F.3d at 267 ("At some point, a group becomes too large for its members to operate effectively as a small unit."). "Courts in the Ninth Circuit often appoint lead plaintiffs consisting of three or more individual investors." *Ferreira*, 2020 WL 3246328, at *6; *see also Johnson v. OCZ Tech. Grp., Inc.*, No. CV 12-05265 RS, 2013 WL 75774, at *3 (N.D. Cal. Jan. 4, 2013) ("The OCZ Investor Group consists of four sophisticated investors. Small, cohesive groups similar to the OCZ Investor Group are routinely appointed as Lead Plaintiffs in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel."). Here, Group II consists of three members. All three are individual investors, not business entities. *Cf. Gemstar*, 209 F.R.D. at 450 (holding that plaintiff group had "too many members to manage effectively this litigation" where group consisted of three institutional investors and four individual investors); *Eichenholtz*, 2008 WL 3925289, at *9 (denying lead plaintiff status to group of five entities because group's declaration failed to explain how group would coordinate their efforts in litigation). This Court finds that Group II's makeup of three experienced, individual investors supports their argument for lead plaintiff status.

Second, Group II has adequately set out its prosecution procedures and communication mechanisms in its Joint Declaration. This distinguishes the present case from *Tsirekidze*, as well as from other cases in which courts have denied lead plaintiff status to groups. In *Tsirekidze*, for example, the plaintiff group provided "no suggestion how they plan to work together as a cohesive unit." *Tsirekidze*, 2008 WL 942273, at *4. As far as the court could tell, "each individual [had] so far participated only to the extent of signing his name onto a boilerplate certification in support of application of lead plaintiff." *Id.* (internal quotations omitted). The *Tsirekidze* court compared these facts to *In re Northwestern Corp. Sec. Litig.*, a case in which the District of South Dakota granted

lead plaintiff status to a group that had established "a plan for conducting litigation, including mechanisms to call meetings and resolve disagreements." *Id.* (citing to *Northwestern Corp.*, 299 F.Supp.2d at 1006). All told, because the plaintiff group in *Tsirekidze* had shown "no evidence of cohesiveness," the court denied it lead plaintiff status. *Id.*; *see also Cloudera*, 2019 WL 6842021, at *7 (denying lead plaintiff status to group that provided no information about how it would jointly mange the case or resolve disagreements, aside from describing one conference call); *Gemstar*, 209 F.R.D. at 450–51 (denying lead plaintiff status to group because it failed to explain how it would conduct meetings with so many members, provided no mechanism for emergency or short-notice meetings, and lacked decision-making process in situations where consensus was absent); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) (denying lead plaintiff status where group did not describe how or why group was formed, how its members would work together to manage litigation, whether members had ever communicated with one another or planned to do so in future, or even whether members knew of one another's existence).

Here, the Group II members signed a Joint Declaration that describes each member's experience, how they have communicated so far, their plans for future meetings, and a system for making decisions and overseeing counsel. (Doc. 24-5); *see also Ferreira*, 2020 WL 3246328, at *7 (finding plaintiff group capable of performing lead plaintiff function on basis of joint declaration which described members' experience, asserted they understood role and responsibilities of lead plaintiff, and provided process for decision-making and addressing disagreements). The Joint Declaration begins by providing descriptions of the members, including their occupation and their combined 65 years of experience in investing in securities markets. (Doc. 24-5 at 2). Next, the Joint Declaration describes a conference call that took place between the three individuals on November 10, 2020, prior to their coming together. (*Id.* at 2–3). During the call, the members discussed the benefits and detriments of proceeding as a group and of pursuing lead plaintiff status, what their roles and responsibilities would be if they were lead plaintiff, and how they

would make decisions during the prosecution of the case. (*Id.* at 3–4). The Joint Declaration explains that they agreed "to reach decisions via consensus in a collective and collaborative manner," but that if they could not reach a consensus, that decisions would be made through a majority vote. (*Id.* at 3). They also promised to be the decisionmakers, to actively participate in the action, and to oversee and direct the activities of their counsel. (*Id.* at 3–5). They agreed to work together and to have—at minimum—quarterly calls with their counsel to discuss the case. (*Id.* at 4). They also agreed to meet telephonically to discuss strategy "as events and circumstances in the litigation may warrant." (*Id.*). Finally, the Joint Declaration laid out the specific responsibilities of Group II's counsel and acknowledged that the members are the ones responsible for ensuring counsel follows through on those responsibilities. (*Id.* at 5).

All told, this Court reaffirms its finding that Group II meets the Rule 23 adequacy requirement, even with the additional consideration of its member's lack of a prelitigation relationship. As this Court found in its December 2020 Order, Group II has no conflicts with other members of the class, its losses are such that it has a significant interest in the outcome of the case, and its proposed counsel is highly qualified and will assist in vigorous prosecution. (Doc. 50 at 10). And as this Court finds today, the concerns about Group II members' lack of prelitigation relationship are quelled by the group's small size and its member's Joint Declaration, which evidences the cohesiveness of the members and their adequacy to serve as lead plaintiff in this litigation.

Having found that Group II meets the typicality and adequacy requirements of Federal Rule of Civil Procedure 23, the presumption in favor of Group II as most adequate plaintiff has been established. Moving to the third and final step, this Court must now consider whether the other lead plaintiff movants have rebutted this presumption. As noted above, the presumption is rebutted "only upon proof" by another movant that the presumptive lead plaintiff—here, Group II—either (1) will not fairly and adequately protect the interests of the class or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *In re Mersho*, 6 F.4th at 899 (citing § 78u-

4(a)(3)(B)(iii)(II)(aa)–(bb)).

No evidence has been put forth showing that Group II is subject to a unique defense that would render it inadequate. Thus, the presumption will be rebutted only if this Court finds that a competing movant has shown proof that Group II will not fairly and adequately protect the interests of the class. Two other lead plaintiff movants, Angelo Baio and Nayankumar Patel, attempt to do so by arguing that 1) Nikola Investor Group II is a group of unrelated individuals brought together by counsel, 2) it has failed to explain why the grouping and four law firms are necessary, 3) its filings are full of errors that suggest the individuals are not involved and counsel is running the litigation, and 4) it has not shown it is a cohesive group and its members are geographically diverse and unconnected. (Docs. 39 at 10–11, 41 at 16–20).

The Court's adequacy analysis, above, addresses Baio and Patel's arguments that the unrelatedness and geographical separation of Group II's members renders Group II inadequate. Again, this Court finds that Group II has shown that it will fairly and adequately protect the interests of the class *even though* its members lack a prelitigation relationship. Thus, these arguments fail to rebut the presumption in Group II's favor. As to Baio and Patel's argument that Group II has failed to explain why its grouping and four law firms are necessary, this Court finds that Group II adequately explained the reasoning for their grouping and choice of counsel in the Joint Declaration. Chau, Karczynski, and Mersho explain that they decided to jointly move for lead plaintiff appointment because of the similarities in their investing experience and in their losses sustained related to this case. (Doc. 24-5 at 3–4). They each understood that they could have moved for lead plaintiff appointment individually but agreed to come together because they shared similar desires to oversee the litigation, their losses were comparable to one another, and they each believed that their appointment as a group would be beneficial to themselves individually and to the class as whole. (*Id.*). And while the competing movants raise issue with the fact that Group II lists four law firms in its pleadings, this Court is satisfied with Group II's selection of only two of them to serve as co-lead counsel in this case. Finally, this Court

finds that Group II's filing errors and misspellings—which Baio and Patel point to as evidence that counsel is running the show and that Chau, Karczynski, and Mersho are not involved—is insufficient proof to overcome the presumption. Therefore, this Court finds no competing movant has rebutted the PSLRA presumption that Group II is the most adequate lead plaintiff. This Court selects Group II as lead plaintiff.

### B. Lead and Liaison Counsel Appointment

Having appointed Group II as lead plaintiff, the Court will now ensure Group II's choice of lead counsel is appropriate. Group II has selected Pomerantz LLP and Block & Leviton LLP as co-lead counsel and has submitted firm resumes for both. (Docs. 24-6 & 24-7). The resumes indicate that the firms each have extensive experience in securities class action cases and that they have the requisite resources to dedicate to this case. The Court is satisfied that Pomerantz LLP and Block & Leviton LLP will prosecute the action vigorously and competently. The Court approves Group II's choice of counsel.

### IV. CONCLUSION

The Court finds that Nikola Investor Group II is fit to serve as lead plaintiff pursuant to PSLRA requirements. The Court also approves of Group II's choice of counsel.

Therefore,

**IT IS ORDERED**:

1. That pursuant to the Ninth Circuit's July 23, 2021 decision (Doc. 69), the Court's December 15, 2020 Order (Doc. 50) is **vacated in part** as to the appointment of Angelo Baio as lead plaintiff and as to this Court's approval of Baio's selection of counsel. The Order (Doc. 50) **still stands** as to its consolidation of Case Nos. CV-20-01797-PHX-SPL, CV-20-01819-PHX-DLR, CV-20-02123-PHX-JJT, CV-20-02168-PHX-DLR, CV-20-02237-PHX-DLR, and CV-20-02374-PHX-DWL, with CV-20-01797-PHX-SPL being the lead case. The Order (Doc. 50) also **still stands** as to its order that all future pleadings and papers submitted for filing shall bear the following complete case number: **CV-20-01797-PHX-SPL** and shall be filed only in the lead case;

2. That Angelo Baio's Motion to Set an Evidentiary Hearing Regarding Lead Plaintiff Appointment (Doc. 77) is **denied**;

3. That Vincent Chau, Stanley Karczynski, and George Mersho's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel (Doc. 24) is **granted in part** as to the appointment of Nikola Investor Group II as lead plaintiff and to the approval of its counsel;

4. That the Motions filed by Angelo Baio; Nayankumar Patel; Dennis J. Stacy, Sr.; Nikola Investor Group I; T3 Trading Group LLC; The Investor Group; Mahjabin Dinyarian; Shahab Sandhu; and Patrick Brostowin (Docs. 16, 19, 20, 21, 25, 28, 30, 31, 32) are **denied as moot**.

Dated this 17th day of November, 2021.

Honorable Steven P. Logan
United States District Judge