**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Borteanu, et al., | No.  CV-20-01797-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Nikola Corporation, et al., | |
| Defendants. | |

Before the Court is Lead Plaintiff Nikola Investor Group II's ("Lead Plaintiff") Motion to Lift the PSLRA Stay of Discovery (Doc. 87) in which Lead Plaintiff requests an order lifting the stay of discovery under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(3)(B). The motion is fully briefed and ready for review. (Docs. 87, 91, 93, 100, 107 & 108).[1] For the following reasons, Lead Plaintiff's motion will be **denied**.[2]

I.      **BACKGROUND**

This is a private securities class action filed by Lead Plaintiff Nikola Investor Group II (comprised of Vincent Chau, Stanley Karcynski, and George Mersho) against Nikola Corporation and its officers (collectively, "Defendants"). Nikola Corporation is a

---

[1] In addition to the parties' briefing, the Court has also reviewed Lead Plaintiff's Notice of Supplemental Authority (Doc. 107) and Defendant's Response (Doc. 108).

[2] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

publicly traded Delaware corporation with its headquarters in Arizona. (Doc. 95 at 17). It designs and manufactures electric vehicles and their components. (*Id.* at 19–20). Lead Plaintiff's Consolidated Class Action Complaint (Doc. 95) was filed on behalf of all investors who purchased the common stock of Nikola Corporation between June 4, 2020 through February 25, 2021. (*Id.* at 5). Lead Plaintiff alleges that Defendants violated 10(b) and 20(a) of the Securities Exchange Act of 1934 by making numerous misrepresentations about "every aspect" of Nikola Corporation's business. (*Id.* at 5–6). These misrepresentations inflated the company's stock value. (*Id.* at 6). When the falsity of the misrepresentations came to light, the company's stock value dropped dramatically, causing significant losses and damages for the plaintiff class members. (*Id.* at 14–16).

Defendants are or have been under investigation or inquiry by several regulatory and investigatory entities, including the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ"). (Doc. 87 at 6–7). According to Lead Plaintiffs, the related cases and investigations include the following:

(i) an SEC investigation concerning Defendants;

(ii) an enforcement action filed by the SEC against Defendant Trevor Milton;

(iii) a criminal indictment filed by the DOJ—specifically, the United States Attorney's Office for the Southern District of New York—against Defendant Trevor Milton;

(iv) a grand jury subpoena issued by the New York County District Attorney's Office; and

(v) three shareholder derivative actions filed in the Districts of Delaware and Arizona

(collectively, "Related Actions"). (Doc. 87 at 6–7, 10–14). In cooperating with these Related Actions, Defendants have already disclosed various discovery materials. (*Id.*).

Lead Plaintiff now files this Motion to Lift Stay in which Lead Plaintiff requests a partial lift of the discovery stay imposed by the PSLRA. The discovery stay applies to private claims alleging securities fraud and went into effect automatically when Defendants

filed their motions to dismiss (Docs. 111 & 112, filed April 8, 2022).[3] Lead Plaintiff seeks a partial lift of the stay so that it may obtain "documents already produced and transcripts of depositions already taken in the Related Actions." (Doc. 87 at 7). Specifically, Lead Plaintiff seeks documents relating to the company's: (i) capability and manufacturability of its purported fleet of FCEV/BEV vehicles; (ii) professed manufacture of component parts for those vehicles in-house; (iii) capacity and costs to produce hydrogen; and (iv) financial, technological, and operational profile. (*Id.* at 16–17).

## II.   **LEGAL STANDARD**

"The PSLRA was enacted in 1995 'in response to several perceived abuses in securities litigation, including discovery abuses.'" *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014) (quoting *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 189 F.3d 909, 911 (9th Cir. 1999)). "The PSLRA creates heightened pleading requirements for private securities fraud actions." *Id.* (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054–55 (9th Cir. 2008)).

---

[3] Lead Plaintiff filed this Motion to Lift Stay (Doc. 87) on December 17, 2021— *prior to* filing its Amended Complaint (Doc. 95) and necessarily before any motion to dismiss was "pending." Under the terms of the PSLRA's stay provision, the discovery stay is in effect only "*during the pendency* of any motion to dismiss." § 78u-4(b)(3)(B) (emphasis added). Thus, the discovery stay was not in effect until Defendants' motions to dismiss (Docs. 111 & 112) were filed on April 8, 2022. *See Petrie*, 761 F.3d at 968, n.10 ("Most district courts that have directly addressed the question have recognized that a PSLRA discovery stay arises automatically, without the need for judicial declaration, *upon the filing of a dispositive motion*."); *but see SG Cowen*, 189 F.3d at 912–13 (noting that stay provision "clearly contemplates that discovery should be permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint*" and thereby implying that stay begins at filing of complaint, not at filing of motion to dismiss).

While Defendants make no argument on this matter, the Court notes that Lead Plaintiff's Motion to Lift Stay may have been premature. Nevertheless, because a discovery stay is *now* undoubtedly in effect, the Court will decide this Motion without considering the significance of its premature filing. *See In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048-REB-KLM et al., 2009 WL 3346611, at *1, n.1 (D. Colo. Oct. 14, 2009) ("Because a motion to dismiss has been filed, the Court need not decide whether Plaintiff's Motion was filed prematurely. The Court is satisfied that because a motion to dismiss is currently pending, Plaintiff's Motion is timely.").

Additionally, in any private action under the PSLRA, a stay of "all discovery and other proceedings" is imposed during the pendency of any motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B). The discovery stay provision "contemplates that discovery should be permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint*." *SG Cowen*, 189 F.3d at 912–13 (emphasis in original) (citation and internal quotations omitted). The purpose of the mandatory discovery stay is two-fold. First, the stay prevents the unnecessary imposition of discovery costs on defendants. *Id.* at 911 (citation omitted). "As the House and Senate managers further noted in their Joint Explanatory Statement of the Committee of Conference:

> The cost of discovery often forces innocent parties to settle frivolous securities class actions. According to the general counsel of an investment bank, "discovery costs account for roughly 80% of total litigation costs in securities fraud cases." In addition, the threat that the time of key employees will be spent responding to discovery requests, including providing deposition testimony, often forces coercive settlements. . . .
>
> [Therefore,] courts must stay all discovery pending a ruling on a motion to dismiss, unless exceptional circumstances exist where particularized discovery is necessary to preserve evidence or to prevent undue prejudice to a party. For example, the terminal illness of an important witness might require the deposition of the witness prior to the ruling on the motion to dismiss.

*Id.* at 911–12 (quoting H.R. Rep. No. 104-369, at 37 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 736). Second, the stay ensures "that securities fraud complaints 'stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed.'" *AGA S'holders, LLC v. CSK Auto, Inc.*, No. CV-07-0062-PHX-DGC, 2007 WL 1101264, at *4 (D. Ariz. Apr. 12, 2007) (quoting *Medhekar v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996)). "Congress enacted the mandatory stay of discovery, in part, to prevent plaintiffs from filing frivolous lawsuits and using it as a vehicle . . . to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint." *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1104 (C.D. Cal. 2007) (citation and internal quotations omitted).

The stay provision provides two exceptions where the stay may be lifted, and *particularized* discovery may be allowed: (i) where the discovery is necessary to preserve evidence; and (ii) where the discovery is necessary to prevent undue prejudice to the party requesting it. § 78u-4(b)(3)(B). Here, Lead Plaintiff does not argue that a lift of the stay is necessary to preserve evidence; instead, Lead Plaintiff relies only on the latter exception—that a lift of the stay is necessary to prevent undue prejudice.

### III.   **DISCUSSION**

Lead Plaintiff argues that a lift of the PSLRA stay is appropriate because (i) the requested discovery is particularized, (ii) it is necessary to prevent undue prejudice to Lead Plaintiff, (iii) Defendants will not be unduly burdened, and (iv) the purpose of the PSLRA will not otherwise be frustrated. (Doc. 87 at 15–21). *Even assuming* that Lead Plaintiff's discovery request is sufficiently particularized, this Court cannot find that a lift of the stay is "necessary to prevent undue prejudice." Therefore, the Court must reject Lead Plaintiff's Motion to Lift Stay.[4]

The Ninth Circuit has never clearly addressed what constitutes "undue prejudice"

---

[4] This Court acknowledges Lead Plaintiff's arguments that a lift of the stay will not burden Defendants or frustrate the PSLRA's purposes. Even if both assertions are true, however, this Court's analysis does not change "because, based on the express statutory language of the PSLRA, the only relevant inquiry . . . is whether Plaintiffs will be unduly prejudiced by the discovery stay." *Avila v. LifeLock, Inc.*, No. CV-15-01398-PHX-SRB, 2016 WL 7799624, at *2 (D. Ariz. Apr. 22, 2016) (citing § 78u-4(b)(3)(B)); *see also Brown v. Ambow Educ. Holding Ltd.*, No. CV 12-5062 PSG (AJWx), 2014 WL 12487666, at *2 (C.D. Cal. Feb. 6, 2014) ("To the extent Plaintiffs argue that lifting the discovery stay in this case 'will not frustrate the policies of the PSLRA and will not burden Defendants,' this contention is neither here nor there."); *Osher v. JNI Corp.*, No. 01-0557 J(NLS), 2003 WL 25797624, at *3 (S.D. Cal. May 21, 2003) (noting that "the fact that Defendants will not be subjected to great expense . . . is insufficient by itself to justify lifting the discovery stay" and that "neither exception to the automatic discovery stay focus on the burden to the defendants; rather, the statute provides that discovery stay may be lifted if the *plaintiffs* need to preserve evidence or the *plaintiffs* will be unduly prejudiced"); *380544 Can., Inc. v. Aspen Tech., Inc.*, No. 07 Civ. 1204(JFK), 2007 WL 2049738, at *2 (S.D.N.Y. July 18, 2007) ("According to express statutory language, the PSLRA's discovery stay may be lifted *only if* a court finds that doing so is necessary to preserve evidence or prevent undue prejudice." (emphasis added)).

in the PSLRA discovery stay context, and there are admittedly some inconsistencies among the district courts in applying the undue prejudice exception.[5] Namely, courts have somewhat varied in their response to the argument made by Lead Plaintiff here—that undue prejudice exists where discovery has already been produced by the defendant in parallel, related investigations and litigations. *Compare, e.g.*, *Turocy v. El Pollo Loco*, No. SA CV 15-1343-DOC (KESx), 2017 WL 2495172, at *1–2 (C.D. Cal. May 10, 2017) (lifting stay after finding undue prejudice where plaintiff was "disadvantaged in pursuing litigation and settlement without discovery of the documents already made available to . . . plaintiffs [in a separate, related case]") *with In re Rambus, Inc. Sec. Litig.*, No. C 06-4346 JF (HRL), 2007 WL 1430047, at *2 (N.D. Cal. May 14, 2007) (rejecting argument that plaintiffs would be unduly prejudiced if they were only parties without access to the documents because argument "appear[ed] to be contrary to . . . Ninth Circuit authority").

However, after reviewing the relevant caselaw, this Court finds that—at least among courts in the Ninth Circuit—the consensus view is that a plaintiff is *not* unduly prejudiced just because the discovery sought has already been produced in parallel investigations or litigations. In so finding, this Court aligns with its own previous holding in *Avila*, the only

---

[5] In *SG Cowen*, the Ninth Circuit acknowledged—but did *not* explicitly adopt—a test used by the district court to determine whether the plaintiff had demonstrated undue prejudice. 189 F.3d at 912. The test requires the plaintiff to establish: (1) "specific facts which . . . give rise to a strong and credible suspicion that a defendant may be liable" and (2) "a reasonable probability that such defendant is likely to avoid liability absent discovery." *Id.* Once this two-part showing is made, the plaintiff must "show that the requested discovery is sufficiently limited and particularized that permitting the discovery will not defeat the express intent of the Reform Act by placing an undue legal and economic burden on the defendant." *Id.*

Even assuming this test applied, Lead Plaintiff here fails to meet the threshold, two-part showing. Lead Plaintiff arguably satisfies the first prong when he refers to this case as "one of the most publicized, egregious cases of securities fraud in recent history" and notes that Defendant has "already admitted" to the misrepresentations in the Related Actions. (Doc. 100 at 7). Lead Plaintiff does not, however, make any attempt to satisfy the second prong—that is, to demonstrate "a reasonable probability" that Defendants would avoid liability if the discovery stay is not lifted.

case in which this District has previously addressed the issue.[6] *See Avila v. LifeLock, Inc.*, No. CV-15-01398-PHX-SRB, 2016 WL 7799624, at *1–2 (D. Ariz. Apr. 22, 2016). In that case, the plaintiffs made a very similar argument to that made by Lead Plaintiff here:

> Plaintiffs argue that, because the related actions from which they seek discovery have settled or are settling, they will be put at a "strategic disadvantage in relation to the other parties" and are "unable 'to make informed decisions about their litigation [and settlement] strategy in this rapidly shifting landscape.'"

*Id.* at *2. In rejecting this argument, this Court found that "[m]any district courts in the Ninth Circuit have concluded . . . that the fact a defendant has produced documents to a governmental agency or other private parties in related lawsuits is, by itself, insufficient to constitute undue prejudice." *Id.* (citations omitted).[7] Therefore because the plaintiffs had "only summarily argued that they [would] be unduly prejudiced without access to the discovery Defendants produced in related lawsuits," this Court concluded that they had "failed to demonstrate they [would] be unduly prejudiced by the mandatory stay." *Id.*

///

---

[6] The Court notes that Lead Plaintiff fails to mention, let alone distinguish, this Court's previous holding in *Avila* in either its Motion (Doc. 87) or its Reply (Doc. 100). This is notable given that *Avila* is the only instance in which this Court has directly addressed the issue at hand—whether the fact that a defendant has produced discovery to other parties in parallel, related lawsuits is sufficient to constitute undue prejudice. Defendant, conversely, cited to *Avila* several times in its Response. (Doc. 91 at 3, 11, 12).

[7] *See also In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1180 n.29 (C.D. Cal. 2008) ("[T]he fact that discovery has commenced in other proceedings is insufficient, standing alone, to constitute 'undue prejudice.' The Court emphasizes that there is no 'categorical exception' to the PSLRA discovery stay for documents that have already been provided to a governmental agency or other private parties."); *In re Am. Funds*, 493 F. Supp. 2d at 1106 (listing cases standing for proposition that PSLRA discovery stay does not prejudice plaintiffs "merely because the documents they seek have already been produced to a governmental agency"); *In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 WL 916883, at *2 (N.D. Cal. Apr. 3, 2008) ("Plaintiffs' argument that they need to be on an equal footing with other investigative agencies by obtaining documents already produced to those other agencies, without more, does not justify lifting the discovery stay.").

Here, Lead Plaintiff asserts that—if the stay is maintained and Lead Plaintiff is precluded from accessing the discovery documents already produced by Defendants in the Related Actions—the Related Actions will "further outpace" the instant case "both procedurally and in the discovery process." (Doc. 87 at 17 (quoting *Turocy*, 2017 WL 2495172, at *1)). As a result, Lead Plaintiff is left as "essentially . . . the only major interested party . . . without access to documents that . . . form the core" of the proceedings and is limited in its ability "to make informed decisions about . . . litigation strategy in a rapidly shifting landscape." (*Id.* at 18 (quoting *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)). Lead Plaintiff notes that the Related Actions "relate to the same or substantially similar set of facts," that the SEC investigation and civil action are already on the brink of settlement, and that Lead Plaintiff's lack of access to the same discovery puts it at a "competitive disadvantage" which negatively impacts its own ability to settle or otherwise successfully recover. (*Id.* at 19).

The Court finds Lead Plaintiff's argument to be no different than that made by the plaintiffs in *Avila*. That is, Lead Plaintiff cites to and quotes from a series of cases in which there were parallel, related litigations and in which the courts found undue prejudice, and then summarily argues that this Court should do the same. Critically, however, Lead Plaintiff fails to meaningfully explain *how* it will be unduly prejudiced, *why* it has a particular need for early discovery of this material, or *how* the specific documents and deposition testimony it seeks will actually prevent undue prejudice. Instead, Lead Plaintiff merely points out that Defendants have already disclosed discovery in the Related Actions, and that Lead Plaintiff's ability to make litigation and settlement decisions is therefore limited because it does not have access to the same discovery. Lead Plaintiff spends too much time quoting from favorable authority—for example, asserting that this case will be "further outpaced" by the Related Actions and that its decision-making abilities will be limited "in a rapidly shifting landscape"—and not enough time actually describing the undue prejudice that Lead Plaintiff faces because of the discovery stay. As just one example, Lead Plaintiff cites to the following excerpt from a case from the Southern

District of New York:

> If the stay remains in place, Lead Plaintiffs will be the only interested party without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape. . . .
>
> The Lead Plaintiffs must now determine their litigation strategy, principally whether or not to seek an early settlement to benefit the class without further expense. The requested discovery is essential to determine that strategy and to assist in formulating an appropriate settlement demand. The Lead Plaintiffs will suffer undue prejudice in having to defer such decisions.

(Doc. 87 at 18 (quoting *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183–84 (S.D.N.Y. 2004)). After quoting this excerpt, however, Lead Plaintiff does not follow up by asserting that similar undue prejudice will result here. While Lead Plaintiff notes that one of the Related Actions—the SEC civil action—is "in the midst of settling," Lead Plaintiff makes *no mention* of having to defer decisions *in this case* related to "seeking early settlement" or "formulating an appropriate settlement demand" in the event the discovery stay is not lifted. In fact, as Defendants point out, "there have been no settlement discussions or requests to discuss settlement" in this case at all. (Doc. 91 at 11, n.6). Therefore, it is unclear how the discovery stay will unduly prejudice Lead Plaintiff's ability to make settlement decisions. *See In re Lantronix, Inc. Sec. Litig.*, No. CV 02-03899 PA, 2003 WL 22462393, at *2 (N.D. Cal. Sept. 26, 2003) ("Although [Defendant] has apparently settled with plaintiffs in another action, Plaintiff here makes no showing of how the discovery materials sought are necessary at this moment to effectuate a settlement in this case."); *N.Y. State Tchr.'s Ret. Sys. v. Fremont Gen. Corp.*, No. CV 07-5756 FMC (FFMx), 2009 WL 10675265, at *3 (C.D. Cal. Nov. 5, 2009) ("[E]ven if [lead plaintiff's informational disadvantage theory] were viable, lead plaintiff has failed to demonstrate how the documents would help it in settlement discussions.").

In sum, the Court finds that Lead Plaintiff has failed to show that it will be unduly prejudiced by having to wait just a few more months to obtain the discovery at issue. After all, it is not as though Lead Plaintiff will be obstructed from obtaining the discovery

forever. The discovery stay is temporary and lasts only until Lead Plaintiff's Amended Consolidated Complaint survives the motion to dismiss stage. Assuming it does, Lead Plaintiff will have access to all the discovery material it seeks. In the meantime, Lead Plaintiff has simply not persuaded the Court that it will be unduly prejudiced by having to wait. Therefore, the Court rejects Lead Plaintiff's Motion to Lift Stay.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Lead Plaintiff's Motion to Lift the PSLRA Stay of Discovery (Doc. 87) is **denied**.

Dated this 21st day of April, 2022.

Honorable Steven P. Logan
United States District Judge