Gary Gotto (No. 007401)
**KELLER RORHBACK LLP**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone:   (602) 230-6322
Email: ggotto@kellerrohrback.com
*Liaison Counsel for Lead Plaintiffs Nikola Investor Group II and for the Class*

(*Lead Counsel for Lead Plaintiffs Nikola Investor Group II and for the Class appear on the Signature Page*)

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Borteanu, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Nikola Corporation, et al.,<br><br>Defendants. | No. CV-20-01797-PHX-SPL<br>No. CV-20-01819-PHX-DIR (cons.)<br>No. CV-20-02123-PHX-JJT (cons.)<br>No. CV-20-02168-PHX-DLR (cons.)<br>No. CV-20-02237-PHX-DLR (cons.)<br>No. CV-20-02374-PHX-DWL (cons.) |

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANT MILTON'S MOTION TO PARTIALLY DECERTIFY THE CLASS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II. FACTS AND PROCEDURAL BACKGROUND ............................................................. 1

III. ARGUMENT ............................................................................................................. 3

   A.  Milton's Motion Fails to Challenge Any of the Predicates for Class Certification, and Does Not Establish a Basis for Decertification ............................................................. 3

   B.  The Notice Plan is Timely and Will Provide Adequate Notice to the Class Regardless of Whether the Transfer List is Obtained Directly ............................................. 4

      1. The Notice Plan is Consistent with the Requirements of Rule 23 ......................... 4

      2. The Exchange of the Transfer List is a Ministerial Step to Facilitate Notice; It is Not Discovery ............................................................................................. 5

   C.  The Notice Plan Does Not Prejudice Any Party ......................................................... 8

      1. The Notice Plan is Timely ................................................................................... 8

      2. Milton's Misconduct Necessitated the Involvement of Nikola's Transfer Agent ............................................................................................... 10

   D.  In the Alternative, the Notice Plan Should be Approved with Modification ........... 11

IV. CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) ..................................................4

*Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998 (E.D. Cal. 2019) ..............................11

*Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995) ..........................................................3

*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147 (1982) ......................................................4

*Harris v. Palm Springs Alpine Estates, Inc.*, 339 F.2d 909 (9th Cir.1964) .......................3

*Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 3006465 (S.D. Cal. July 10, 2019)...4

*In re AST Rsch. Sec. Litig.*, 1994 WL 722888 (C.D. Cal. Nov. 8, 1994) ..........................3

*In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009) .....................3

*In re Nikola Corp., et al.*, (Bankr. D. Del. Sept. 5, 2025) ................................................10

*In re THQ Inc. Sec. Litig.*, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ........................3

*Lozano v. AT&T Wireless*, 2009 WL 10675797 (C.D. Cal. June 29, 2009) ......................4

*Magadia v. Wal-Mart Assocs., Inc.*, 319 F. Supp. 3d 1180 (N.D. Cal. 2018) ..................11

*Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942 (9th Cir. 2011) .....................................4

*Pardi v. Tricida, Inc.*, 2025 WL 1647162 (N.D. Cal. May 16, 2025) ...........................7, 9

*Perez v. First Am. Title Ins. Co.*, 2010 WL 4824082 (D. Ariz. Nov. 22, 2010).................7

*Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995) .........................................................11

*Todd v. STAAR Surgical Co.*, 2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ........................3

*Victorino v. FCA US LLC*, 2020 WL 2306609 (S.D. Cal. May 8, 2020) ..........................4

**Orders Concerning Class Notification**

*In re EQT Corporation Securities Litigation*,
    No. 2:19-cv-00754-RJC (W.D. Pa. Aug. 18, 2023) ..................................................8, 9

*In re Lyft Sec. Litig.*,
    No. 4:19-cv-02690-HSG, (N.D. Cal. Sept. 14, 2021) ..................................................6

*In re QuantumScape Sec. Class Action Litig.*,
    No. 3:21-cv-00058-WHO (N.D. Cal. Dec. 19, 2022) ...............................................8, 9

*In re The Honest Co., Inc. Sec. Litig.*,
    No. 21-cv-07405-MCS-PLA, (C.D. Cal. May 24, 2023) .............................................6

*In re Under Armour Sec. Litig.*,
   No. 1:17-cv-00388-RDB (D. Md. Sept. 29, 2022) .......................................................8, 9

*Karinski v. Stamps.com, Inc.*,
   No. 2:19-cv-01828-MWF-SK (C.D. Cal.) ........................................................................9

*Rieckborn v. Velti PLC*,
   No. 13-CV-03889-WHO (N.D. Cal. Aug. 19, 2014) .......................................................8

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................1, 3

Fed. R. Civ. P. 23(b)(3) .......................................................................................................1, 3

Fed. R. Civ. P. 23(c) ....................................................................................................6, 9, 11

**Other Authority**

Manual for Complex Litigation Third (1995) ........................................................................3

32 A.L.R. Fed. 102, §2[a] (1977) ........................................................................................7,8

Lead Plaintiffs and Certified Class Representatives George Mersho and Vincent Chau respectfully submit this memorandum in opposition to Defendant Trevor Milton's Motion to Partially Decertify the Class, ECF No. 291 (the "Motion").

## I.    INTRODUCTION

On January 6, 2025, following an analysis of the factors under Rule 23 of the Federal Rules of Civil Procedure, the Court certified this action as a class action. ECF No. 224. Milton now seeks to reverse that determination and asks for the partial decertification of the Class based entirely on his counsel's misunderstanding of a single provision in a draft stipulation sent to him for consideration. The Motion fails to offer even passing reference to the factors under Fed. R. Civ. P. 23(a) and (b) relevant to certification, offers assertions of fact unsupported by affidavit, novel arguments unmoored from any legal authority, and claims of prejudice based entirely on conjecture. Milton's arguments do not withstand scrutiny. The Motion should be denied.

## II.    FACTS AND PROCEDURAL BACKGROUND

On January 6, 2025, the Court certified this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. ECF No. 224. The Class consists of "all those who purchased or otherwise acquired Nikola Corporation securities during the period June 4, 2020 through February 25, 2021, and were damaged upon the revelation of the alleged corrective disclosures," subject to some exclusions. *Id*.

Later that month, Plaintiffs reached an agreement in principle to settle claims against Defendants Nikola Corporation, Mark Russell, Kim Brady, and Jeffrey Ubben (collectively with Plaintiffs, the "Settling Parties"). *See* ECF No. 248 at 1. The Settling Parties filed a joint notice informing the Court of the settlement in principle on March 10, 2025. ECF No. 243. Plaintiffs determined that it was in the best interest of the class to conserve resources by sending a single, consolidated notice to Class Members after the Court's review and potential preliminary approval of the settlement, as is custom in securities class actions. Block Decl. ¶3.

On March 28, 2025, however, Nikola's counsel informed Plaintiffs that, contrary to

the provisions of the term sheet, Nikola would not be filing a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking the bankruptcy court's approval of the settlement agreement or otherwise presenting or defending the settlement for approval by the bankruptcy court. *See* ECF No. 248. Absent such a filing, Plaintiffs and the Class would receive no consideration under the proposed settlement. *Id*. Plaintiffs undertook efforts to resurrect the settlement, including by seeking relief in the bankruptcy proceedings over the next several months, while simultaneously completing fact discovery in this action. Block Decl. ¶4.

Plaintiffs took steps to effectuate notice to the Class once the settlement's revival became unlikely, including through their careful selection of an experienced proposed administrator. Block Decl. ¶5. Plaintiffs sought proposals in a competitive bidding process for notice administration services. *Id*. Plaintiffs selected SCS as the proposed Notice Administrator in July 2025. *Id*. A draft stipulation concerning the content of a proposed notice and the process for the distribution of such notice was shared with counsel for all Parties in August. Block Decl. ¶6. Plaintiffs and Defendants Ubben, Russell and Brady reached agreement on the language of the proposed notice and the details of the notice plan in early September. Block Decl. ¶8.

Lead Counsel first learned of Milton's objection to the plan for obtaining the transfer list during a meet and confer on September 10, 2025—the day before Milton filed his motion to decertify the class. Block Decl. ¶10; ECF No. 291. Milton challenges neither the content of the proposed notice, nor the mechanisms for providing such notice to the vast majority of the Class. *Id*. Nor does he contest the propriety of this case having been certified as a class action. *Id.*

Plaintiffs filed their Motion for Approval of Proposed Notice to Class Members of the Pendency of Class Action on September 19, 2025. ECF No. 296. The proposed Notice Plan, which contemplates providing individualized notice to the vast majority of the class through the proposed Notice Administrator's proprietary means, is consistent with best practices in securities fraud class actions. *Id.*

### III.    ARGUMENT

#### A.    Milton's Motion Fails to Challenge *Any* of the Predicates for Class Certification, and Does Not Establish a Basis for Decertification

"The Ninth Circuit has recognized explicitly that 'class actions . . . have 'proved useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants . . . .'" *In re AST Rsch. Sec. Litig.*, 1994 WL 722888, at *2 (C.D. Cal. Nov. 8, 1994) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 339 F.2d 909, 913 (9th Cir.1964)). "As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) (quoting *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995)). Recognizing the value of class actions in the securities law context, courts in the Ninth Circuit "liberally construe" the requirements of Rule 23 in favor of certification. *See In re THQ Inc. Sec. Litig.*, 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) "Especially in the case of a class action alleging securities fraud, then, '[a]ny doubts a court has about class certification should be resolved in favor of certification.'" *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *3 (C.D. Cal. Jan. 5, 2017).

Here, the Court found that the Class met the prerequisites for certification under Fed. R. Civ. P. 23(a), that common questions of law and fact predominated, and that a class action was superior to other available methods for fairly and efficiently adjudicating the controversy under Fed. R. Civ. P. 23(b)(3). *See* Order Certifying Class, ECF No. 224. Once a class is certified, "the parties can be expected to rely on it and conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that in the normal course of events it will not be altered except for good cause." *Manual for Complex Litigation Third* (1995), § 30.18 at 223.

Milton's Motion fails to offer *any* argument as to why things have changed with respect to the Court's previous findings that the requirements for class certification under Fed. R. Civ. P. 23(a) or (b) were met. This defect is fatal. "Before a court revisits a prior certification decision, the moving party must show that significant factual or legal developments have

taken place." *Lozano v. AT&T Wireless*, 2009 WL 10675797, at *2 (C.D. Cal. June 29, 2009) (denying motion to decertify class and citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). The reason is simple: "The standard for class decertification is the same as class certification" and the focus is on whether "the requirements of Rules 23(a) and (b) are met." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 3006465, at *2 (S.D. Cal. July 10, 2019) (denying defendant's motion to decertify class and citing *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *see also Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 544 (C.D. Cal. 2012) (denying motion to decertify class). Accordingly, where a party seeks the decertification of an already certified class, he bears the burden of demonstrating that the requirements for certification under Fed. R. Civ. P. 23(a) and (b) are not satisfied. *See, e.g.*, *Victorino v. FCA US LLC*, 2020 WL 2306609, at *2 (S.D. Cal. May 8, 2020) (denying motion to decertify class); *see also Ocean Spray*, 2019 WL 3006465, at *2 (same).

As the movant seeking decertification of a class, Milton bears the burden of demonstrating that the elements of Rule 23(a) and (b) have not been established. Here, Milton makes no effort to satisfy his burden. By failing to "make this threshold showing" the Motion fails. *Lozano*, 2009 WL 10675797, at *2. Instead, Milton focuses entirely on the requirements for the distribution of notice under Fed. R. Civ. P. 23(c)—and these he misconstrues.

**B.   The Notice Plan is Timely and Will Provide Adequate Notice to the Class Regardless of Whether the Transfer List is Obtained Directly**

**1.   The Notice Plan is Consistent with the Requirements of Rule 23**

Milton's unfounded assertion that Plaintiffs "lack the ability to provide the required notice to the class" is wrong. Mot. 1. As set out in Plaintiffs' Motion for Approval of Proposed Notice to Class Members, ECF No. 296, the Notice Plan calls for a multi-tiered approach to reaching the Class. Plaintiffs' proposed Notice Administrator, Strategic Claims Services ("SCS" or the "Notice Administrator") has administered more than seven hundred class actions, including over five hundred and fifty securities class actions. Declaration of Paul Mulholland on Behalf of Strategic Claims Services Regarding Notice Administration ("Mulholland Decl."), ECF No. 296-5. In addition to using other reasonable efforts to identify

every investor who is a member of the Class, maintaining a website relating to the action, and distributing the proposed summary notice via *PR Newswire*, direct individualized notice will be provided to class members via SCS's proprietary database of approximately 2,400 banks, brokerages, and other financial institutions who serve as the nominees for the vast majority of the investors who are class members. Mulholland Decl. ¶¶4-10. To obtain contact information for investors at the beneficial purchaser level, SCS uses a procedure designed to obtain contact information for such beneficial purchases from the nominees that hold the securities on their behalf. *Id*. at ¶9.

"The vast majority of investors hold their securities through a brokerage firm, bank, institution, or other third-party nominee. . . [and] these potential class members are beneficial purchasers whose securities are held in 'street name', i.e., the securities are purchased and held by one of the Nominees on behalf of the beneficial purchaser." *Id*. at ¶8. Put another way, most ordinary investors who purchase a share of stock do so through a bank, brokerage, or other financial institution—and SCS has the means to provide individualized notice to such investors through its proprietary database and network of relationships. *Id*. at ¶¶9-12. In short, Plaintiffs have selected a proposed Notice Administrator with the expertise, developed methods, and relationships necessary to provide notice to the Class and they have the means to do so—Milton's unsupported claims to the contrary should be disregarded.

> **2.     The Exchange of the Transfer List is a Ministerial Step to Facilitate Notice; It is Not Discovery**

Public corporations either maintain their own records of stock transactions and investors or, more typically, retain a third-party "transfer agent" to do so. U.S. Securities and Exchange Commission, *Transfer Agents*, https://www.investor.gov/introduction-investing/investing-basics/glossary/transfer-agents (last visited Sept. 25, 2025). A transfer agent is a bank or other financial institution which maintains records of stock ownership and investors on behalf of the corporation. *Id*. The record of all stockholders is known as the "transfer list." Providing the transfer list to a notice administrator can typically be accomplished with "reasonable effort" (e.g., an email with attachment) and helps facilitate

"individual notice" to the class members on the list. Fed. R. Civ. P. 23(c)(2)(B); *see also* Mulholland Decl. ¶7.

Class notice is a mandatory requirement of Fed. R. Civ. P. 23(c)(2)(B). Unsurprisingly, as a matter of ordinary course in a securities class action, and often by stipulation, a corporate defendant will provide—through its transfer agent—a transfer list, in electronic form, containing the names and addresses of all persons known to have purchased or otherwise acquired the corporation's securities during the Class Period. *See* Mulholland Decl. ¶7; *see also In re The Honest Co., Inc. Sec. Litig.*, No. 21-cv-07405-MCS-AS (C.D. Cal. May 24, 2023) (Order Approving Notice of Pendency of Class Action ¶5, ECF No. 132) (ordering transfer agent to provide administrator with shareholder records); *In re Lyft Sec. Litig.*, No. 4:19-cv-02690-HSG (N.D. Cal. Sept. 14, 2021) (Stipulation and Order Regarding Notice to Class ¶6, ECF No. 203) (same). The notice administrator then provides individualized notice to all persons identified on the transfer list, in addition to using other means to identify investors who are class members. Mulholland Decl. ¶¶9–12.

As noted above, the transfer list is only directly relevant for the purposes of notice to the small number of investors whose identities are known to the corporate defendant directly; the vast majority of class members receive individual notice of securities class actions through their nominees, typically a brokerage firm, bank or other financial institution, or through other channels, like those described in the Notice Plan. *See* Mulholland Decl. ¶¶8-9. SCS estimates that less than 2% of the total population of class members are known to a stock transfer agent in a typical securities class action. *Id.* And often, that population is at least partially duplicative of class members that are likely to be reached through their nominees or the other channels outlined in the Notice Program. *Id.* ¶¶8-12 (describing procedure designed by SCS to obtain contact information of beneficial purchasers).

Given Nikola's bankruptcy and this Court's Order of March 5, 2025 staying the action with respect to Nikola Corporation, ECF No. 241, obtaining Nikola's transfer list (the "Transfer List") directly from Nikola's transfer agent, Continental Stock Transfer & Trust Company ("Continental") is the most direct and appropriate course. While the transmittal of

1  a transfer list is rarely controversial, the Notice Plan seeks authorization to direct a subpoena
2  to Continental for the limited purpose of obtaining the Transfer List, only if a subpoena should
3  be necessary. *See* ¶3 Proposed Order, ECF No. 296-6. If necessary, under the Proposed Order,
4  Plaintiffs will serve Continental no later than five (5) business days after the Court's approval
5  of the Notice. Similar notice plans are routinely approved in securities class actions. *See, e.g.*,
6  *Pardi v. Tricida, Inc.*, 2025 WL 1647162, at *9 (N.D. Cal. May 16, 2025) (approving
7  proposed notice plan which required former transfer agent for bankrupt corporate defendant
8  to provide notice administrator with a data file containing the names and address of record
9  holders of common stock during the class period).

10  Milton argues, without reference to applicable legal authority, that the potential
11  subpoena to Nikola's transfer agent called for in the Notice Plan constitutes belated discovery.
12  Not so. Milton relies heavily, indeed almost exclusively, on *Perez v. First Am. Title Ins. Co.*,
13  2010 WL 4824082 (D. Ariz. Nov. 22, 2010), which involved disputed refinancing rates in
14  connection with title insurance. The case did not involve securities fraud.  There, the
15  individualized closing records of insurance policy holders who were eligible for, but did not
16  receive, discounted rates were unavailable, and Plaintiffs sought to provide notice to the vast
17  majority of the class by publication. *Perez*, 2010 WL 4824082 at *1. Here, the reverse is true.
18  Plaintiffs have the means and propose to provide individual notice to the "vast majority" of
19  the class via SCS's proprietary methods including through its extensive database of nominees.
20  Mulholland Decl. ¶9. *Perez* does not apply.

21  The exchange of the transfer list is an anodyne part of the class notice process in
22  securities litigation that helps facilitate notice to the class—exactly the kind of "reasonable
23  effort" contemplated by Fed. R. Civ. P. 23(c)(2)(B). *See* Marcia G. Robeson, *What constitutes*
24  *'best notice practicable,' required by Rule 23(c)(2) of Federal Rules of Civil Procedure, in*
25  *class actions brought under Rule 23(b)(3)*, 32 A.L.R. Fed. 102, §2[a] (updated 2024,
26  originally published in 1977) (noting courts have approved steps to provide individual notice
27  "where some members of the class could be identified by a reasonable method, such as
28  customer or stockholder lists"). The exchange of the transfer list to effectuate notice is not

1  discovery and, unsurprisingly, the Motion cites no authority construing it as such. Courts
2  routinely approve notice plans in securities class actions that call for the transfer list to be
3  provided to a notice administrator *after the close of fact discovery* without controversy. *See,*
4  *e.g., In re QuantumScape Sec. Class Action Litig.*, No. 3:21-cv-00058-WHO (N.D. Cal. July
5  18, 2024) (Order Granting Preliminary Approval, ECF No. 215) (class notice approved nearly
6  seven months after the close of discovery and eighteen months after class certification); *In re*
7  *Under Armour Sec. Litig.*, No. 1:17-cv-00388-RDB (D. Md. Aug. 24, 2023) (Order, ECF No.
8  294) (ordering Under Armour to provide shareholder records to notice administrator nearly a
9  year after class certification and seven months after fact discovery without discussion); *In re*
10 *EQT Corporation Securities Litigation*, No. 2:19-cv-00754-RJC (W.D. Pa. Aug. 18, 2023)
11 (Order, ECF No. 305) (ordering exchange of transfer list a year after class certification and
12 six months after the close of fact discovery).
13     In short, obtaining the transfer list is an additional step to ensure notice is distributed
14 as widely as possible, and the process of obtaining it is a "standard" and uncontroversial step
15 in the process of distributing the best notice practicable. Mulholland Decl. ¶7. Similar notice
16 plans are approved routinely even in securities class actions where the corporate defendant
17 has gone bankrupt. *See Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO (N.D. Cal. Aug. 19,
18 2014) (Order Preliminarily Approving Partial Settlement and Providing for Notice, ECF No.
19 147) (requiring bankrupt entity's transfer agent to provide transfer list to notice administrator
20 to effectuate class notice). But even without access to the Transfer List, the Notice
21 Administrator will be able to provide notice of the pendency of this action to the Class, and
22 the Notice Plan would satisfy the requirements of Rule 23. Mulholland Decl. ¶¶9, 14.

23        **C.  The Notice Plan Does Not Prejudice Any Party**
24            **1.  The Notice Plan is Timely**
25     Milton argues that the timing of the proposed Notice Plan is the result of Plaintiffs'
26 lack of diligence—the opposite is true. As the docket reflects, because of potential settlement
27 with Defendants Nikola, Ubben, Russell and Brady, Plaintiffs sought to avoid needlessly
28 duplicative notice that would ultimately come at the expense of the class. *See* Fed. R. Civ. P.

23 Advisory Committee's Note to 2003 Amendment ("The court should consider the costs of notice in relation to the probable reach of inexpensive methods.") Two rounds of notice, a first informing class members that the litigation was ongoing and they had a right to opt-out, and subsequent notice outlining the details of the proposed settlement and a deadline for potential objections, would cost more than one. Rule 23(c)(2)(B) provides no timetable for class notice and it is common for plaintiffs in securities actions to await a potential settlement or even serve notice a year or more after class certification, so long as absent class members' due process rights are not affected in the interim. *See, e.g.*, *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828-MWF-SK (C.D. Cal.) (ECF Nos. 172, 194) (class certified on November 9, 2020, followed nine months later by a request to notify the class on August 16, 2021 when a settlement was reached); *Tricida, Inc.*, No. 4:21-cv-00076-HSG (N.D. Cal) (ECF Nos. 188, 211 ) (class certification granted September 27, 2024, request to notify class on March 3, 2025 following settlement); *Under Armour*, No. 1:17-cv-00388-RDB (D. Md. Aug. 24, 2023) (ECF Nos. 246, 293) (class certified on September 29, 2022, motion to notify class filed eleven months later on August 22, 2023); *EQT Corp.*, No. 2:19-cv-00754-RJC (W.D. Pa.) (ECF Nos. 257, 303) (class certified on August 11, 2022, notice motion filed one year later on August 18, 2023); *QuantumScape*, No. 3:21-cv-00058-WHO (N.D. Cal.) (ECF Nos. 183, 211) (class certified on December 19, 2022, notice requested eighteen months later in conjunction with proposed settlement).

Here, after the breakdown of the proposed settlement following Nikola's bankruptcy, Plaintiffs made efforts to resuscitate the deal while simultaneously completing fact discovery and engaging in expert discovery. Block Decl. ¶4. Plaintiffs thereafter moved expeditiously to provide the Class with notice.

Class notice, including the procurement of the transfer list, frequently takes place without controversy after the close of fact discovery. *See QuantumScape*, No. 3:21-cv-00058-WHO, ECF No. 215 (notice and exchange of transfer list seven months after discovery); *Under Armour*, No. 1:17-cv-00388-RDB, ECF No. 294 (notice and exchange of transfer list seven months after discovery); *EQT Corp.*, No. 2:19-cv-00754-RJC, ECF No. 305 (notice and

exchange of transfer list six months after discovery). No authority supports Milton's novel claim that the exchange of the transfer list to facilitate class notice constitutes belated discovery. Indeed, it is not pre-trial discovery at all; nothing from the transfer list has any relevance to the facts at issue in this action. And, all relevant authority undermines Milton's contention.

### 2. Milton's Misconduct Necessitated the Involvement of Nikola's Transfer Agent

As a consequence of Nikola's bankruptcy, Plaintiffs cannot seek the transfer list from Nikola directly. Instead, Plaintiffs' proposed Notice Plan seeks the authority, only if necessary, to subpoena Nikola's transfer agent. Plaintiffs are not responsible for Nikola's bankruptcy.

The United States Bankruptcy Court for the District of Delaware has found there is "overwhelming evidence" that Milton's "fraudulent statements and breaches of fiduciary duty" resulted in injury "to shareholders" and "that damage caused millions and millions and millions, hundreds of millions of dollars in losses" which "largely led to Nikola's inability to pay a lot of its debt, the fall of its stock price, and ultimately its insolvency." *In re Nikola Corp., et al.*, (Bankr. D. Del. Sept. 5, 2025) (Hearing Tr. 130:18–131:2, ECF No. 292-1). In essence the Motion bemoans the time it will take to work around the barriers to efficiently disseminating notice created by Milton's misconduct. This exchange of information will not cost Milton a single dollar, nor a single day of time—his claims of prejudice are misplaced. Moreover, the relief he seeks is completely untethered to any impact (on any party or nonparty) of the Notice Plan provision to which he objects.

Milton asserts the notice plan's potential to overlap with the early stages of the briefing schedule for summary judgment will result in prejudice if "class members were allowed to see the dispositive motions" before the end of the opt-out period. Mot. 9. He fails to explain why class members would be prejudiced by reviewing the summary judgment briefing when considering class notice. If anything, the forthcoming briefing should be helpful to Class members' informed decision-making, and nothing precludes notice from being distributed

while the briefing for summary judgment is ongoing. *See Magadia v. Wal-Mart Assocs., Inc.*, 319 F. Supp. 3d 1180, 1186 (N.D. Cal. 2018) (accepting briefing on partial summary judgment in October 2017, approving notice in March 2018 and granting summary judgment in May 2018, the day after the conclusion of the opt out period). Ordinarily, in a class action, notice must be sent before summary judgment is *granted*, not briefed. *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995). Here, no briefing has been submitted, nor a hearing on summary judgment scheduled. At most, Milton's apparent concern for the interest of the class may factor into the scheduling of dispositive motion hearings, but it does not provide a basis for decertifying the Class.

### D.    In the Alternative, the Notice Plan Should be Approved with Modification

Should the Court determine that the authority to issue a subpoena to Continental to obtain the Transfer List is unwarranted, the appropriate remedy would be decline to authorize such a subpoena, not partially decertify the Class. The Proposed Order submitted in conjunction with the Notice Plan contemplates that Continental may provide the list without a subpoena, and even if it did not, adequate class notice could be provided.

Rule 23(c)(2)(B) requires only "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). While the transfer list would allow for a reasonable additional step to help individualized notice reach the small fraction of class members known only to Continental and not otherwise duplicative of shareholders identified by the Notice Administrator's other proposed means, "perfect notice" is not required by Rule 23. *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1016–17 (E.D. Cal. 2019). Under the circumstances, if authority to subpoena the transfer list is ultimately unavailable, the Notice Plan would still be effective and straight forward, and provide for individualized notice for the vast majority of the Class.

### IV.    CONCLUSION

Milton's Motion should be denied.

|   |   |
|---|---|
| September 25, 2025 | Respectfully submitted,<br><br>**KELLER ROHRBACK LLP**<br><br>By: /s/ Gary Gotto<br>Gary Gotto (No. 007401)<br>3101 North Central Avenue, Suite 1400<br>Phoenix, AZ 85012<br>Telephone: (602) 230-6322<br>ggotto@kellerrohrback.com<br><br>*Liaison Counsel for Lead Plaintiffs Nikola Investor Group II and for the Class*<br><br>**POMERANTZ LLP**<br>Jeremy A. Lieberman (*pro hac vice*)<br>Michael J. Wernke (*pro hac vice*)<br>600 Third Avenue, 20th Floor<br>New York, NY 10016<br>Telephone: (212) 661-1100<br>Facsimile: (212) 661-8665<br>jalieberman@pomlaw.com<br>mjwernke@pomlaw.com<br><br>**BLOCK & LEVITON LLP**<br>Jeffrey C. Block (*pro hac vice*)<br>Jacob A. Walker (*pro hac vice*)<br>Michael D. Gaines (*pro hac vice*)<br>260 Franklin Street, Suite 1860<br>Boston, MA 02110<br>Telephone: (617) 398-5600<br>Facsimile: (617) 507-6020<br>jeff@blockleviton.com<br>jake@blockleviton.com<br>michael@blockleviton.com<br><br>*Counsel for Lead Plaintiffs Nikola Investor Group II and Co-Lead Counsel for the Class*<br><br>**LABATON KELLER SUCHAROW LLP**<br>Michael P. Canty (*pro hac vice*)<br>James T. Christie (*pro hac vice*)<br>Jacqueline R. Meyers (*pro hac vice*)<br>140 Broadway<br>New York, NY 10005<br>Telephone: (212) 907-0700<br>Facsimile: (212) 818-0477<br>mcanty@labaton.com<br>jchristie@labaton.com<br>jmeyers@labaton.com<br><br>*Additional Counsel for Lead Plaintiffs Nikola Investor Group II* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties through the court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Gary Gotto*
Gary Gotto
