Geoffrey M.T. Sturr, No. 014063
Travis C. Hunt, No. 035491
Allie Karpurk, No. 037029
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2838
(602) 640-9000
gsturr@omlaw.com
thunt@omlaw.com
akarpurk@omlaw.com

Attorneys for Defendants
Mark A. Russell and Kim J. Brady

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Borteanu, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Nikola Corporation, et al.<br><br>Defendants. | No. 2:20-cv-01797-PHX-SPL<br>  2:20-cv-01819-PHX- (cons.)<br>  2:20-cv-02123-PHX-JJT (cons.)<br>  2:20-cv-02168-PHX-DLR (cons.)<br>  2:20-cv-02237-PHX-DLR (cons.)<br>  2:20-cv-02374-PHX-DWL (cons.)<br><br>**DEFENDANTS MARK A. RUSSELL AND KIM J. BRADY'S CONTROVERTING STATEMENT OF FACTS IN RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to LRCiv 56.1, Defendants Mark A. Russell and Kim J. Brady respectfully submit the following Controverting Statement of Facts in Response to Plaintiffs' Motion for Partial Summary Judgment ("CSOF"). Each response corresponds to the numbered paragraph in Plaintiffs' statement. These Defendants' Statement of Facts in Support of their Motion for Summary Judgment ("SOF") and supporting exhibits are incorporated by reference.

1.  **Statement 1**: On July 28, 2021, a criminal indictment ("Indictment") previously obtained by the United States Attorney's Office for the Southern District of New York was unsealed. The Indictment charged Milton and concerned the same conduct on which the Second Consolidated Amended Class Action Complaint ("SAC") is based. Declaration of Jeffrey C. Block in Support of Motion for Partial Summary Judgment ("Block Decl.") ¶2, Ex. 3.

**Response to Statement 1**: Not disputed that there were criminal proceedings against Mr. Milton. Disputed that the Indictment "concerned the same conduct on which the SAC is based," as the SAC includes numerous allegations that have no connection to the criminal case against Mr. Milton, including all allegations against Mr. Russell and Mr. Brady, who were not parties to the criminal proceedings and, in fact, testified in the criminal proceedings against Mr. Milton. Disputed further to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. Mr. Milton maintained final approval over public statements made by the company until his resignation. (SOF ¶ 3.) Further, neither Mr. Russell nor Mr. Brady had any control or oversight over Mr. Milton's personal statements on social media or otherwise, even though Mr. Russell did recommend that Mr. Milton agree to controls to ensure that Mr. Milton's social media statements were vetted. (*Id.* ¶¶ 3, 5-7.) Mr. Milton resisted and "largely ignored" Mr. Russell's recommendation. (*Id.* ¶¶ 3, 5-7.) Mr. Russell and Mr. Brady focused on following the established processes for review for public filings and emphasized that Nikola's public filings and website were accurate sources of information. (*Id.* ¶¶ 3, 5-7.)

2. **Statement 2**: On June 22, 2022, the grand jury returned a superseding indictment ("Superseding Indictment) which alleged that Milton violated 15 U.S.C. §§ 78j(b) and 78(ff) and 17 C.F.R. § 240.10b-5 by: (a) "employing devices, schemes, and artifices to defraud;" (b) "making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;" and (c) "engaging in a scheme to defraud investors in Nikola through false and misleading statements regarding the company's product, technology, and business development." Block Decl. ¶2, Ex. 4.

**Response to Statement 2**: Not disputed that there were criminal proceedings against Mr. Milton. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

3. **Statement 3**: The jury was specifically instructed with respect to each of the elements that the United States was required to prove beyond a reasonable doubt to find Milton guilty of securities fraud. Block Decl. ¶2, Ex. 15 at 3197:3-3242:13.

**Response to Statement 3**: Not disputed as to the instructions provided to the jury in the criminal case against Mr. Milton. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

4. **Statement 4**: On October 14, 2022, after a four-week trial, a federal jury convicted Milton on one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78(ff) and 17 C.F.R. § 240.10b-5, and two counts of wire fraud. Block Decl. ¶2, Ex. 15 at 3261:1-3262:20.

**Response to Statement 4**: Not disputed as to Mr. Milton's criminal conviction. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

5. **Statement 5**: At sentencing, Judge Edgardo Ramos, United States District Judge for the Southern District of New York, sentenced Milton to a total term of

imprisonment of 48 months, imposed a fine, ordered the forfeiture of certain real property, and imposed an order of restitution but deferred determining an amount pending further briefing. Block Decl. ¶2, Ex. 16 at 89:6-19. Judge Ramos addressed Milton directly, stating, in part: "[Y]ou used your considerable social media talents to tout your company in ways that were materially false, whether it was the then current status of the development of the technology that would power your trucks or the number of binding orders or the state of your requisition for rights to build hydrogen generating facilities. What you said over and over in different media outlets was wrong and it was materially wrong, and you knowingly said those things." *Id.* at 92:16-24.

**Response to Statement 5**: Not disputed as to the quotations of Judge Ramos in the sentencing proceedings. Disputed to the extent Plaintiffs attempt to apply Judge Ramos' statements, which were directed only to Mr. Milton, to any other Defendant in this action, including Mr. Russell and Mr. Brady, who were not parties to the criminal proceedings and, in fact, testified in the criminal proceedings against Mr. Milton. (CSOF ¶ 1.)

6.  **Statement 6**: Judge Ramos also expressly found by a preponderance of the evidence that Milton's false statements caused investor losses. Block Decl. ¶2, Ex. 16 at 91:19 – 92:4; *see also id.* at 21:17-22:9; 25:20-21; 98:20.

**Response to Statement 6**: Not disputed that Judge Ramos found for purposes of sentencing that the government met the preponderance-of-the-evidence standard in establishing loss for statements made by Mr. Milton. Disputed that Judge Ramos' general finding as to loss as part of sentencing meets Plaintiffs' burden of proving loss causation or damages as required in this case. Further disputed that any alleged loss was or can be attributed to Mr. Russell or Mr. Brady. (CSOF ¶ 1.)

7.  **Statement 7**: Judge Ramos further found that the evidence presented to the jury at trial allowed it to determine that investors suffered losses as the result of Milton's misstatements. Block Decl. ¶2, Ex. 16 at 14:12-23. This evidence included testimony from a special agent with the U.S. Attorney's Office in the Southern District of New York

1  regarding movements of Nikola's stock price in response to Milton's misstatements and
2  the Hindenburg Report. Block Decl. ¶2, Ex. 14 at 2400:10-2402:7; *id.* at 2406:1-2410:14;
3  Block Decl. ¶2, Ex. 14(a); Block Decl. ¶2, Ex. 14(b); Block Decl. ¶2, Ex. 14(c).
4  Defendants' expert, in turn, presented charts of Nikola's stock price and testified that
5  "Mr. Milton's statements at issue did not affect the stock price during the public period,
6  the June to September period." Block Decl. ¶2, Ex. 14 at 2528:20-22; Block Decl. ¶2, Ex.
7  14(d); *see generally* Block Decl. ¶2, Ex. 14 at 2528:13-2535:1. The Government also
8  called two retail investors who testified that they lost money in their Nikola investment
9  following the Hindenburg Report. Block Decl. ¶2, Ex. 11 at 1560:7-16; Block Decl. ¶2,
10 Ex. 13 at 2216:21-2217:9.

   **Response to Statement 7**: Not disputed that evidence was presented in the criminal case against Mr. Milton. Disputed to the extent Plaintiffs attempt to apply Judge Ramos' statements, which were directed only to Mr. Milton, to any other Defendant in this action, including Mr. Russell and Mr. Brady, who were not parties to the criminal proceedings and, in fact, testified in the criminal proceedings against Mr. Milton. (CSOF ¶ 1.) Further disputed that any of the evidence described in this Statement related to Mr. Russell or Mr. Brady.

   8. **Statement 8**: On April 9, 2025, Milton voluntarily dismissed his then pending appeal of his conviction in the United States Court of Appeals for the Second Circuit. *See United States v. Milton*, No. 24-00259 at Dkt. 54 (2d Cir. April 9, 2025).

   **Response to Statement 8**: Not disputed as to Mr. Milton's dismissal of his criminal appeal. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

   9. **Statement 9**: As set out below, the prosecution's case is coextensive with the claims for which Plaintiffs seek partial summary judgement. *See* Block Decl. ¶2, Ex. 1. As such, the key elements of the criminal claims are co-extensive with the claims made against Milton in the SAC and have already been adjudicated and decided against Milton. The verdict rendered against Milton necessarily affirms both that Milton engaged in false

and misleading conduct as part of the issues litigated at trial and that he acted willfully and knowingly. Block Decl. ¶2, Ex. 15 at 3261:1-3262:20.

**Response to Statement 9**: Disputed. The criminal case against Mr. Milton referenced in Statement 9 is not "coextensive with the claims for which Plaintiffs seek partial summary judgment," as Plaintiffs do not limit their motion for partial summary judgment to claims against Mr. Milton but seek relief including application of the *Basic* presumption as to all pending claims, including claims against Mr. Russell and Mr. Brady, who were not parties to the criminal proceedings and, in fact, testified in the criminal proceedings against Mr. Milton. Disputed further to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

10.    **Statement 10**: On November 3, 2021, Nikola initiated arbitration proceedings at the American Arbitration Association ("AAA") against Milton for breach of fiduciary duty and various damage claims (the "Arbitration"). The Arbitration was held before the Honorable Russ Fagg, Mr. Jonathan J. Lerner, Esq., and Mr. Dan K. Webb, Esq. (together, "the Panel"). *See* Block Decl. ¶2, Ex. 21 at 3.

**Response to Statement 10**: Not disputed that Nikola initiated arbitration proceedings against Mr. Milton. Disputed that these arbitration proceedings have any relevance to Plaintiffs' claims against Mr. Russell and Mr. Brady. Disputed further to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

11.    **Statement 11**: The Arbitration culminated in an eight-day evidentiary hearing held in person from July 24 to August 2, 2023, during which over 1,300 exhibits were entered into evidence. Block Decl. ¶2, Ex. 18 at 6-7. Nikola called four fact witnesses and two experts and introduced Milton's July 11, 2023 deposition by written questions, where he declined to answer any questions about his wrongful conduct, repeatedly invoking his Fifth Amendment privilege. *Id.*; Block Decl. ¶2, Ex. 19.

**Response to Statement 11**: Not disputed as to the referenced arbitration proceedings. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

12. **Statement 12**: In the Arbitration, Nikola sought to recover over $300 million in damages from Milton based on claims that from 2016 through at least September 2020, "Milton breached his fiduciary duties to Nikola by repeatedly making false and misleading public statements to hype the stock price to increase his personal wealth" and "exaggerated and overstated the Company's achievements and products, at times making wildly speculative, overly optimistic and misinformed public comments about Nikola's long-haul truck prototypes, hydrogen production capabilities, in-house technology maturity and development status of its trucks." Block Decl. ¶2, Ex. 18 at 5.

**Response to Statement 12**: Not disputed as to the referenced arbitration proceedings. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

13. **Statement 13**: After considering the Parties' arguments and post-hearing submissions, the Panel entered a Decision and Interim Award on October 20, 2023. *Id.* at 2. After additional briefing, the Panel entered a Final Decision and Award on November 17, 2023. *Id.* The majority of the Panel ("Majority") found that Milton "violated his fiduciary duties of loyalty and good faith" to Nikola through a "pattern of false and misleading public statements" about Nikola's products and their state of development and that he was liable for 97% of certain damages caused to Nikola. *Id.* at 53.

**Response to Statement 13**: Not disputed as to the arbitration proceedings referenced. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

14. **Statement 14**: A claim for breach of fiduciary duty under Delaware law includes only "two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty." *Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, C.A. No. 11802- VCL, 2018 WL 3326693, at *23 (Del. Ch. July 6, 2018), *aff'd sub nom. Davenport*

*v. Basho Techs. Holdco B*, LEC, 221 A.3d 100 (Del. 2019). The fiduciary duty of loyalty requires that directors and officers be disinterested and independent and act in good faith, with an honest belief that the action is in the best interests of the company and its stockholders. *City of Fort Myers Gen. Emples. Pension Fund v. Haley*, 235 A.3d 702, 721 (Del. 2020). The duty of good faith, which may be characterized as a subset of the duty of loyalty, *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006), requires that directors and officers "act at all times with an honesty of purpose and in the best interests and welfare of the corporation." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 755 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).

**Response to Statement 14**: Statement 14 includes legal conclusions that are not appropriate for a Statement of Facts. To the extent a response is called for, Mr. Russell and Mr. Brady do not dispute Statement 14, but assert that it has no relevance to Plaintiffs' claims against Mr. Russell and Mr. Brady. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

15. **Statement 15**: On September 9, 2024, the Honorable Diane Humetewa, United States District Judge of the District of Arizona, issued an Order granting Nikola's "Petition for Confirmation of Arbitration Award and For Entry of Judgment Thereon" and denying Milton's "Motion to Vacate." Block Decl. ¶2, Ex. 21. Judge Humetawa approved of the arbitration panel's finding that the SEC settlement with Nikola was "based on three separate and independent categories of violation of the securities laws and SEC Rules and Regulations" including Milton's false and misleading statements which substantiated claims that Nikola, through Milton, had violated Section 10(b) of the Exchange Act and several provisions of the Securities Act. *Id*.

**Response to Statement 15**: Not disputed as to the confirming of the arbitration award from the arbitration proceedings. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

16.     **Statement 16**: In finding that Milton had violated his fiduciary duties of loyalty and good faith, the Majority focused on precisely the same categories of misstatements alleged in the SAC: (1) the Nikola One prototype; (2) the Company's purported production of hydrogen and hydrogen stations; (3) Nikola's plans for and development of a zero-emissions consumer-focused truck, the "Badger"; (4) Nikola's development of in-house technology; and (5) Nikola's product reservations. *See* Block Decl. ¶2, Ex. 2; Block Decl. ¶2, Ex. 18 at 53 n.6. The Majority held that "Milton knew these statements were false at the time he made them (or caused the Company to make them) . . . [and] that Milton made these misstatements with the goal of inflating the Company's stock price and, in turn, his own net worth." Block Decl. ¶2, Ex. 18 at 53 n.6.

**Response to Statement 16**: Not disputed that the arbitration panel found that Mr. Milton breached his fiduciary duties of loyalty and good faith. Disputed as to the alleged overlap between the arbitration and the misstatements alleged in the SAC, including because the SAC includes numerous allegations that have no connection to the arbitration proceedings against Mr. Milton, including all allegations in the SAC against Mr. Russell and Mr. Brady, who were not parties to the arbitration proceedings. Disputed further to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

17.     **Statement 17**: As such, as set out below, the key elements of Nikola's fiduciary claims against Milton are co-extensive with the claims made against Milton in the SAC and have already been adjudicated and decided against Milton. The verdict rendered against Milton in the Arbitration necessarily affirms both that Milton engaged in false and misleading conduct and that he acted willfully and knowingly. Block Decl. ¶2, Ex. 2.

**Response to Statement 17**: Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

18.     On April 3, 2023, Lead Plaintiffs George Mersho, Vincent Chau, Stanley

1  Karcynski (collectively, "Plaintiffs") filed the SAC in this case. Dkt. No. 129.

2  **Response to Statement 18**: Not disputed.

3  19.  **Statement 19**: The SAC charged Defendant Milton with violating 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)), and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC") (17 C.F.R. § 240.10b-5). *Id.*

**Response to Statement 19**: Not disputed that Plaintiffs raised the allegations referenced in Statement 19 in the SAC. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

20.  **Statement 20**: The SAC identified six categories of Milton's alleged misstatements that overlapped with those at issue in Milton's criminal case and the Arbitration: (1) that Nikola had developed a fully operational 'zero-emissions' tractor trailer truck powered by hydrogen fuel cell technology—the Nikola One; (2) that Nikola had over 14,000 binding purchase orders for its trucks; (3) that Nikola was producing hydrogen at a fraction of the cost industry experts believed was possible and was in the process of establishing a nation-wide network of hydrogen refueling stations; (4) that Nikola had developed, using its own technology, a fully operational pick-up truck called the Badger; (5) that Nikola had developed all of its vehicles' critical components "in-house." *Id.*, ¶9; Block Decl. ¶2, Ex. 1; Block Decl. ¶2, Ex. 2.

**Response to Statement 20**: Not disputed that Plaintiffs raised the referenced allegations in the SAC. Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

21.  **Statement 21**: On September 5, 2025, the United States Bankruptcy Court for the District of Delaware found "overwhelming evidence" that Milton's "fraudulent statements and breaches of fiduciary duty" resulted in injury "to shareholders" and "that damage caused millions and millions and millions, hundreds of millions of dollars in

1  losses" which "largely led to Nikola's inability to pay a lot of its debt, the fall of its stock
2  price, and ultimately its insolvency." Block Decl. ¶2, Ex. 22 at 130-31.

3        **Response to Statement 21**: Not disputed that the Bankruptcy Court made the
4  referenced findings. Disputed to the extent that Plaintiffs assert any responsibility or
5  liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct.
6  (CSOF ¶ 1.) Mr. Russell and Mr. Brady were not parties to the referenced bankruptcy
7  proceedings.

8        22.    **Statement 22**: The Bankruptcy Court also rejected Milton's argument that
9  his criminal conduct could not constitute evidence to support equitable subordination
10 because of the President's pardon, reasoning that "the pardon power does not extend to
11 the authority to determine innocence" and that "when we're determining if somebody is
12 criminally liable or innocent, the judiciary has to make that determination." *Id.* at 125-
13 128. The Court noted that "even if the pardon power did extend to determine innocence .
14 . . the pardon is clear on its face and there was no finding of innocence. And I assume that
15 the President speaks with complete clarity and he did so when issuing an official grant of
16 clemency pursuant to that constitutional pardon power, and because the pardon is
17 unambiguous and clear on its face, I don't need to look to, nor can I look to extrinsic
18 evidence or the President's other statements to interpret or supplement the official
19 pardon." *Id.* at 129.

20       **Response to Statement 22**: Not disputed that the Bankruptcy Court made the
21 referenced findings. Disputed to the extent that Plaintiffs assert any responsibility or
22 liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct.
23 (CSOF ¶ 1.)

24       23.    **Statement 23:** *Milton's False Statements about the Nikola One*. The
25 Nikola One was originally engineered as a natural gas turbine truck and was never a zero-
26 emissions hydrogen electric truck. Block Decl. ¶2, Ex. 5 at 89:5-9; *id.* at 120:20-121:15;
27 Block Decl. ¶2, Ex. 27 at 69; Block Decl. ¶2, Ex. 29. Milton was kept informed of the
28 truck's development. Block Decl. ¶2, Ex. 5 at 104:23-24; Block Decl. ¶2, Ex 30. The

Nikola One at the December 2016 unveiling was not functional. Block Decl. ¶2, Ex. 5 at 104:10-109:5; Block Decl. ¶2, Ex. 28 at 103; Ex. 27 at 75; Block Decl. ¶2, Ex 30. The vehicle revealed at that event was a non-operational "pusher," meaning it could not move under its own power. Block Decl. ¶2, Ex. 5 at 118:16-25; *id.* at 122:14-122:24. Similarly, in the "In Motion" video, the Nikola One appeared to drive but was in fact rolling downhill on a slight ~3% incline. Block Decl. ¶2, Ex. 5 at 198:3-199:7; Block Decl. ¶2, Ex. 28 at 103; Block Decl. ¶2, Ex. 27 at 81. The Nikola One was never capable of driving under its own power. Block Decl. ¶2, Ex. 9 at 1219:4-11.

**Response to Statement 23**: Disputed. Statement 23 repeatedly refers to "Nikola One" as if the prototype never evolved, which is contradicted by the record. As Mr. Russell explained in his deposition, (1) the "Nikola One transformed into the sleeper cab project," (2) one could not track "everything just be one, two, or three," and (3) ultimately the Nikola "Two became the basis of the sleeper." (Ex. 1, Russell Dep. at 224:25-226:1; 227:10-228:7.) In the cited criminal-trial testimony in this Statement, Mr. Russell was speaking specifically about the Nikola One prototype when he stated that specific truck could not drive under its own power. Disputed further to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

24.  **Statement 24:** *Milton's False Statements about the "Backlog" of Orders*. Nikola did not have contracts or orders for its trucks, Nikola had non-binding expressions of interest. Block Decl. ¶2, Ex. 6 at 343:18-344:14; Block Decl. ¶2, Ex. 6(d); Block Decl. ¶2, Ex. 20x at 1349:13-15; *id.* at 1688:17-1689:8; Block Decl. ¶2, Ex. 31 at NKLA-BORTEANU_01382581. Additionally, at trial it was shown that thousands of Nikola's purported reservations were for trucks powered by a natural gas turbine—which Nikola would no longer produce after pivoting to hydrogen fuel cell and battery powered vehicles in late 2016. Ex. 7 at 473:4-476:21; *id.* at 484:13-485:2; Block Decl. ¶2, Ex. 7(f); Block Decl. ¶2, Ex. 7(g).

**Response to Statement 24**: Disputed. Statement 24 misstates the record concerning nonbinding reservations. As Mr. Russell explained in his deposition, (1) the "Nikola One transformed into the sleeper cab project," (2) one could not track "everything just be one, two, or three," and (3) ultimately the Nikola "Two became the basis of the sleeper." (Ex. 1, Russell Dep. at 224:25-226:1; 227:10-228:7.) Further, Mr. Russell independently confirmed the nonbinding reservations for Nikola's key customers. (*Id.* at 230:17-231:14.)

25. **Statement 25:** *Milton's False Statements about Hydrogen Production*. Nikola had not started building any hydrogen infrastructure when the company went public in June 2020, had not purchased any land on which to build hydrogen stations, and had never produced any hydrogen. Block Decl. ¶2, Ex. 6 at 310:23-311:9; Block Decl. ¶2, Ex. 6(a); Block Decl. ¶2, Ex. 9 at 1068:7-1069:8; Block Decl. ¶2, Ex. 25 at 40:2-16. As of June 2020, Nikola was not connected to federal transmission lines and had no electricity contracts with power providers. Block Decl. ¶2, Ex. 20 at 934:8-14; Block Decl. ¶2, Ex. 23 at 125:12-22; Block Decl. ¶2, Ex. 25 at 115:23-116:23; *id.* at 117:8-18; *id.* at 134:22-135:12; *id.* at 138:20-140:10; *id.* at 184:2-25. By September 2020, Nikola had not produced any hydrogen or built a functioning hydrogen station at any cost, including in Canada. Block Decl. ¶2, Ex. 27 at 38; *id.* at 109-110; Block Decl. ¶2, Ex. 12 at 1781:18-21; Block Decl. ¶2, Ex. 20 at 938:4-5; Block Decl. ¶2, Ex. 32 at NKLA-BORTEANU_01022666. Nikola never produced hydrogen at a cost of $3-$4 a kilogram. Block Decl. ¶2, Ex. 26 at 62:19-24; Block Decl. ¶2, Ex. 28 at 103; Block Decl. ¶2, Ex. 25 at 146:10-147:7; Block Decl. ¶2, Ex. 27 at 38. Nikola was buying hydrogen from a third party in 2020 for $14.76/kilogram. Block Decl. ¶2, Ex. 25 at 43:11-47:14.

**Response to Statement 25**: Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

26. **Statement 26:** *Milton's False Statements about the Badger*. As of February 10, 2020, Nikola had not validated the Badger's technical specifications or done

any engineering work beyond running 12 hours of simulations. Block Decl. ¶2, Ex. 7 at 529:11-532:2; Block Decl. ¶2, Ex. 10 at 1459:13-1460:23; Block Decl. ¶2, Ex. 11 at 1479:16-1480:5; Block Decl. ¶2, Ex. 20 at 480:8-20. The two Badger prototypes designed in 2020 were both battery-electric vehicles ("BEVs") lacking hydrogen technology and thus incapable of producing water as a byproduct. Block Decl. ¶2, Ex. 7 at 537:21-540:12; *id.* at 602:10-603:5; Block Decl. ¶2, Ex. 7(c); Block Decl. ¶2, Ex. 8 at 628:12-629:7; Block Decl. ¶2, Ex. 34. The prototypes were not expected to be completed and tested before November 2020. Block Decl. ¶2, Ex. 36; Block Decl. ¶2, Ex. 32 at NKLA-BORTEANU_01022687. Nikola did not build the Badger from the ground up. Block Decl. ¶2, Ex. 7 at 553:13-555:24; Block Decl. ¶2, Ex. 33; Block Decl. ¶2, Ex. 32 at NKLA-BORTEANU_01022687; Block Decl. ¶2, Ex. 35. Nikola originally decided to use the Ford F-150 as a donor vehicle from which to build the Badger prototype. Block Decl. ¶2, Ex. 7 at 535:25-537:7; Block Decl. ¶2, Ex. 11 at 1495:24-1496:5. Under its agreement with General Motors, the Badger contained no Nikola technology—GM was responsible for nearly all functional components as well as the vehicle's design. Block Decl. ¶2, Ex. 11 at 1482:5-1483:9; *id.* at 1484:24-1493:7; *id.* at 1504:20-1505:1; Block Decl. ¶2, Ex. 11(a); Block Decl. ¶2, Ex. 26 at 208:6-12. The Badger was to be assembled using parts from two existing GM models: the Hummer EV and the Silverado EV. Block Decl. ¶2, Ex. 11 at 1483:10-1484:22.

**Response to Statement 26**: Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

27.    **Statement 27:** *In-House Components*: Nikola did not develop or manufacture its own batteries, frames, or inverters. Block Decl. ¶2, Ex. 28 at 103; Block Decl. ¶2, Ex. 27 at 43, 56-58; Block Decl. ¶2, Ex. 24 at 184:18-22, 187:3-23. Instead, the company relied on partners for technology, controls, E-axle, and inverter development. Block Decl. ¶2, Ex. 20 at 978:19-23; *id.* at 982:14-22; Block Decl. ¶2, Ex. 27 at 43, 50-52; Block Decl. ¶2, Ex. 24 at 190:17. Milton frequently led negotiations and agreements

1 | with various third parties to produce these components. Block Decl. ¶2, Ex. 18 at 27.

2 |     **Response to Statement 27**: Disputed to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

    28.    **Statement 28**: The overlapping Challenged Statements were public. ECF No. 224 at 13 (January 6, 2025).

    **Response to Statement 28**: Disputed. Statement 28 includes an undefined term—"overlapping Challenged Statements." To the extent the "Challenged Statements" include statements challenged by Plaintiffs that were not made by Mr. Milton but by other Defendants, including Mr. Russell or Mr. Brady, such statements are not actionable for the reasons stated in Mr. Russell's and Mr. Brady's motion for summary judgment and supporting statement of facts. Disputed further to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

    29.    **Statement 29**: Plaintiffs bought stock during the Class Period. ECF No. 24-4 (November 16, 2020).

    **Response to Statement 29**: Not disputed as to the Plaintiffs specifically referenced in Doc. 24-4. Plaintiffs must still produce evidence of purchasing Nikola stock during the Class Period for all putative class members.

    30.    **Statement 30**: The Court has already found "that Nikola stock traded in an efficient market throughout the Class Period." ECF No. 224 at 22 (January 6, 2025).

    **Response to Statement 30**: Not disputed as to the Court's prior finding as to market efficiency for class certification purposes, but this finding is not controlling for summary judgment or trial, and whether the market was efficient throughout the Class Period is disputed. (*See* Russell-Brady Daubert Motion and attachments.)

    31.    **Statement 31**: The Court previously expressly rejected Defendants price impact arguments and granted Plaintiffs' Motion for Class Certification. *Id.* at 22-25.

    **Response to Statement 31:** Not disputed as to the Court's prior findings and

rulings, but these findings and rulings are not controlling for summary judgment or trial, and whether Plaintiffs can or have met their burden to show price impact is disputed, especially as to Mr. Russell and Mr. Brady, for which Plaintiffs have produced no evidence of price impact based on their statements or conduct. (*See* Russell-Brady Daubert Motion and attachments.).

32.   **Statement 32**: As noted above, the materiality of the overlapping Challenged Statements was previously determined in the context of Milton's criminal trial.

**Response to Statement 32**: Disputed. Statement 31 includes an undefined term—"overlapping Challenged Statements." To the extent the "Challenged Statements" include statements challenged by Plaintiffs that were not made by Mr. Milton but by Mr. Russell or Mr. Brady, such statements are not material or actionable for the reasons stated in Mr. Russell's and Mr. Brady's Motion for Summary Judgment and supporting Statement of Facts. Disputed further to the extent that Plaintiffs assert any responsibility or liability for Mr. Russell or Mr. Brady based on Mr. Milton's statements or conduct. (CSOF ¶ 1.)

RESPECTFULLY SUBMITTED this 3rd day of December, 2025.

OSBORN MALEDON, P.A.

By: s/Travis C. Hunt
Geoffrey M.T. Sturr
Travis C. Hunt
Allie Karpurk
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

Attorneys for Defendants Mark A. Russell and Kim J. Brady