Jennifer Hadley Catero (#018380)
Patrick A. Tighe (#033885)
**SNELL & WILMER L.L.P.**
One East Washington Street
Suite 2700
Phoenix, AZ 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
jcatero@swlaw.com
ptighe@swlaw.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Neal R. Marder (Admitted *Pro Hac Vice*)
Joshua A. Rubin (Admitted *Pro Hac Vice*)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone: 310.229.1000
Facsimile: 310.229.1001
nmarder@akingump.com
rubinj@akingump.com

M. Scott Barnard (Admitted *Pro Hac Vice*)
Jessica Mannon (Admitted *Pro Hac Vice*)
Tabitha Kempf (Admitted *Pro Hac Vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343
sbarnard@akingump.com
jmannon@akingump.com
tkempf@akingump.com

*Attorneys for Defendant Jeffrey Ubben*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel Borteanu, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Nikola Corporation; Trevor Milton; Mark A. Russell; Kim J. Brady; Britton M. Worthen; Steve Girsky; Steven Shindler; and Jeffrey Ubben,<br><br>Defendants. | No. CV-20-01797-PHX-SPL<br>No. CV-20-01819-PHX-DIR (cons.)<br>No. CV-20-02123-PHX-JJT (cons.)<br>No. CV-20-02168-PHX-DLR (cons.)<br>No. CV-20-02237-PHX-DLR (cons.)<br>No. CV-20-02374-PHX-DWL (cons.)<br><br>**DEFENDANT JEFFREY UBBEN'S CONTROVERTING STATEMENT OF FACTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Local Rule 56.1(b) and Judge Logan's Case Management Order (Doc. 173), Defendant Jeffrey Ubben submits the following Controverting Statement of Facts ("CSOF") and attorney declaration (attached as Ex. AA) in opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. 316).[1]

**UBBEN'S RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS**

1. On July 28, 2021, a criminal indictment ("Indictment") previously obtained by the United States Attorney's Office for the Southern District of New York was unsealed. The Indictment charged Milton and concerned the same conduct on which the Second Consolidated Amended Class Action Complaint ("SAC") is based. Declaration of Jeffrey C. Block in Support of Motion for Partial Summary Judgment ("Block Dec.") ¶2, Ex. 3.

UBBEN'S RESPONSE: Disputed in part. The 295-page SAC alleges dozens of misstatements by eight Defendants across nine categories of alleged fraud and therefore encompasses more alleged misconduct than that which was covered by Milton's criminal indictment. [Doc. 129; Doc. 157 at 2-3.] The claim that the "Indictment charged Milton and concerned the same conduct on which the [SAC] is based" is not a statement of material fact but an improper argument.

2. On June 22, 2022, the grand jury returned a superseding indictment ("Superseding Indictment") which alleged that Milton violated 15 U.S.C. §§ 78j(b) and 78(ff) and 17 C.F.R. § 240.10b-5 by: (a) "employing devices, schemes, and artifices to defraud;" (b) "making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;" and (c) "engaging in a scheme to defraud investors in Nikol through false and misleading statements regarding the company's product, technology, and business development." Block Decl. ¶2, Ex. 4.

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

---

[1] All pleadings or exhibits cited herein that have been filed in this case previously are incorporated by reference per LRCiv. 7.1(d)(2).

3. The jury was specifically instructed with respect to each of the elements that the United States was required to prove beyond a reasonable doubt to find Milton guilty of securities fraud. Block Decl. ¶2, Ex. 15 at 3197:3-3242:13.

<u>UBBEN'S RESPONSE:</u> Undisputed as inapplicable to Ubben.

4. On October 14, 2022, after a four-week trial, a federal jury convicted Milton on one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78(ff) and 17 C.F.R. § 240.10b-5, and two counts of wire fraud. Block Decl. ¶2, Ex. 15 at 3261:1-3262:20.

<u>UBBEN'S RESPONSE:</u> Undisputed as inapplicable to Ubben.

5. At sentencing, Judge Edgardo Ramos, United States District Judge for the Southern District of New York, sentenced Milton to a total term of imprisonment of 48 months, imposed a fine, ordered the forfeiture of certain real property, and imposed an order of restitution but deferred determining the amount pending further briefing. Block Decl. ¶2, Ex. 16 at 89:6-19. Judge Ramos addressed Milton directly, stating, in part: "[Y]ou used your considerable social media talents to tout your company in ways that were materially false, whether it was the then current status of the development of the technology that would power your trucks or the number of binding orders or the state of your requisition for rights to build hydrogen generating facilities. What you said over and over in different media outlets was wrong and it was materially wrong, and you knowingly said those things." *Id.* at 92:16-24.

<u>UBBEN'S RESPONSE:</u> Undisputed as inapplicable to Ubben.

6. Judge Ramos also expressly found by a preponderance of the evidence that Milton's false statements caused investor losses. Block Decl. ¶2, Ex. 16 at 91:19-92:4; *see also id.* at 21:17-22:9; 25:20-21; 98:20.

<u>UBBEN'S RESPONSE:</u> Undisputed as inapplicable to Ubben.

7. Judge Ramos further found that the evidence presented to the jury at trial allowed it to determine that investors suffered losses as the result of Milton's misstatements. Block Decl. ¶2, Ex. 16 at 14:12-23. This evidence included testimony from a special agent with

the U.S. Attorney's Office in the Southern District of New York regarding movements of Nikola's stock price in response to Milton's misstatements and the Hindenburg Report. Block Decl. ¶2, Ex. 14 at 2400:10-2402:07; *id.* at 2406:1-2410:14; Block Decl. ¶2, Ex. 14(a); Block Decl. ¶2, Ex. 14(b); Block Decl. ¶2, Ex. 14(c). Defendants' expert, in turn, presented charts of Nikola's stock price and testified that "Mr. Milton's statements at issue did not affect the stock price during the public period, the June to September period." Block Decl. ¶2, Ex. 14 at 2528:20-22; Block Decl. ¶2, Ex. 14(d); *see generally* Block Decl. ¶2, Ex. 14 at 2528:13-2535:1. The Government also called two retail investors who testified that they lost money in their Nikola investment following the Hindenburg Report. Block Decl. ¶2, Ex. 11 at 1560:7-16; Block Decl. ¶2, Ex. 13 at 2216:21-2217:9.

UBBEN'S RESPONSE: Disputed in part. Judge Ramos explicitly stated that he was "not relying on the Hindenburg report at all" for purposes of "deciding what sentence to impose[.]" [Doc. 323-5 at 88:15, 91:22-92:1.]

8. On April 9, 2025, Milton voluntarily dismissed his then pending appeal of his conviction in the United States Court of Appeals for the Second Circuit. *See United States v. Milton*, No. 24-00259 at Dkt. 54 (2d Cir. April 9, 2025).

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

9. As set out below, the prosecution's case is coextensive with the claims for which Plaintiffs seek partial summary judgement [sic]. *See* Block Decl. ¶2, Ex. 1. As such, the key elements of the criminal claims are co-extensive with the claims made against Milton in the SAC and have already been adjudicated and decided against Milton. The verdict rendered against Milton necessarily affirms both that Milton engaged in false and misleading conduct as part of the issues litigated at trial and that he acted willfully and knowingly. Block Decl. ¶2, Ex. 15 at 3261:1-3262:20.

UBBEN'S RESPONSE: Disputed. As set forth in Ubben's Opposition to Plaintiffs' Motion for Partial Summary Judgment, the elements of the criminal case against Milton are narrower than those at issue in this case and are not "coextensive." Specifically, the

criminal case against Milton did not concern any statements made by Ubben or any statements contained in Nikola's SEC filings, which are at issue in this litigation. *See* Block Decl. ¶2, Ex. 2.

10. On November 3, 2021, Nikola initiated arbitration proceedings at the American Arbitration Association ("AAA") against Milton for breach of fiduciary duty and various damage claims (the "Arbitration"). The Arbitration was held before the Honorable Russ Fagg, Mr. Jonathan J. Lerner, Esq., and Mr. Dan K. Webb, Esq. (together, "the Panel"). *See* Block Decl. ¶2, Ex. 21 at 3.

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

11. The Arbitration culminated in an eight-day evidentiary hearing held in person from July 24 to August 2, 2023, during which over 1,300 exhibits were entered into evidence. Block Decl. ¶2, Ex. 18 at 6-7. Nikola called four fact witnesses and two experts and introduced Milton's July 11, 2023 deposition by written questions, where he declined to answer any questions about his wrongful conduct, repeatedly invoking his Fifth Amendment privilege. *Id.*; Block Decl. ¶2, Ex. 19.

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

12. In the Arbitration, Nikola sought to recover over $300 million in damages from Milton based on claims that from 2016 through at least September 2020, "Milton breached his fiduciary duties to Nikola by repeatedly making false and misleading public statements to hype the stock price to increase his personal wealth" and "exaggerated and overstated the Company's achievements and products, at times making wildly speculative, overly optimistic and misinformed public comments about Nikola's long-haul truck prototypes, hydrogen production capabilities, in-house technology maturity and development status of its trucks." Block Decl. ¶2, Ex. 18 at 5.

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

13. After considering the Parties' arguments and post-hearing submissions, the Panel entered a Decision and Interim Award on October 20, 2023. *Id.* at 2. After additional

briefing, the Panel entered a Final Decision and Award on November 17, 2023. *Id.* The majority of the Panel ("Majority") found that Milton "violated his fiduciary duties of loyalty and good faith" to Nikola through a "pattern of false and misleading public statements" about Nikola's products and their state of development and that he was liable for 97% of certain damages caused to Nikola. *Id.* at 53.

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

14. A claim for breach of fiduciary duty under Delaware law includes only "two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty." *Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC.*, C.A. No. 11802-VCL, 2018 WL 3326693, at *23 (Del. Ch. July 6, 2018), *aff'd sub nom. Davenport v. Basho Techs. Holdoc B*, LEC 221 A.3d 100 (Del. 2019). The fiduciary duty of loyalty requires that directors and officer be disinterested and independent and act in good faith, with an honest belief that the action is in the best interests of the company and its stockholders. *City of Fort Myers Gen. Emples. Pension Fund v. Haley*, 235 A.3d 702, 721 (Del. 2020). The duty of good faith, which may be characterized as a subset of the duty of loyalty, *Stone ex rel. AmSouth Bancorp. V. Ritter*, 911 A.2d 362, 369-70 (Del. 2006), requires that directors and officers "act at all times with an honesty of purpose and in the best interests and welfare of the corporation." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 75 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).

UBBEN'S RESPONSE: Disputed as improper. Plaintiffs' assertion is not a statement of material fact but a statement of law.

15. On September 9, 2024, the Honorable Diane Humetewa, United States District Judge of the District of Arizona, issued an Order granting Nikola's "Petition for Confirmation of Arbitration Award and For Entry of Judgment Thereon" and denying Milton's "Motion to Vacate." Block Decl. ¶2, Ex. 21. Judge Humetawa [sic] approved of the arbitration panel's finding that the SEC settlement with Nikola was "based on three separate and independent categories of violation of the securities laws and SEC Rules and

Regulations" including Milton's false and misleading statements which substantiated claims that Nikola, through Milton, had violated Section 10(b) of the Exchange Act and several provisions of the Securities Act. *Id.*

UBBEN'S RESPONSE: Disputed as to characterization of Judge Humetewa's Order and the underlying arbitration panel's decision. Nowhere does the Order say the panel decision "substantiated claims that Nikola, through Milton, had violated" securities laws. Instead, the Order noted only that "the SEC *alleged* that 'Nikola violated" securities laws but that the panel was under no duty to discuss "Nikola-specific allegations." [Doc. 326 at 9-10 (emphasis added).] The Order found that the 3% fault the panel attributed to Nikola was "due to its failure to implement adequate internal controls to prevent or otherwise stop the false and misleading statements"—not that Nikola violated securities laws by making false statements. [*Id.* at 9; *id.* at 10 (ascribing 3% liability for "inadequate internal controls"); *id.* at 13 (noting 3% fault to Nikola was for its "failure to implement adequate internal policies").]

16. In finding that Milton had violated his fiduciary duties of loyalty and good faith, the Majority focused on precisely the same categories of misstatements alleged in the SAC: (1) the Nikola One prototype; (2) the Company's purported production of hydrogen and hydrogen stations; (3) Nikola's plans for and development of a zero-emissions consumer-focused truck, the "Badger"; (4) Nikola's development of in-house technology; and (5) Nikola's product reservations. *See* Block Decl. ¶2, Ex. 2; Block Decl. ¶2, Ex. 18 at 53 n.6. The Majority held that "Milton knew these statements were false at the time he made them (or caused the Company to make them) . . . [and] that Milton made these misstatements with the goal of inflating the Company's stock price and, in tum [sic], his own net worth." Block Decl. ¶2, Ex. 18 at 53 n.6.

UBBEN'S RESPONSE: Disputed. The 295-page SAC alleges dozens of misstatements by eight Defendants across nine categories of alleged fraud and therefore encompasses more alleged misconduct than that which was covered in Milton's arbitration proceedings.

[Doc. 129; Doc. 157 at 2-3.] The claim that the arbitration panel "focused on precisely the same categories of misstatements alleged in the SAC" is not a statement of material fact but an improper argument.

17. As such, as set out below, the key elements of Nikola's fiduciary claims against Milton are co-extensive with the claims made against Milton in the SAC and have already been adjudicated and decided against Milton. The verdict rendered against Milton in the Arbitration necessarily affirms both that Milton engaged in false and misleading conduct and that he acted willfully and knowingly. Block Decl. ¶2, Ex. 2.

UBBEN'S RESPONSE: Disputed. As set forth in Ubben's Opposition to Plaintiffs' Motion for Partial Summary Judgment, the elements of the arbitration against Milton are narrower than those at issue in this case and are not "coextensive." Specifically, the arbitration did not concern any statements made by Ubben or statements made in Nikola's SEC filings, which are at issue in this litigation. *See* Block Decl. ¶2, Ex. 2.

18. On April 3, 2023, Lead Plaintiffs George Mersho, Vincent Chau, Stanely Karcynski (collectively, "Plaintiffs") filed the SAC in this case. Dkt. No. 129.

UBBEN'S RESPONSE: Undisputed.

19. The SAC charged Defendant Milton with violating 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)), and Rule 10-b promulgated thereunder by the US. Securities and Exchange Commission (the "SEC") (17 C.F.R. § 240.10b-5). *Id.*

UBBEN'S RESPONSE: Undisputed.

20. The SAC identified six categories of Milton's alleged misstatements that overlapped with those at issue in Milton's criminal case and the Arbitration: (1) that Nikola had developed a fully operational 'zero-emissions' tractor trailer truck powered by hydrogen fuel cell technology—the Nikola One; (2) that Nikola had over 14,000 binding purchase orders for its trucks; (3) that Nikola was producing hydrogen at a fraction of the cost industry experts believed was possible and was in the process of establishing a nation-wide

network of hydrogen refueling stations; (4) that Nikola had developed, using its own technology, a fully operational pick-up truck called the Badger; (5) that Nikola had developed all of its vehicles' critical components "in-house." *Id.*, ¶9; Block Decl. ¶2, Ex. 1; Block Decl. ¶2, Ex. 2.

UBBEN'S RESPONSE: Disputed. As set forth in Ubben's Opposition to Plaintiffs' Motion for Partial Summary Judgment, the alleged misrepresentations at issue in the criminal case and arbitration against Milton do not "overlap" with the claims in this litigation. *See* Block Dec. ¶2, Ex. 1, 2. The criminal case and arbitration were limited to alleged misrepresentations by Milton on social media, podcasts, and in press interviews. *Id.*

21. On September 5, 2025, the United States Bankruptcy Court for the District of Delaware found "overwhelming evidence" that Milton's "fraudulent statements and breaches of fiduciary duty" resulted in injury "to shareholders" and "that damage caused millions and millions and millions, hundreds of millions of dollars in losses" which "largely led to Nikola's inability to pay a lot of its debt, the fall of its stock price, and ultimately its insolvency." Block Decl. ¶2, Ex. 22 at 130-31.

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

22. The Bankruptcy Court also rejected Milton's argument that his criminal conduct could not constitute evidence to support equitable subordination because of the President's pardon, reasoning that "the pardon power does not extend to the authority to determine innocence" and that "when we're determining if somebody is criminally liable or innocent, the judiciary has to make that determination." *Id.* at 125-28. The Court noted that "even if the pardon power did extend to determine innocence . . . the pardon is clear on its face and there was no finding of innocence. And I assume that the President speaks with complete clarity and he did so when issuing an official grant of clemency pursuant to that constitutional pardon power, and because the pardon is unambiguous and clear on its face,

I don't need to look to, nor can I look to extrinsic evidence or the President's other statements to interpret or supplement the official pardon." *Id.* at 129.

UBBEN'S RESPONSE: Undisputed as inapplicable to Ubben.

23. ***Milton's False Statements about the Nikola One.*** The Nikola One was originally engineered as a natural gas turbine truck and was never a zero-emissions hydrogen electric truck. Block Decl. ¶2, Ex. 5 at 89:5-9; *id.* at 120-20-121:15; Block Decl. ¶2, Ex. 27 at 69; Block Decl. ¶2, Ex. 29. Milton was kept informed of the truck's development. Block Decl. ¶2, Ex. 5 at 104:23-24; Block Decl. ¶2, Ex. 30. The Nikola One at the December 2016 unveiling was not functional. Block Decl. ¶2, Ex. 5 at 104:10-109:5; Block Decl. ¶2, Ex. 28 at 103; Ex. 27 at 75; Block Decl. ¶2, Ex. 30. The vehicle revealed at that event was a non-operational "pusher," meaning it could not move under its own power. Block Decl. ¶2, Ex. 5 at 118:16-25; *id.* at 122:14-122:24. Similarly, in the "In Motion" video, the Nikola One appeared to drive but was in fact rolling downhill on a slight ~3% incline. Block Decl. ¶2, Ex. 5 at 198:3-199:7; Block Decl. ¶2, Ex. 28 at 103; Block Decl. ¶2, Ex. 27 at 81. The Nikola One was never capable of driving under its own power. Block Decl. ¶2, Ex. 9 at 1219:4-11.

UBBEN'S RESPONSE: Disputed in part. The evidence shows Nikola One was the sleeper-cab version of its Class 8 truck, and it remained an active focus of development throughout June and July 2020. [*See* Fretheim Dep., attached as Ex. BB, at 130-44.] The Nikola One was designed as a sleeper truck for long-haul drivers, and, despite the original 2016 prototype not reaching production, Nikola One served as the ongoing base for the sleeper variant. [*Id.* at 29, 122-23.] The Nikola One project was not scrapped, but rather continued to evolve (as is standard in truck development) and was known within the industry as the sleeper truck offering. [*Id.* at 131-33; Fretheim Ex. 28, attached as Ex. CC; Russell Dep., attached as Ex. DD, at 224-27.] Nikola's former CEO, Mark Russell, testified that the Nikola One was never "abandoned" for the Nikola Two, but that the concept simply morphed as Nikola made adjustments to the prototype in preparation for

production. [Russell Dep., Ex. DD, at 239-44; 143-44, 146.] Internal discussions in April 2020 detailed plans to build a "sleeper variant Nikola One" with updated specifications, and by late May 2020, Nikola was in talks with customers about bringing the Nikola One sleeper to the U.S. market. [Fretheim Ex. 28, Ex. CC; Fretheim Dep., Ex. BB, at 135-36.] Around the June 2020 public offering, Nikola's largest reservation holders expected the sleeper truck to be produced in 2024. [Fretheim Dep., Ex. BB, at 82-83, 125-27.] Even after the S-1 filing, internal communications confirmed the Nikola One sleeper remained central to Nikola's plans. [*Id.* at 147-48; Fretheim Ex. 31, attached as Ex. EE.]

24. ***Milton's False Statements about the "Backlog" of Orders.*** Nikola did not have contracts or orders for its trucks, Nikola had non-binding expressions of interest. Block Decl. ¶2, Ex. 6 at 343:18-344:14; Block Decl. ¶2, Ex. 6(d); Block Decl. ¶2, Ex. 20x at 1349:13-15; *id.* at 1688:17-1689:8; Block Decl. ¶2, Ex. 31 at NKLA-BORTEANU_01382581. Additionally, at trial it was shown that thousands of Nikola's purported reservations were for trucks powered by a natural gas turbine—which Nikola would no longer produce after pivoting to hydrogen fuel cell and battery powered vehicles in late 2016. Ex. 7 at 473:4-476:21; *id.* at 484:13-485:2; Block Decl. ¶2, Ex. 7(f); Block Decl. ¶2, Ex. 7(g).

<u>UBBEN'S RESPONSE:</u> Disputed in part. Undisputed that the 14,000 vehicle reservations referenced in Nikola's SEC filings in 2020 were non-binding reservations subject to cancellation by the customer. However, disputed that Nikola "did not have contracts or orders for its trucks." Nikola entered into several contracts and purchase orders relating to its trucks. *See, e.g.*, Block Decl. ¶2, Ex. 7(f), 7(g).

25. ***Milton's False Statements about Hydrogen Production.*** Nikola had not started building any hydrogen infrastructure when the company went public in June 2020, had not purchased any land on which to build hydrogen stations, and had never produced any hydrogen. Block Decl. ¶2, Ex. 6 at 310:23-311:9; Block Decl. ¶2, Ex. 6(a); Block Decl. ¶2, Ex. 9 at 1068:7-1069:8; Block Decl. ¶2, Ex. 25 at 40:2-16. As of June 2020, Nikola was

not connected to federal transmission lines and had no electricity contracts with power providers. Block Decl. ¶2, Ex. 20 at 934:8-14; Block Decl. ¶2, Ex. 23 at 125:12-22; Block Decl. ¶2, Ex. 25 at 115:23-116:23; *id.* at 117:8-18; *id.* at 134:22-135:12; *id.* at 138:20-140:10; *id.* at 184:2-25. By September 2020, Nikola had not produced any hydrogen or built a functioning hydrogen station at any cost, including in Canada. Block Decl. ¶2, Ex. 27 at 38; *id.* at 109-110; Block Decl. ¶2, Ex. 12 at 1781:18-21; Block Decl. ¶2, Ex. 20 at 938:4-5; Block Decl. ¶2, Ex. 32 at NKLA-BORTEANU_01022666. Nikola never produced hydrogen at a cost of $3-$4 a kilogram. Block Decl. ¶2, Ex. 26 at 62:19-24; Block Decl. ¶2, Ex. 28 at 103; Block Decl. ¶2, Ex. 25 at 146:10-147:7; Block Decl. ¶2, Ex. 27 at 38. Nikola was buying hydrogen from a third party in 2020 for $14.76/kilogram. Block Decl. ¶2, Ex. 25 at 43:11-47:14.

UBBEN'S RESPONSE: Undisputed, provided that the statement that "Nikola had not . . . built a functioning hydrogen station" is meant to refer to a functioning hydrogen *production* station.

26. ***Milton's False Statements about the Badger.*** As of February 10, 2020, Nikola had not validated the Badger's technical specifications or done any engineering work beyond running 12 hours of simulations. Block Decl. ¶2, Ex. 7 at 529:11-532:2; Block Decl. ¶2, Ex. 10 at 1459:13-1460:23; Block Decl. ¶2, Ex. 11 at 1479:16-1480:5; Block Decl. ¶2, Ex. 20 at 480:8-20. The two Badger prototypes designed in 2020 were both battery-electric vehicles ("BEVs") lacking hydrogen technology and thus incapable of producing water as a byproduct. Block Decl. ¶2, Ex. 7 at 537:21-540:12; *id.* at 602:10-603:5; Block Decl. ¶2, Ex. 7(c); Block Decl. ¶2, Ex. 8 at 628:12-629:7; Block Decl. ¶2, Ex. 34. The prototypes were not expected to be completed and tested before November 2020. Block Decl. ¶2, Ex. 36; Block Decl. ¶2, Ex. 32 at NKLA-BORTEANU_01022687. Nikola did not build the Badger from the ground up. Block Decl. ¶2, Ex. 7 at 553:13-555:24; Block Decl. ¶2, Ex. 33; Block Decl. ¶2, Ex. 32 at NKLA-BORTEANU_01022687; Block Decl. ¶2, Ex. 35. Nikola originally decided to use the Ford F-150 as a donor vehicle form which to build the

Badger prototype. Block Decl. ¶2, Ex. 7 at 535:537:7; Block Decl. ¶2, Ex. 11 at 1495:24-1496:5. Under its agreement with General Motors, the Badger contained no Nikola technology—GM was responsible for nearly all functional components as well as the vehicle's design. Block Decl. ¶2, Ex. 11 at 1482:5-1483:9; *id.* at 1484:24-1493:7; *id.* at 1504:20-1505:1; Block Decl. ¶2, Ex. 11(a); Block Decl. ¶2, Ex. 26 at 208:6-12. The Badger was to be assembled using parts from two existing GM models: the Hummer EV and the Silverado EV. Block Decl. ¶2, Ex. 11 at 1483:10-1484:22.

UBBEN'S RESPONSE: Disputed. As of February 2020, a considerable amount of work had been done to develop the Badger prototypes. [Babiarz Dep., attached as Ex. FF, 109:12-19.] In February 2020, Nikola employees had traveled to Italy to meet with a design company Italdesign regarding building Badger prototypes and what components would be used in the production. [*Id.* at 43:21-47:14.] In March 2020, Nikola engaged a company called Technosports to perform engineering work and chassis builds for the Badger. [*Id.* at 67:17-23.] Initially, the Badger prototypes were expected to be completed in September 2020. [*Id.* 75:3-76:1, 79:5-10.] The November 2020 timeline was not communicated until July 2020. [*Id.* at 93:13-19; 96:3-13.] By July 2020, production of the Badger had already begun. [*Id.* at 118:4-119:5.] The design of the cab of the Badger, including the body, interior, exterior, body panels, and infotainment system were custom to Nikola and were not taken from any existing donor vehicle. [*Id.* at 90:16-92:24.] Nikola's engineers designed the Badger prototypes specifically to accommodate a hydrogen fuel cell, which would not be necessary in a battery-powered vehicle. [*Id.* at 50:15-53:1.] Although the two prototypes developed in 2020 were battery vehicles because the experience to the driver would be the same, Nikola continued to do design and engineering work to develop a hydrogen fuel cell vehicle as well. [*Id.* at 63:14-64:5, 73:19-74:13.]

27. ***In-House Components:*** Nikola did not develop or manufacture its own batteries, frames, or inverters. Block Decl. ¶2, Ex. 28 at 103; Block Decl. ¶2, Ex. 27 at 43, 56-58;

Block Decl. ¶2, Ex. 24 at 184:18-22, 187:3-23. Instead, the company relied on partners for technology, controls, E-axle and inverter development. Block Decl. ¶2, Ex. 20 at 978:19-23; *id.* at 982:14-22; Block Decl. ¶2, Ex. 27 at 43, 50-52; Block Decl. ¶2, Ex. 24 at 190:17. Milton frequently led negotiations and agreements with various third parties to produce these components. Block Decl. ¶2, Ex. 18 at 27.

UBBEN'S RESPONSE: Undisputed.

28. The overlapping Challenged Statements were public. ECF No. 224 at 13 (January 6, 2025).

UBBEN'S RESPONSE: Disputed in part. Plaintiffs do not define "overlapping Challenged Statements." However, undisputed that the alleged misrepresentations in the SAC were public.

29. Plaintiffs bought stock during the Class Period. ECF No. 24-4 (November 16, 2020).

UBBEN'S RESPONSE: Undisputed.

30. The Court has already found "that Nikola stock traded in an efficient market throughout the Class Period." ECF No. 224 at 22 (January 6, 2025).

UBBEN'S RESPONSE: Disputed as to characterization of the Court's class certification ruling as an indisputable material statement of fact. The Court's finding for purposes of class certification is not binding on the jury during the merits phase of the case. This is not a material statement of fact but an improper argument. *See* Ubben's Opposition to Plaintiffs' Motion for Partial Summary Judgment.

31. The Court previously expressly rejected Defendants [sic] price impact arguments and granted Plaintiffs' Motion for Class Certification. *Id.* at 22-25.

UBBEN'S RESPONSE: Disputed as to characterization of the Court's class certification ruling as an indisputable material statement of fact. The Court's finding for purposes of class certification is not binding on the jury during the merits phase of the case. This is not a material statement of fact but an improper argument. *See* Ubben's Opposition to Plaintiffs' Motion for Partial Summary Judgment.

32. As noted above, the materiality of the overlapping Challenged Statements was previously determined in the context of Milton's criminal trial.

UBBEN'S RESPONSE: Disputed. Plaintiffs do not define "overlapping Challenged Statements." There was no finding as to materiality as to any statements beyond those referenced in Exhibit 1 to the Block Declaration. Moreover, Plaintiffs' assertion is not a statement of material fact but a vague and improper argument.

**UBBEN'S ADDITIONAL STATEMENT OF FACTS**

33. None of the misstatements for which Milton was convicted are statements attributable to Ubben, as Milton's criminal trial was limited to his own statements made on social media, podcasts, and in media interviews. [Block Decl. ¶ 2, Ex. 1 and 2; Trans. of Proceedings in *United States v. Milton*, 1:21-CR-00478 (S.D.N.Y. Oct. 13, 2022) at Dkt. 246 (identifying Milton's statements on which fraud charges were based), attached hereto as Ex. GG.]

34. Arbitrage activity was significantly constrained during the Class Period, with reports of Nikola stock being "difficult, if not impossible" to short, and borrowing fees above 600% of the stock price. [Roper Report, attached as Ex. HH, ¶¶ 72–74.] This limitation on arbitrage means that Nikola's stock price could not reflect downside pessimistic opinions from would-be short sellers and thus did not reflect all publicly available information. [*Id.* ¶ 77.]

35. Nikola's public float was only 6% of shares outstanding before July 17, 2020, and only 23% thereafter, rebutting efficiency. [*Id.* ¶¶ 64–65.]

36. Nikola's common stock sold at a significant premium relative to its warrant for several weeks at the start of the Class Period, a fact that should not be possible in an efficient market. [*See id.* ¶¶ 82–100.]

37. Plaintiffs' expert Dr. Nye assessed market efficiency solely by studying Nikola's earnings announcements. But Nikola was a pre-revenue company and the market was not focused on its earnings announcements at the time. [*Id.* ¶¶ 102, 106–07, 112; *see also* Nye

Dep., attached as Ex. II, 197:11–23 (explaining that the market did not react to Nikola's better-than-expected financial results because Nikola was "pre-revenue" and was "still losing money").]

38. Dr. Nye failed to consider the fact that, as a pre-revenue company with a highly-engaged retail investor base, Nikola's stock was extremely volatile. [Roper Report, Ex. HH, ¶¶ 125–37.] Nye intentionally leveraged that volatility to reverse-engineer the results he wanted. [Nye Dep., Ex. II, 178:11–179:10.]

39. Plaintiffs' alleged price impact evidence fails to isolate the price impact of Ubben's statements in particular, as opposed to the alleged misrepresentations of Milton or the other Defendants. [Hubbard Report, attached as Ex. JJ, 13–14, ¶¶ 34–36, ¶¶ 80-118.]

DATED this 3rd day of December, 2025.

SNELL & WILMER L.L.P.

By: *s/ Patrick A. Tighe*

Jennifer Hadley Catero
Patrick A. Tighe
One East Washington Street, Suite 2700
Phoenix, AZ 85004

and

AKIN GUMP STRAUSS HAUER & FELD LLP

Neal R. Marder (Admitted *Pro Hac Vice*)
Joshua A. Rubin (Admitted *Pro Hac Vice*)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022

M. Scott Barnard (Admitted *Pro Hac Vice*)
Jessica Mannon (Admitted *Pro Hac Vice*)
Tabitha Kempf (Admitted *Pro Hac Vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201

*Attorneys for Defendant Jeffrey Ubben*