**HATCH LAW GROUP PC**
Brent O. Hatch (*pro hac vice*)
Adam M. Pace (*pro hac vice*)
Tyler V. Snow (*pro hac vice*)
22 E. 100 S., Suite 400
Salt Lake City, UT 84111
(801) 869-1919
hatch@hatchpc.com
pace@hatchpc.com
snow@hatchpc.com

**WALLIN HESTER, PLC**
Troy A. Wallin (No. 023522)
Chad A. Hester (No. 022894)
1760 E. Pecos Rd., #332
Gilbert, AZ 85295
(480) 240-4150
TWallin@wallinhester.com
C.Hester@wallinhester.com
*Attorneys for Defendant Trevor Milton*

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Borteanu, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Nikola Corporation; Trevor Milton; Mark A. Russell; Kim J. Brady; Britton M. Worthen; Steve Girsky; Steven Shindler; and Jeffrey Ubben,<br><br>Defendants. | No. CV-20-01797-PHX-SPL<br>No. CV-20-01819-PHX-DIR (cons.)<br>No. CV-20-02123-PHX-JJT (cons.)<br>No. CV-20-02168-PHX-DLR (cons.)<br>No. CV-20-02237-PHX-DLR (cons.)<br>No. CV-20-02374-PHX-DWL (cons.)<br><br>**DEFENDANT TREVOR MILTON'S OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiffs seek to avoid their burden to actually prove their Section 10(b) securities fraud claim against Milton and to unfairly prejudice Milton and the other defendants' ability to defend themselves at trial through an unwarranted application of collateral estoppel which, if granted, would essentially hand Plaintiffs a blank check for damages to fill out in any amount they ask the jury for. The Court should reject this argument because the necessary elements to apply collateral estoppel are not satisfied. The issues in the three other cases that Plaintiffs rely on to argue estoppel are not identical to the issues in this case, and those cases involved different legal standards and did not actually litigate or decide through a final judgment any of the elements of Plaintiffs' Section 10(b) claim. Further, Plaintiffs ignore that the Court has broad discretion to decline to apply collateral estoppel where it would be unfair to apply it, even if the required elements were satisfied (which they are not). There are compelling reasons for the Court to exercise this discretion and decline to apply collateral estoppel in this case because application of collateral estoppel would not promote judicial economy, it would be unfair, and it would cause undue prejudice and confusion.

Plaintiffs also misstate the law in asking the Court to grant them summary judgment on the issue of reliance based on the rebuttable presumption of reliance granted to them in the Court's class certification order. The presumption can be rebutted at trial, and Milton has developed the evidence necessary to rebut it through the testimony of his retained expert Laurel Van Allen, who demonstrates through an event study and thorough intra-day stock price analysis that the alleged misstatements did not cause a price impact in Nikola's

stock, and that the market did not respond to the alleged misstatements or view them as material.  On this issue and otherwise, as discussed in the accompanying response to Plaintiffs' Statements of Fact, there are genuine issues of material fact that prevent the entry of summary judgment for Plaintiffs. The Court should therefore deny Plaintiffs' motion in its entirety.

### STANDARD OF REVIEW

A summary judgment motion must be denied unless the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States ex rel. Thomas v. Touchstone Behav. Health*, 774 F. Supp. 3d 1179, 1187 (D. Ariz. 2025) (quoting Fed. R. Civ. P. 56(a)). "At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial." *Id.* at 1188 (citation omitted). "[T]he court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor." *Id.* (citations omitted).  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Id.* (quoting *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Tw*o, 249 F.3d 1132, 1134 (9th Cir. 2001) (cleaned up)).

### ARGUMENT

**I.    PLAINTIFFS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THEIR SECURITIES FRAUD CLAIM AGAINST MILTON UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL.**

Nonmutual offensive collateral estoppel can be applied under certain circumstances

to "prevent[] 'a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff.'" *United States v. Town of Colorado City, Ariz.*, No. 3:12-CV-8123-HRH, 2015 WL 3774315, at *6 (D. Ariz. June 17, 2015) (citing *Syverson v. Int'l Business Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). The elements that must be proven before this type of collateral estoppel can be applied are:

> (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

*Id.* (citing *Syverson*, 472 F.3d at 1078). However, the district court has "'broad discretion' … to take potential shortcomings or indices of unfairness into account when considering whether to apply offensive nonmutual issue preclusion, even where the above-listed standard prerequisites are met." *Id.* "Indeed, where 'the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of collateral estoppel.'" *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) (citing *Parklane Hosiery,* 439 U.S. at 322); *see also Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991, 999 (D. Ariz. 2012) (exercising discretion not to apply collateral estoppel because preventing defendants from litigating issues would be unfair).

Plaintiffs ask the Court to apply this type of collateral estoppel to grant them partial summary judgment on their private securities fraud claim against Milton under Section 10(b) of the Exchange act based on three other cases: (1) *USA v. Milton*, Case No. 1:21-cr-00478 (S.D.N.Y.) (the "Criminal Case"), (2) an arbitration proceeding between Nikola and Milton (the "Arbitration"), and (3) a bankruptcy proceeding involving Nikola (the "Nikola

Bankruptcy") (collectively, the "Other Cases").

Milton was a party, or in privity with a party, in the Other Cases, but as discussed further below, the other required elements to apply collateral estoppel are not satisfied. Further, even if Plaintiffs can show a partial factual overlap between the allegedly misleading statements at issue in the Criminal Case and the much more expansive case that Plaintiffs have alleged in this lawsuit, the Court should exercise its discretion to not apply collateral estoppel in this case because it would be manifestly unfair to do so.

### A.     The Issues in the Other Cases And In This Case Are Not Identical.

The burden of proving the identity of issues between cases rests on the party asserting collateral estoppel. *Hernandez v. Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980). "The doctrine applies only to issues that are identical in both actions. **Issues are not identical if the second action involves application of a different legal standard**, even though the factual setting of both suits be the same." *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971) (emphasis added).

Additional factors that bear on the question of whether issues are identical are: "[1] whether there is a substantial overlap between the evidence or argument advanced in both proceedings, [2] whether new evidence or argument involves the application of the same rule of law as applied in the earlier decided action, and [3] the degree to which the claims advanced in both actions are closely related." *Syverson*, 472 F.3d at 1080-81 (quoting *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999)) (cleaned up).

Here, Plaintiffs are seeking summary judgment against Milton as to his liability for Count One of the SAC, which alleges a private securities fraud claim for violation of

Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.[1]  The elements that Plaintiffs must prove to prevail on this claim are: "(1) a material misrepresentation or omission of fact by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

As discussed below, the issues in the Other Cases are not identical to the issues in this case, so collateral estoppel cannot apply.

**1. *The Arbitration.*** In evaluating whether issues are identical, courts consider, in the context of a prior arbitration proceeding, "the record, if one exists, including any findings of the arbitrators." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

As Plaintiffs acknowledge, the Arbitration involved claims by Nikola "against Milton for breach of fiduciary duty and various damage claims." Dkt. 317 p. 3, ¶ 10.[2] As set forth in the Decision and Final Award in the Arbitration: "A claim for breach of fiduciary duty under Delaware law includes only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty." Plfs.' Ex. 18, Dkt. 323-7 p. 50 (cleaned up). Under Delaware law, a corporation's officers and directors owe the corporation a "triad of

---

[1] Dkt. 129, p. 286-293.  Plaintiffs have not sought summary judgment as to Counts Two or Three of the SAC, which allege claims for scheme liability and control liability.  Dkt. 316 at p. 29.

[2] Nikola's damages "claims" were all theories of relief associated with the breach of fiduciary duty claim. *See* Plfs.' Ex. 18, Dkt. 323-7 p. 77 (Nikola's request to recover legal fees it advanced for Milton's defense, its attempt to recover the fine it paid to the SEC, and legal fees and related professional fees for services rendered to Nikola and its employees).

duties: loyalty, good faith, and due care." *Id.* p. 51 (cleaned up).

The Arbitration decision defined these duties as follows:

- "The fiduciary duty of loyalty requires that directors and officers be disinterested and independent and act in good faith, with an honest belief that the action is in the best interests of the company and its stockholders." *Id.*

- "The duty of good faith . . . requires that directors and officers act at all times with an honesty of purpose and in the best interests and welfare of the corporation." *Id.* p. 52 (cleaned up).

- "The fiduciary duty of due care requires that directors and officers use that amount of care which ordinarily careful and prudent men would use in similar circumstances and consider all material information reasonably available in making business decisions." *Id.* p. 52-53 (cleaned up).

In its ruling on Nikola's breach of fiduciary duty claim, the Arbitration panel did not analyze or rule on **any** of the issues or elements applicable to Plaintiffs' securities fraud claim under Section 10(b). The Arbitration did not adjudicate whether the alleged misrepresentations in the SAC were material; whether they were made in connection with a purchase or sale of a security; whether any investors relied upon any alleged misrepresentation; whether any investors suffered loss; and whether loss causation exists for the losses that Plaintiffs are seeking in this case. *See* Plfs.' Ex. 18, Dkt. 323-7 p. 53-57.

Plaintiffs argue that collateral estoppel should apply based on the Arbitration because "the majority of the arbitration panel focused on precisely the same categories of misstatements alleged in the CAC" and that the panel found that "'Milton knew these statements were false.'" Dkt. 316-1 p. 15. As discussed above, however, the collateral estoppel "doctrine applies only to issues that are identical in both actions. Issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." *Peterson*, 451 F.2d at 1292.

Not only are the nature and elements of the claims not even remotely the same, but the claims are vastly different in other ways. For example, as between the two cases, the duties owed are different: an officer or director's—or, in Milton's case, the executive chairman's—alleged fiduciary duty is owed to the corporation, the purported violation of which was evaluated under Delaware common law. Plfs.' Ex. 18, Dkt. 323-7 p. 50-53. In the context of a securities case, Milton's alleged duty is owed to third-party investors, the purported violation of which is evaluated under federal statutory law. *See* Dkt. 129 p. 286-293.

Moreover, the Arbitration involved a much more expansive time period than is at issue in this case. *Compare* Plfs.' Ex. 18, Dkt. 323-7 p. 5 ("The gravamen of the claims is that beginning in at least 2016 . . . and, continuing through September 2020 . . . Milton breached his fiduciary duties to Nikola. . . .") *with* Dkt. 224 p. 27 (defining the operative Class Period as "the period June 4, 2020 through February 25, 2021"). In sum, the issues decided in the Arbitration are vastly different, and are clearly not identical to the issues involved in this case.

The district court's confirmation of the Arbitration award is even further removed from any colorable connection to the issues involved in this case, because of the restrictive standard of review that applies to it.   In evaluating whether to confirm an arbitration award issued pursuant to the FAA, courts may only vacate an award in extremely limited circumstances, such as "where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Nikola Corp. v. Milton*, No. CV-23-02635-PHX-DJH, 2024 WL 4120320,

at *3 (D. Ariz. Sept. 9, 2024) (quoting *Stafford v. Baart Behavioral Health Servs.*, 855 F. App'x 426, 427 (9th Cir. 2021)). "Arbitrators exceed their powers . . . when the resulting award is in manifest disregard of the law or completely irrational," which requires a "showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id.* at *9 (cleaned up). The only issue that the district court determined was whether the low bar for confirming the Arbitration award was met.

Therefore, the district court's confirmation of the Arbitration award—like the underlying Arbitration award itself—cannot serve as a basis to collaterally estop Milton from contesting the elements of Plaintiffs securities fraud claim under Section 10(b), which were not raised or even remotely at issue in the Arbitration.[3]

***2. The Nikola Bankruptcy.*** As Plaintiffs acknowledge, the Nikola Bankruptcy ruling involved "Milton's objection to the equitable subordination of his claims against Nikola." Dkt. 316-1 p. 4. The issues in the Nikola Bankruptcy involved the application of different legal standards and are not identical to the issues involved in this case. As the

---

[3] Plaintiffs also argue that Milton's invocation of his Fifth Amendment privilege during his Arbitration deposition can somehow be used against Milton to grant Plaintiffs an adverse inference in this matter. Dkt. 316-1 p. 14-15. Plaintiffs are incorrect. The purpose of the rule permitting a civil court to draw an adverse inference based on a deponent's invocation of the Fifth Amendment is to avoid unfairness and prejudice to the party which did not have the opportunity to receive answers to deposition questions. *See, e.g., Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911-912 (9th Cir. 2008); *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (citing *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir. 1979)). That rule is not implicated here whatsoever, given that Milton testified at his deposition in this case and did not invoke the Fifth Amendment at any time. *See generally* Ex. 5.

Bankruptcy court summarized, "we identified the three-prong test . . . which are [sic] [1] that the claimant must have engaged in some type of inequitable conduct, [2] that the misconduct must have resulted in injury to other creditors or conferred an unfair advantage on the claimant, and [3] that equitable subordination of the claim must not be inconsistent with the Bankruptcy Code." Plfs.' Ex. 22, Dkt. 326-1, 123:19-25.

In arriving at its decision on Milton's objection regarding the equitable subordination issue, the Bankruptcy court did not analyze or rule on any elements of Plaintiffs' securities fraud claim under Section 10(b), including whether any alleged misrepresentations were material; whether they were made with scienter; whether they were made in connection with a purchase or sale of a security; whether any investors relied upon any alleged misrepresentation or suffered economic losses, or whether there is loss causation for the losses that Plaintiffs claim in this action. *See* Plfs.' Ex. 22, Dkt. 326-1, 123:1-131:19.[4]

The issues involved at a Bankruptcy hearing on an objection to equitable subordination—the relevant portion of which hearing did not even entail taking the testimony of any witnesses—are not identical to the issues involved in this case, and it cannot serve as a basis to collaterally estop Milton from contesting the elements of

---

[4] Although the Bankruptcy court commented on "injury," it did so in an unquantified, conclusory fashion and only in the context of the equitable subordination issue before it. *See* Plfs.' Ex. 22, Dkt. 326-1, 130:20-24 ("The evidence before me is that the fraudulent statements and breaches of fiduciary duty resulted in an injury to creditors, to shareholders, and to the company itself, and that damage caused millions and millions and millions, hundreds of millions of dollars in losses."). The Bankruptcy court did not analyze whether Plaintiffs in this case suffered an economic loss under the standards applicable to their Section 10(b) claim, and it did not receive any evidence to establish or quantify any loss.

Plaintiffs' securities fraud claim under Section 10(b), which were not raised or even remotely at issue in the bankruptcy hearing.

**3. The Criminal Case.** In evaluating whether issues in a criminal case are identical for the purposes of collateral estoppel, courts consider the indictment, jury instructions and verdict forms. *See Hardwick v. Cnty. of Orange*, 980 F.3d 733, 742 (9th Cir. 2020). Here, those documents show: (1) that the SAC in this case is based on a much broader scope of alleged conduct and much larger number of alleged misstatements than was at issue in the indictment, *see* Response to Plaintiffs' SOF 1; and (2) that the elements and legal standards of the criminal charges in the indictment are not the same that Plaintiffs are required to prove for their private securities fraud claim under Section 10(b). *See* Response to Plaintiff's SOF 3.[5] Thus, the issues are not identical.

The Court should also conclude that the issues in this case and the Criminal Case are not identical for the same reasons applied by the Court in *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000), where the Court concluded that collateral estoppel could not apply where "it is not possible to know the compass" of the jury's findings. In *Dodge,* the underlying complaint alleged eleven specific allegations of negligence, but the jury was not instructed on the specific duty allegedly breached and the general verdict form did not

_____

[5] Additionally, as with the Arbitration, the Criminal Case involved a more expansive period than what is at issue in this case. For example, while in this case the Class Period is the period June 4, 2020 through February 25, 2021, the Criminal Case involved the period "[f]rom at least in or about November 2019 through at least in or about September 2019." Plfs.' Ex. 4, Dkt. 318-5 p. 1; *see also* Plfs.' Ex. 3, Dkt. 318-4 p. 1; *see also* Plfs.' Ex. 2 (listing a total of 39 alleged misstatements common between the Criminal Case and this case, more than one-third of which—14—occurred before the Class Period in this case even began, on June 4, 2020).

identify what specific act formed the basis of the general finding of negligence. *Id.* Although the plaintiff seeking to apply collateral estoppel alleged one of the theories of negligence that was at issue in the underlying complaint, the Court found that the issues were not identical for collateral estoppel purposes because "we cannot say as a matter of law the issue decided by the first jury is identical to the issue in controversy in this case." *Id.* In other words, because the jury did not identify the basis for its verdict and it was possible that the negligence finding in the underlying case was based on one of the other theories presented, the issues were not identical and collateral estoppel could not apply. *See also Coburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235, 1238 (D. Utah 2001) ("Numerous other courts . . . have refused to apply collateral estoppel when there was any ambiguity in discerning precisely what the jury actually and necessarily decided.") (listing cases).

The jury verdict and jury instructions in the Criminal Case suffer from similar problems as those analyzed in *Dodge* which make it impossible to know the compass of the jury's findings. The jury received only a general question on the verdict form of whether Mr. Milton was guilty of Count One: Securities Fraud under Title 15 (guilty); Count Two: Securities Fraud under Title 18 (not guilty); Count Three: Wire Fraud under Title 18 (guilty); and Count Four: Wire Fraud under Title 18 (guilty). *See* Ex. 1.[6] Plaintiffs have not asserted claims under any of these sections in this lawsuit against Milton (nor would they have the right to do so), and the jury instructions and general verdict form do

---

[6] References herein to exhibit numbers (e.g., "Ex. 1") are to exhibits attached to Defendant Trevor Milton's Response to "Plaintiffs' Statement of Undisputed Material Facts," filed contemporaneously herewith.

not identify any specific statements or acts by Milton that formed the basis for the jury's findings on any count. *Id.* Thus, this Court cannot determine with certainty and cannot rule as a matter of law which, or how many of the alleged misstatements or omissions at issue in the Criminal Case actually formed the basis of the jury's findings.

Likewise, the Court cannot determine with certainty whether the jury actually found that Milton made an untrue statement or omission of a material fact, because the jury was not required to make that finding to reach its verdict on Counts One, Three, or Four. *See* Milton's Response to Plaintiffs' SOF 3 (listing jury instructions). For example, the jury could have based its verdict on Count One based solely on a finding that Milton employed a device, scheme or artifice to defraud (the first option presented in the instructions), without having actually made any untrue statement or omission of a material fact. There is therefore no basis for Plaintiffs' assertion that the materiality of the alleged misstatements at issue in the SAC "was litigated and resolved in Milton's criminal trial." Dkt. 316-1, p. 21. Tellingly, Plaintiffs' citation for this point ("SUF ¶¶3-4") does not identify a single purported misstatement alleged in the SAC that the jury "conclusively established" to be material, and only recites that "a federal jury convicted Milton," Dkt. 317, p. 1-2 ¶¶ 3-4.

Further, the jury in the Criminal Case was not instructed (for any of the four criminal counts) about a need to find reliance by investors on false or misleading statements of material fact allegedly made by Milton, or the need to show that Milton's statements caused economic loss, or loss causation for the damages that Plaintiffs seek in this action. Plfs.' Ex. 15, Dkt. 323-4, 3196:2-3246:2. To the contrary, the jury was expressly instructed on

the Count Four wire fraud charge that the claim "**does not require that any particular person actually relied on, or actually suffered damages as a consequence of, any fraudulent representation or concealment of facts**." Plfs.' Ex. 15, Dkt. 323-4, 3213:23-3214:1 (emphasis added).[7] Thus, the Court cannot rule as a matter of law that any statement that formed the basis of the jury's verdict is one that Plaintiffs relied on, or one that actually caused Plaintiffs economic loss.

Plaintiffs do not contend that the jury in the Criminal Case actually decided the issues of reliance, loss, or loss causation—rather, they improperly ask the Court to apply collateral estoppel against Milton on those issues based solely on statements made by Judge Ramos "[a]t sentencing." Dkt. 317 p. 2 ¶ 5.   The Court must reject this argument because it is **presumptively improper** to apply collateral estoppel to sentencing findings in a subsequent civil action. *See, e.g.*, *Maciel v. Commissioner of Internal Revenue*, 489 F.3d 1018 (9th Cir. 2007); *United States v. U.S. Currency in the Amount of $119,984.00*, 304 F.3d 165 (2d Cir. 2002); *Honken v. United States*, 42 F. Supp. 3d 937, 1003 (N.D. Iowa 2013); *Doe v. Schneider*, Civ. A. 08-3805, 2013 WL 5429229 at *1 n. 3 (E.D. Pa. Sept. 30, 2013); *United States v. Real Prop. Located at 7401-03 S. Racine Ave.*, Chicago, Ill., No. 04 CV 5885, 2009 WL 806120, at *2 (N.D. Ill. Mar. 25, 2009); *United States v. Moon*, No. 3:06-0406, 2007 WL 9782951, at *4 (M.D. Tenn. Aug. 24, 2007).

It is improper to apply collateral estoppel to sentencing findings because doing so "implicates serious concerns of fairness, while appearing to offer little benefit in terms of

---

[7] *See also* Dkt. 323-4, 3216:15-17 ("The government need not prove that the intended victim or victims was or were actually harmed . . . .").

increased efficiency." *U.S. Currency*, 304 F.3d at 172. As the Second Circuit pointed out in *U.S. Currency*, "[c]ivil proceedings offer procedural opportunities that differ from those available at sentencing and 'that could command a different result.'" *Id.* at 172-73 (quoting *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 305 (2d Cir. 1999)). Further, the incentive to litigate a sentencing finding is "'frequently less intense, and certainly more fraught with risk, that it would be for a full-blown civil trial.'" *Id.* at 173 (quoting *Monarch*, 192 F.3d at 305).

Here, Plaintiffs have not (and cannot) show that it would be fair and efficient to collaterally estop Milton from challenging issues that were not decided by the jury in the Criminal Case, and which were only commented on by the judge in the context of sentencing. The Court should therefore disregard any statements or alleged findings made during sentencing that are presumptively improper to be relied upon for collateral estoppel purposes.

In summary, identical issues were not involved in any of the Other Cases when compared with this case, so this element is not met. Accordingly, the doctrine of collateral estoppel does not apply.

**B.    Identical Issues Were Not Actually Litigated or Decided in a Final Judgment in the Other Cases.**

The second and third elements Plaintiffs must prove to support their collateral estoppel argument is that "the [identical] issue was actually litigated in the prior action[s]," and that "the [identical] issue was decided in a final judgment." *Syverson*, 472 F.3d at 1078 (citations omitted). Plaintiffs' arguments on these points rest on their mistaken assertion that the issues in this case and in the Other Cases are identical and have already

been adjudicated against Milton. Dkt. 316-1 p. 8-9. This is not so, for the reasons shown in Subsection A. above. There has been no final judgment in any of the Other Cases deciding the elements that Plaintiffs must prove to prevail on their private securities fraud claim against Milton under Section 10(b), including the elements of reliance, materiality, economic loss, or loss causation for the damages that Plaintiffs seek in this lawsuit against Milton.

**D.    The Court Should Exercise its Discretion to Not Apply Collateral Estoppel Because Doing So Would Be Grossly Unfair.**

Even if the Court finds that Plaintiffs have established the necessary elements to apply collateral estoppel against Milton on any element of their Section 10(b) claim based on the Other Cases (which they have not), there are compelling reasons why the Court should exercise its broad discretion to not apply it in this case.

*First*, in the absence of any clarity from the jury verdict form as to what alleged conduct by Milton the jury based its verdict on, and whether the jury actually found that **any** of the alleged statements were untrue or material, it would be patently unfair for this Court to summarily and categorically decide what the jury did not: *i.e.*, to simply rule that *all* of Milton's alleged misstatements at issue are conclusively established as false, misleading, and material. The Court has already noted that "whether a statement is misleading should generally be left to the trier of fact." Dkt. 126 p. 47 (citing *Fecht v. The Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)). And as demonstrated in Milton's responses to Plaintiffs' statements of fact, there are genuine issues of material fact disputing Plaintiffs' allegations. Milton should be allowed to present these disputed facts at trial so that he can fairly defend himself.

*Second*, the fact that the jury convicted Milton on the Count One securities fraud charge under Title 15 but acquitted him on the Count Two securities fraud charge under Title 18 raises serious concerns about what the jury actually decided, and what led the jury to reach these different decisions despite largely similar instructions on both counts. These contradictory outcomes undermine the notion that application of collateral estoppel would be fair.

*Third,* applying collateral estoppel in this case would not promote judicial economy and would only serve to unfairly prejudice Milton and the other defendants and provide Plaintiffs an unfair windfall because there are no claims that can be completely resolved through its application, and any partial application would inevitably and unfairly influence and poison the jury's decision against Milton and the other defendants regarding the remaining disputed issues in this case. Thus, the risk of prejudice and confusion significantly outweigh any benefit that might be derived from applying collateral estoppel. *See Coburn*, 174 F. Supp. 2d at 1240-41.

*Finally*, the full and unconditional pardon that Milton received from President Trump on March 27, 2025 provides an additional basis for the Court to exercise its broad discretion to decline to apply collateral estoppel to the conviction in the Criminal Case. President Trump publicly indicated in a press conference on March 28, 2025 that he pardoned Milton because he believed that Milton's prosecution was politically motivated and unfair, and that Milton "did nothing wrong." A presidential pardon granted on the basis of a belief of innocence (i.e., that the person did nothing wrong) should preclude the application of collateral estoppel. *See, e.g., Lorance v. Commandant, U.S. Disciplinary*

*Barracks*, 13 F.4th 1150, 1156-57 (10th Cir. 2021) (holding that acceptance of a pardon did not have the legal effect of a confession of guilt, and recognizing that a president may base a pardon on the belief that the person pardoned is innocent of the crime for which he was convicted); *Evans v. City of Chicago*, No. 04C3570, 2006 WL 463041, at *16 (N.D. Ill. Jan. 6, 2006) (finding that a pardon based on innocence acts to prevent prior decisions in the proceeding to which the pardon pertains from having preclusive effect in a subsequent civil rights action); *Evans v. Katalinic*, 445 F.3d 953, 955-56 (7th Cir. 2006) (collateral estoppel argument "absurd" because plaintiff received full pardon from Illinois governor based on innocence); Fed. R. Evid. 609(c)(2) (prohibiting the use for impeachment purposes of a conviction that has been the subject of a pardon based on innocence).

## II.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE ELEMENT OF RELIANCE.

The Court held in its class certification order that Plaintiffs are entitled to a **<u>rebuttable</u>** fraud-on-the-market presumption of reliance.  Dkt. 224, p. 13, 25.  This presumption does not entitle Plaintiffs to summary judgment on the issue of reliance, as they wrongly contend.  Dkt. 316 pp. 23-24.  It is just a presumption, and Milton is entitled to present evidence at trial to rebut it.  *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 277 (2014) (holding that securities fraud defendants can "rebut the presumption of reliance with evidence of a lack of price impact, **not only at the merits stage—which all agree defendants may already do**—but also before class certification.") (emphasis added); *In re DVI, Inc. Sec. Litig.,* 639 F.3d 623, 637 (3d Cir. 2011) (listing ways that defendants can rebut the presumption, "including by showing: (1) the market did not

respond to the alleged misrepresentations; (2) the misrepresentations were immaterial; (3) a plaintiff did not actually rely on the misrepresentations; (3) or (4) a plaintiff would have sold the securities without relying on the integrity of the market.").

There are genuine issues of material fact that preclude summary judgment on the issue of reliance.  Milton has developed new evidence that was not presented at the class certification stage to rebut the presumption of reliance through the testimony of his retained expert Laurel Van Allen.  *See* Milton's response to Plaintiff's SOF 31.

Ms. Van Allen performed an event study and thorough analysis of intraday stock price movement[8] that rebuts the fraud-on-the-market presumption by showing that the market did not respond to the alleged misrepresentations. Ex. 14, Report of Laurel Van Allen dated Aug. 4, 2025; Ex. 15, Rebuttal Report of Laurel Van Allen dated Sept. 26, 2025.

Ms. Van Allen also rebuts the presumption of reliance by establishing that the alleged misstatements were immaterial to the market.  She performed a thorough review of the total mix of information that was available to the public during the applicable time, including more than 6,650 news events and 104 analyst reports that were published regarding Nikola between June 4, 2020 and February 26, 2021. Ex. 14, Report p. 8. Based on this review, her event study, and her intraday stock price analysis, Ms. Van Allen concludes that "the Alleged Misstatements and Alleged Corrective Disclosures correspond to a lack of price impact or confounding information that explains the price movements in

---

[8] *See, e.g.,* Figures 4-14 contained in Ex. 14, Report of Laurel Van Allen at pp. 30 (6/8/20); 35 (6/9/20); 40 (8/3/20); 43 (8/10/20); 48 (9/8/20); 59 (9/21/20); 66 (9/23/20); 72 (10/16/20); 78 (11/30/20); 87 (9/10/20); 96 (2/26/21).

Nikola Common Stock. The economic evidence therefore indicates that the market did not respond to—or view as material—the Alleged Misstatements." *Id.* p. 100.

The Court **has not** already considered or rejected the expert opinions and analysis offered by Ms. Van Allen which rebut the presumption of reliance, as Plaintiffs misrepresent.  Further, Ms. Van Allen does not offer the same opinions or employ the same methodology that Dr. Roper (Nikola's retained expert) used in opposing class certification, so there is no basis for Plaintiffs' misguided contention that the class certification order precludes Milton from presenting evidence at trial to rebut the presumption.  Dkt. 316 at p. 29.  The Court therefore must deny summary judgment on the issue of reliance.

## CONCLUSION

For these reasons, Defendant Milton respectfully requests that the Court deny Plaintiffs' motion for partial summary judgment in its entirety.

DATED December 3, 2025.

HATCH LAW GROUP PC
By: */s/ Adam M. Pace*
Brent O. Hatch (*pro hac vice*)
Adam M. Pace (*pro hac vice*)
Tyler V. Snow (*pro hac vice*)
22 E. 100 S., Suite 400
Salt Lake City, UT 84111
(801) 869-1919

WALLIN HESTER PLC
Troy A. Wallin (No. 023522)
Chad A. Hester (No. 022894)
1760 E. Pecos Rd. #332
Gilbert, AZ 85295
(480) 240-4150

*Attorneys for Defendant Trevor Milton*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2025, this document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Adam M. Pace*