**SNELL & WILMER L.L.P.**
Jennifer Hadley Catero (#018380)
Patrick A. Tighe (#033885)
One East Washington Street
Suite 2700
Phoenix, AZ 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
jcatero@swlaw.com
ptighe@swlaw.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Neal R. Marder (Admitted *Pro Hac Vice*)
Joshua A. Rubin (Admitted *Pro Hac Vice*)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone: 310.229.1000
Facsimile: 310.229.1001
nmarder@akingump.com
rubinj@akingump.com

M. Scott Barnard (Admitted *Pro Hac Vice*)
Jessica Mannon (Admitted *Pro Hac Vice*)
Tabitha Kempf (Admitted *Pro Hac Vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343
sbarnard@akingump.com
jmannon@akingump.com
tkempf@akingump.com

*Attorneys for Defendant Jeffrey Ubben*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Borteanu, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Nikola Corporation; Trevor Milton; Mark A. Russell; Kim J. Brady; Britton M. Worthen; Steve Girsky; Steven Shindler; and Jeffrey Ubben,<br><br>Defendants. | No. CV-20-01797-PHX-SPL<br>No. CV-20-01819-PHX-DIR (cons.)<br>No. CV-20-02123-PHX-JJT (cons.)<br>No. CV-20-02168-PHX-DLR (cons.)<br>No. CV-20-02237-PHX-DLR (cons.)<br>No. CV-20-02374-PHX-DWL (cons.)<br><br>**DEFENDANT JEFFREY UBBEN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... - 1 -

II. ARGUMENT .................................................................................................................. - 2 -

   A. Plaintiffs' Claims Against Ubben are Time-Barred. ................................................ - 2 -

   B. Plaintiffs Offer No Evidence of Falsity. ................................................................... - 3 -

   C. Plaintiffs Offer No Evidence of Ubben's Scienter ..................................................... - 6 -

      *1.* The Opposition Fails to Show a Triable Issue of Fact that Ubben Knew Any Facts Contradicting the Form S-1 Statements. .................................................................... - 6 -

      *2.* Ubben's Sales of Nikola Stock Rebut Scienter. ......................................................... - 10 -

      *3.* Plaintiffs' Kitchen-Sink Scienter Arguments Fail. ...................................................... - 11 -

   D. Plaintiffs Offer No Evidence that Ubben's Allegedly False or Misleading Statements Caused Plaintiffs' Loss. ............................................................................................ - 12 -

   E. Plaintiffs' Section 20(a) Claim Fails. ...................................................................... - 13 -

III. CONCLUSION ............................................................................................................. - 14 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................... 13

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) .......................................................................... 5, 10

*Burgess v. Premier Corp.*,
   727 F.2d 826 (9th Cir. 1984) .................................................................................. 7

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*,
   65 F.4th 459 (9th Cir. 2023) ................................................................................... 2

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) .............................................................................................. 13

*Epstein v. Itron, Inc.*,
   993 F. Supp. 1314 (E.D. Wash. 1998) .................................................................... 7

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding
   Am., Inc.*,
   873 F.3d 85 (2d Cir. 2017) ..................................................................................... 2

*Hollinger v. Titan Cap. Corp.*,
   914 F.2d 1564 (9th Cir. 1990) .............................................................................. 10

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) .............................................................................. 11

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .................................................................................. 5

*In re Motorola Sec. Litig.*,
   505 F. Supp. 2d 501 (N.D. Ill. 2007) .................................................................... 13

*In re Mylan N.V. Sec. Litig.*,
   666 F. Supp. 3d 266 (S.D.N.Y. 2023) ................................................................... 12

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding
   Corp.*,
   320 F.3d 920 (9th Cir. 2003) ................................................................................ 11

*Petty v. Arizona*,
    2018 WL 2220665 (D. Ariz. May 15, 2018) ................................................................. 2

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) ............................................................................... 10

*In re REMEC Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) ..................................................................... 6

*S.E.C. v. Garcia*,
    2011 WL 6812680 (N.D. Ill. Dec. 28, 2011) ............................................................. 6

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ................................................................................. 6

*Vaughn v. Teledyne, Inc.*,
    628 F.2d 1214 (9th Cir. 1980) ................................................................................. 6

*Wadley v. Park at Landmark, LP*,
    264 F. App'x 279 (4th Cir. 2008) ............................................................................. 6

## I. INTRODUCTION

The Opposition improperly substitutes rhetoric for evidence. Plaintiffs contend that because they survived a motion to dismiss, the Court has already rejected Ubben's statute of limitations and merits defenses and found triable issues of fact. Not so. A motion for summary judgment is not the same as a motion to dismiss, and the Court no longer must accept Plaintiffs' allegations as true. Plaintiffs' reliance on recycled motion to dismiss arguments only confirms the absence of evidence in the record as it relates to Ubben.

Plaintiffs survived Ubben's statute of limitations defense at the motion to dismiss stage by arguing that the derivative complaints unsealed in April 2022 were necessary "to plead Ubben's scienter with particularity." Doc. 148 at 5-6. Now, however, Plaintiffs offer no evidence to support that assertion. Indeed, the Opposition fails to identify *any* unsealed materials that justify waiting more than two years to bring this action against Ubben.

On the merits, Plaintiffs have failed to provide any evidence to corroborate their allegations both that the challenged statements were false, or that Ubben possessed specific information contradicting them. With respect to falsity, Plaintiffs cannot explain away testimony and internal documents making it clear that both the Nikola One and Badger were in active development with set timetables, or that the public was well aware of the non-binding nature of Nikola's reservations. And with respect to scienter, Plaintiffs do not dispute that Ubben—unlike the other remaining Defendants—was an outside director who was not part of Nikola's management. Nor do they dispute that Ubben had no specific knowledge of, or involvement in, Nikola's product development or the 14,000 non-binding reservations that make up the claims against him. Plaintiffs' efforts to cobble together scienter from stray comments made in board presentations all fall woefully short. Finally, Plaintiffs cannot escape the fact that they have offered no evidence that Ubben's statements—as opposed to other alleged misrepresentations—caused Plaintiffs' loss.

With no triable issues of fact and no viable claims against Ubben, the Court should dismiss the claims against him with prejudice.

//

## II. ARGUMENT

### A. Plaintiffs' Claims Against Ubben are Time-Barred.

The Court has not "already rejected Ubben's statute of limitations defense" as Plaintiffs assert. Plaintiffs' Opposition to Ubben's Motion for Summary Judgment ("Opp.") at 5. Rather, at the pleadings stage, the Court reserved judgment on the issue after concluding "*it [wa]s possible* that Plaintiff was not aware of Defendant Ubben's alleged involvement until the derivative complaints were unsealed." Doc. 157 at 10 (emphasis added). But subsequent discovery definitively disproves this "possibility."

While Plaintiffs continue their refrain that that they could not have "pled a viable § 10(b) claim against Ubben prior to the Delaware Derivative Complaint being unsealed in April 2022" (Opp. 6), they fail to cite a single piece of evidence unsealed in 2022 relevant to Ubben's scienter as to his challenged statements, let alone "specific enough to provide an ordinary investor with indications of the probability . . . of a violation." *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 120 (2d Cir. 2017). It is not enough that "the minutes of Nikola's Board meetings were [not] publicly available before" 2022. Opp. 6. Instead, Plaintiffs must show that the previously sealed minutes contained information necessary for Plaintiffs' claims. *See York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 467 (9th Cir. 2023). Yet it is now apparent that these unsealed complaints and minutes contained no information about what Ubben knew when signing the Form S-1s—a fact Plaintiffs call "irrelevant" (Opp. 7), though it is the central issue of the statute of limitations analysis.

Trying to fabricate new information learned in 2022, Plaintiffs claim that the unsealed board minutes from April 9, 2020 show that Ubben was made aware of a "lack of production plans for the Nikola One." Opp. 8. But ***Plaintiffs cite no evidence in support of this assertion***. Rather, they cite the Court's order on the motion to dismiss, which in turn relied on the allegations in Plaintiffs' Complaint. *Id*. To state the obvious, Plaintiffs cannot manufacture a triable issue of fact from their own allegation. *Petty v. Arizona*, 2018 WL 2220665, at *4 (D. Ariz. May 15, 2018) ("At summary judgment . . . the Court

considers evidence not allegations"). As explained in Ubben's Motion for Summary Judgment, the April 9, 2020 meeting simply informed the board that "Nikola did not expect to have any physical hydrogen infrastructure built or operational until after September 30, 2020," a fact irrelevant to any live claim against Ubben. *See* Doc. 345 ¶ 4. The same is true for Plaintiffs' unsupported argument that "other facts from Board meetings alert[ed] Ubben . . . that the Badger was a concept only." Opp. 8. In reality, the board was informed that Nikola would not develop the Badger "unless [the company] enter[ed] into a strategic partnership with an established OEM," a fact explicitly disclosed in the Forms S-1. Doc. 111-1 at 91 (June Form S-1 at 77).

In sum, the only issue that prevented this Court from striking the claims against Ubben as time barred was Plaintiffs' claim that sealed documents were critical to their case. Now that the undisputed evidence conclusively demonstrates that the sealed documents contain nothing of probative value, summary judgment is warranted.

**B.    Plaintiffs Offer No Evidence of Falsity.**

Nothing in Plaintiffs' Opposition reveals a triable issue of fact that any of the three alleged misrepresentations in the Forms S-1 relating to the Nikola One, Badger, or non-binding reservations were false or misleading.

**Nikola One**. Plaintiffs' contention that the Nikola One was "abandoned" relies on the unsubstantiated assumption that "Nikola One" exclusively refers to the natural gas-powered truck introduced in 2016. But this is not what "Nikola One" meant in the Forms S-1. Instead, the Nikola One was clearly defined as Nikola's "Class 8 sleeper cab . . . *FCEV truck*[]." Doc. 111-1 at 90 (June Form S-1 at 76) (emphasis added). Given this definition, the evidence shows that Nikola's Class 8 sleeper FCEV truck was not abandoned; rather, it was merely identified as the model "farthest from production" (Opp. 11-12)—a detail noted in the S-1 filing itself. *See* Doc. 111-1 at 91 (June Form S-1 at 77) ("Production plans for the Nikola One will be announced once we have established a robust refueling infrastructure.").

- 3 -

      While highlighting Nikola's head of business development Elizabeth Fretheim's statement that the Nikola One was furthest from production, Plaintiffs ignore her unrebutted testimony and contemporaneous emails expressly stating that the Nikola One was not abandoned. *See* Doc. 329-3, Ex. J at 82-83, 126-127 (as of 2020, Nikola had production plans to build a Class 8 sleeper truck); *id*. at 135-136 (Nikola One would "be available in the United States"); Doc. 329-3, Ex. O (Fretheim writing in April 2020 that Nikola will still "want a sleeper" that "[c]ould be called the [Nikola] One"). Plaintiffs likewise ignore Nikola's CEO Mark Russell's internal email in August 2020 unambiguously announcing that "[Nikola's] introductory FCEV in North America **will be the Nikola One** configured as a sleeper." Doc. 329-3, Ex. Q (emphasis added). The fact that Nikola decided in August 2020 that the Nikola One would be the company's introductory FCEV is inconsistent with the vehicle being abandoned by June 2020.[1]

      **Badger.** Plaintiffs continue to parrot the proven falsehood that the Badger was "only a computer rendering." Opp. 13. It was this *allegation*—not evidence—that allowed Plaintiffs to survive the motion to dismiss. It is telling that Plaintiffs spend most of their Opposition quoting the Court's order at the motion to dismiss stage, rather than offering any actual evidence to back up their claims. They go so far as to claim that "this Court previously found" that "the Badger was merely a concept" at the time of the Forms S-1. Opp. 11, 14. But, of course, the Court's statements about what the Complaint *plausibly alleges* is not the Court serving as a finder of fact.

      In reality, discovery completely undermined Plaintiffs' theory of falsity as to the Badger. The Badger may have been a "computer rendering" in *November 2019* when Milton first announced the idea of a renewable energy-powered pickup truck, but by the

---

[1] Plaintiffs claim that, in Milton's criminal trial, "the United States showed that the Nikola One was a never-finished, never functional prototype whose development had been shelved after its unveiling." Opp. 11. But Milton's criminal trial pertained only to the truth and falsity of Milton's own statements on social media and in media interviews; the government never alleged, much less proved, that Nikola's Forms S-1 merely listing the Nikola One sleeper truck as a product were false or misleading in any way.

- 4 -

first half of 2020, Nikola's design and development teams had made significant progress on the vehicle, and the undisputed evidence shows it was in active development. Doc. 329-3, Ex. K (Babiarz Dep. at 109:12-19). Evidence cited in Ubben's motion demonstrates that during the first half of 2020, Nikola engaged and paid two separate design companies to build the Badger prototypes and a third company to help develop the Badger's battery packs. Doc. 352-2, Ex. FF (Babiarz Dep.at 43:21-47:14; 67:17-23); Doc. 329-5, Ex. T. Most notably, and contrary to Plaintiffs' allegations, by July 2020, production of the Badger prototype had already begun. Doc. 352-2, Ex. FF (Babiarz Dep. at 118:4-119:5). Plaintiffs point to no evidence to the contrary.

**FCEV Reservations.** Plaintiffs' theory that Nikola's reference to 14,000 non-binding orders was misleading because "78% [of] the reservations were for the Nikola One, which Nikola had abandoned by June 2020" is meritless for the reasons explained above. Since the Nikola One had *not* been abandoned, the inclusion of those reservations in Nikola's 14,000 tally was likewise not misleading.

Moreover, Plaintiffs do not dispute that investors and potential investors—including ValueAct itself *before* Ubben became a board member—understood that Nikola's reservation numbers were non-binding expressions of interest, the very fact Plaintiffs accuse Nikola of withholding. Ubben's Motion for Summary Judgment ("Mot.") at 20-21; Opp. at 16-17. Nor do Plaintiffs address Ubben's cited case, *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1119 (9th Cir. 1989), which held that a "fail[ure] to disclose that customers could cancel [] pre-shipment orders without penalty" was not misleading when that fact was "well understood within the investment community." Instead, Plaintiffs argue—contrary to the binding *Apple* decision—that how the market understood the reservations is irrelevant because falsity is "determined objectively." Opp. 13. But to demonstrate an actionable misrepresentation, Plaintiffs must prove that "a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018). Here, because reasonable investors understood the non-binding

nature Nikola's reservations, Plaintiffs have failed to raise a triable issue of fact as to the Form S-1 statements. *See* Mot. at 20-21.

### C. Plaintiffs Offer No Evidence of Ubben's Scienter

Far from the "significant probative evidence" of scienter required of a plaintiff at the summary judgment stage, *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980), Plaintiffs offer no requisite evidence that Ubben knew that any of the three alleged misrepresentations in Nikola's Forms S-1 were false or misleading.

#### 1. The Opposition Fails to Show a Triable Issue of Fact that Ubben Knew Any Facts Contradicting the Form S-1 Statements.

Plaintiffs' efforts to show scienter based merely on Ubben's status as a "lead director" who "attended board meetings . . . where the status of Nikola's vehicles was discussed" (Opp. 16) is not enough to create an issue of fact. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002) (granting summary judgment despite "defendants' 'hands-on' management style, [] interaction with other corporate officers and employees, [and] attendance at management and board meetings"). "A general discussion" about a subject is not evidence that Ubben was aware of facts specifically contradicting any of his challenged statements. *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1240 (S.D. Cal. 2010). A factfinder cannot simply assume that information contrary to the challenged statements was presented to Ubben "[w]ithout relying on impermissible speculation." *S.E.C. v. Garcia*, 2011 WL 6812680, at *14 (N.D. Ill. Dec. 28, 2011).[2]

Because Plaintiffs fail to offer evidence supporting their allegations of scienter as to any of the three challenged statements, summary judgment must be granted. *REMEC*,

---

[2] Trying to avoid the import of Ubben's lack of involvement in the preparation of the Forms S-1 and Nikola's product offerings, Plaintiffs cite an unpublished Fourth Circuit housing discrimination case. *See* Opp. 18 (citing *Wadley v. Park at Landmark, LP*, 264 F. App'x 279, 281 (4th Cir. 2008)). That case is irrelevant and, if anything, supports Ubben because summary judgment was granted based on lack of evidence of unlawful intent.

- 6 -

702 F. Supp. 2d at 1237 (summary judgment granted where "[n]one of t[he scienter] allegations [we]re supported by the proof presented").[3]

**Nikola One:** According to Plaintiffs, Nikola's statements about the Nikola One in its Forms S-1 were false because by June 2020 the Nikola One had been abandoned. Regardless of the truth or falsity of the statements about the Nikola One, Plaintiffs' opposition fails to identify evidence that Ubben "had reasonable grounds to believe material facts existed that were misstated or omitted." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984). Unlike other Defendants in this case who were members of management and who admitted they believed the Nikola One was not being actively pursued,[4] it is undisputed that Ubben was an outside director without involvement in Nikola's truck development or knowledge about its product offerings. *See* Doc. 329, ¶ 10.

None of Plaintiffs' arguments creates a triable issue. First, Plaintiffs assert that Ubben was told that Nikola's product offerings "mostly exists just on paper" and that Nikola was "at risk of producing ZERO trucks in 2021." Opp. 11, 16. But this was true of *all* of Nikola's product offerings, not just those that Plaintiffs claim were abandoned. Nikola was upfront about this fact in its public filings, acknowledging that it was "an early stage company with a history of losses," that "deliveries of [its] trucks [were] not expected to begin until 2021. . . and may occur later," and that "[e]ven if [Nikola was] able to successfully develop and sell or lease [its] trucks, there can be no assurance that they will be commercially successful." Doc. 111-1 at 20 (June 2020 Form S-1 at 7); *id.* at 307 (July

---

[3] Plaintiffs rely on their partial victory at the motion to dismiss stage and assert that "the bar is lower . . . at summary judgment." Opp. 15. Not so. While Plaintiffs' cited cases observe that the PSLRA's "strong inference" language governing motions to dismiss does not change the substantive elements of their claims, these same courts note that this discrepancy is "because a court must presume a plaintiff's factual allegations to be true at the pleading stage, but [not] at successive stages of the litigation." *Epstein v. Itron, Inc.*, 993 F. Supp. 1314, 1324 n.9 (E.D. Wash. 1998).

[4] *See, e.g.*, Doc. 341 at 1 ("Russell testified he knew the Nikola One had been abandoned by the time he joined Nikola in 2019"); *id.* at 2 (Plaintiffs quoting an email to Brady stating he did not "think it makes sense to talk about the initial Nikola One prototype" given the "understand that we will focus on the Nikola Two").

- 7 -

2020 Form S-1 at 7); *id.* at 641 (June 2020 Form 10-K at 38). Thus, Ubben's knowledge that Nikola was a pre-revenue company without a proven track record of developed products is no evidence that Ubben knew the Nikola One had been abandoned.

Second, Plaintiffs point to a board meeting presentation from October 2019 in which the Nikola Tre and Nikola Two were listed in a section titled "Summary of Nikola Product Offerings" while the Nikola One was not. They likewise point to an April 2020 presentation which stated that Nikola would be "[u]tiliz[ing] EDAGs engineering services" for the Nikola Two. There is no evidence that Ubben reviewed, much less placed any significance on these statements. In any event, the fact that the board was briefed on the Nikola Two and Nikola Tre (which had shorter production timelines) is irrelevant to whether Ubben knew that the Forms S-1's listing of the Nikola One as Nikola's "Class 8 sleeper cab" was false or misleading. As Nikola's head of business development Elizabeth Fretheim explained, as of the date Nikola went public, Nikola had an expected production timeline for the Nikola One—the sleeper cab version of Nikola's Class 8 truck. Doc. 329-3, Ex. J at 125:5-12. Plaintiffs' evidence that the board was informed that Nikola would focus on the Nikola Two and Nikola Tre is not evidence that Ubben was informed that the Nikola One had been *abandoned*, which is the basis for Plaintiffs' claim of falsity.[5]

**Badger**: Even if Plaintiffs were correct that Badger was just a computer rendering (and it was not), there is no evidence that Ubben was aware of that fact or otherwise knew that the statements in the Forms S-1 about the Badger were purportedly inaccurate. Plaintiffs argue that Ubben "knew that the Badger did not exist," but they oddly say that is because he was told at a board meeting that the Badger would be "discontinued" without an OEM partner. Opp. 17. This information would suggest that the Badger *did* exist; by definition, a product that does not exist cannot be "discontinued." Plaintiffs are not

---

[5] Attempting to complicate this undisputed fact, Plaintiffs irrelevantly observe that Nikola "would have to []redesign[]" the Nikola One sleeper truck, namely to make the truck smaller before it could be commercially viable. Opp. at 16. But Plaintiffs offer no evidence that Ubben knew this fact. And moreover, these contemplated cosmetic changes do not equate to the Nikola One being abandoned.

- 8 -

claiming a misrepresentation based on the fact that the Badger would not reach production without an OEM partner. Nor could they, because the Forms S-1 made it perfectly clear that Nikola would not "develop production plans for the Badger unless [it] enter[ed] into a strategic partnership with an established OEM." Doc. 111-1 at 91 (June Form S-1 at 77). Plaintiffs' theory of falsity as it relates to the Badger is not about the need for an OEM partner, but rather about the status of the Badger as a Nikola product at all.

Plaintiffs' Opposition identifies no evidence that Ubben was ever told that the Badger was not real. Plaintiffs claim that Ubben knew "no prototypes had been built" (Opp. 17-18), but cite no evidence in support of this claim. And Plaintiffs ignore Ubben's cited evidence that the Board was informed (1) that the Badger was an ongoing development program that would only be "discontinue[d]" in the event than an OEM partner could not be identified, and (2) that Nikola had spent significant funds engaging with third parties ITAL and Technosports in order to help further the Bager's development and prototype builds. Doc. 329-3 at 38. In the face of these undisputed board updates suggesting that the Badger was a real product, Ubben's scienter cannot be established.

**FCEV Reservations:** Plaintiffs highlight that a ValueAct analyst doing diligence prior to Ubben's investment observed that Nikola's reservations were not binding and "mentally adjusted" the number to account for some of the purchases not coming to fruition. Opp. 17. This is not evidence of scienter, because the Forms S-1 explicitly stated that the reservations were "non-binding" and that Nikola itself believed that only a "portion of the existing backlog will be converted to binding orders." Doc. 111-1 at 95 (June Form S-1 at 81); *id.* at 382 (July Form S-1 at 81). That a ValueAct analyst reached the same conclusion as Nikola's own SEC disclosure—that it was unlikely that "every single pre-order [would] result in[] a sale" (Opp. at 17)—is a far cry from evidence that Ubben knew that the Forms S-1's references to 14,000 orders might be misleading.

Notably, Plaintiffs' purported evidence of Ubben's knowledge of Nikola's reservations comes from ValueAct's diligence based on *public data* obtained before Ubben became a director and before he was privy to nonpublic information. Unlike the other

- 9 -

remaining Defendants, Ubben was not involved in or informed about the makeup of Nikola's reservations, *e.g.*, that they were "predominantly for the Nikola One [and that] many were not for hydrogen fuel cell or battery electric vehicles at all." Opp. 11. *Compare* Dkt. 341 at 18 (Russell familiar with the status of Nikola's reservations); *id*. at 19 (Brady receiving memo calling attention to the fact that the majority of Nikola reservations were for Nikola One). Nor do Plaintiffs set forth any evidence that Ubben was aware of Milton's social media posts purportedly falsely stating that the reservations were binding.

Absent evidence that Ubben knew the reservations were allegedly misleading, Plaintiffs' Opposition makes clear that they are really accusing Ubben of *negligence* by "[n]ot really. . . focus[ing] so much . . . on details around pre-orders." Opp. 17. But whether it was reasonable for Ubben to pay no attention to Nikola's statements about reservations is besides the point. "Mere negligence—even head-scratching mistakes—does not amount to fraud." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1103 (9th Cir. 2021); *see also Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1569–70 (9th Cir. 1990).

### 2. Ubben's Sales of Nikola Stock Rebut Scienter.

Stock sales suggest scienter only when they are "dramatically out of line with prior trading practices at times calculated to maximize personal benefit from undisclosed inside information." *In re Apple Computer Sec. Litig.*, 886 F.2d at 1117. The evidence is undisputed that, like the defendants in *Apple* who were granted summary judgment, Ubben "retained the great bulk of [his Nikola] holdings," rebutting scienter. *Id*. at 1118. Plaintiffs' assertion that Ubben "admit[ted] that he sold nearly as much as he was legally permitted to trade during the relevant period" (Opp. 19) is unsupported and false. Ubben sold 1.4 million shares of stock in August 2020, representing less than 7% of his total Nikola holdings and only 28% of the 5 million PIPE shares not subject to the Lock-Up Agreement.[6] By contrast, in Plaintiffs' cited case, the individuals all sold between 88% to

---

[6] Plaintiffs state that whether Ubben's sales violated the Lock-Up agreement is "beside the point," but then spend nearly a page trying to argue that the Lock-Up agreement was violated. Opp. 18-19. Even if Plaintiffs were correct that "the scope of the Lock-Up is an open question of legal interpretation," what is *undisputed* is that Ubben

- 10 -

100% of their shares. *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003). Moreover, Plaintiffs admit that it is "undisputed" that Ubben's personal and family funds were exclusively placed in the Spring NM co-invest vehicle, a fund which **did not sell a single share of Nikola stock during the class period**. *See* Doc. 345 ¶ 21. This undercuts any notion that Ubben's sales were designed to maximize personal profits before an expected price decline.

Plaintiffs do not even attempt to engage with Ubben's uncontroverted testimony—supported by contemporaneous documentary evidence—that the reason for his sale of a small percentage of Nikola stock was to rebalance the Spring Fund portfolio to address Nikola's then-outsized position in the fund. Plaintiffs' own cited case recognizes that trades do "not support a finding of scienter as a matter of law" when they are adequately explained by factors unrelated to fraud. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1066-67 (9th Cir. 2000) (district court properly excluded at trial evidence of insider sales).

Finally, Plaintiffs make much of an email from a junior ValueAct analyst that Plaintiffs allege was sent "just before" Ubben sold the shares (it was actually more than two months prior). Opp. 3. This email made the rather anodyne observation that stock prices of SPACs tend to decrease following the company going public. Doc. 345 ¶ 19. Even if Ubben read this analysis and gave it any weight—and there is no evidence he did—it would suggest at most his sales were motivated by a general knowledge of SPAC stock price performance, not by knowledge that Nikola's stock price was inflated by fraud.

3. Plaintiffs' Kitchen-Sink Scienter Arguments Fail.

Absent evidence Ubben knew the challenged statements were false, Plaintiffs resort to irrelevant and baseless arguments, none of which creates a triable issue of fact.

First, Plaintiffs argue that Ubben "orchestrat[ed] Milton being the face of Nikola"

---

consulted with the general counsel for Nikola—Ubben's counterparty to the Lock-Up Agreement—who approved the sales and confirmed in no uncertain terms that "[s]hares acquired by Value Act in the PIPE should not be subject to the lock-up." Doc. 329-3, Exs. M, N; *see* Doc. 345 ¶ 22. The evidence is thus conclusive that Ubben subjectively believed the sales were permitted, which is all that matters from a scienter perspective.

- 11 -

and "ha[d] Milton blitz social media to develop a retail following for the stock." Opp. 2. As the Court previously recognized, that a director "wanted Nikola to continue to gain retail investors for the purposes of funding its growth" does not suggest that the purpose was to "defraud[] those retail investors." Doc. 157 at 33. This rings especially true for Ubben who, unlike Brady and Russell, did not follow Milton on social media and was not aware that Milton was prone to "misstate[] facts." *Compare* Doc. 341 at 2-6, 16.

Second, Plaintiffs argue that Ubben "admitted to lying to the media" by telling a reporter in September 2020 that it was "[his] fault" because he "pushed [Milton]" for Nikola to go public. Opp. 20. But this remark is not one of Plaintiffs' challenged statements. Plaintiffs try to use this admission as a "gotcha," but overplay their hand. As Ubben clarified at his deposition, Ubben *did* fault himself for Nikola's post-SPAC performance, since he supported the merger. The part of Ubben's September 2020 statement he testified was "probably" untrue was that he "pushed" Milton to go public since, on reflection, Ubben recognized "Trevor's going to do what Trevor's going to do." Doc. 345-2 at 44. This reflects, at worst, a fiduciary taking responsibility for a business decision at a stressful time for the company, and is not indicative of fraudulent intent.

### D. **Plaintiffs Offer No Evidence that Ubben's Allegedly False or Misleading Statements Caused Plaintiffs' Loss.**

As explained in Ubben's motion, Plaintiffs cannot show that Ubben's three challenged statements caused their loss, rather than a host of other influences on Nikola's stock, including the other alleged misrepresentations by other defendants not attributable to Ubben. Contrary to Plaintiffs' argument, the issue is not one of "starkly contrasting conclusions in competing expert reports" (Opp. 21), because Plaintiffs' expert admitted that he never attempted to disaggregate the impact of Ubben's alleged misrepresentations. Doc. 329 ¶ 34; *see In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 288 (S.D.N.Y. 2023).

Plaintiffs argue that they need to set forth evidence only that the alleged *corrective disclosure* impacted the stock price, not Ubben's alleged misrepresentations. Opp. 22. But loss causation requires "a causal connection between *the material misrepresentation* and

the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (emphasis added). Because Plaintiffs have indisputably failed to meet their "burden [] to present sufficient evidence from which a reasonable jury could conclude that th[e] price declines [] resulted from" disclosures relating to Ubben's challenged statements, summary judgment must be granted. *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 551 (N.D. Ill. 2007).[7]

### E. Plaintiffs' Section 20(a) Claim Fails.

Plaintiffs' Opposition makes clear that they seek to hold Ubben liable for *Milton's* alleged misrepresentations. Opp. 23. But Plaintiffs point to no evidence that Milton—Nikola's CEO and executive chairman—was controlled by anyone, much less a single outside director. Moreover, the Court has already limited Ubben's potential Section 20(a) liability to the three alleged misstatements in the S-1s. Doc. 157 at 40. And the Court specifically rejected Plaintiffs' efforts to hold Ubben liable for Milton's misstatements when it dismissed the Rule 10b-5(a) and (c) scheme claims against Ubben. Doc. 157 at 33-34. Plaintiffs cannot resuscitate these claims through the backdoor of Section 20(a).

Plaintiffs' asserted evidence of Ubben's "control" of Nikola also misses the mark. Plaintiffs claim that Ubben "led Nikola's board" (Opp. 24), but the cited portion of their separate statement offers nothing in support of this claim. Doc. 345 ¶¶ 39, 40. And Plaintiffs' accusations that Ubben "organized" several of Milton's media appearances and "authorized" a purchase of electrolyzers (Opp. 24) are nothing more than recycled allegations from Plaintiffs' Complaint which the Court already rejected as a basis for liability. Doc. 126 at 23-29. Finally, while Ubben did sign the June and July 2020 Forms S-1, where a director does not "control the content" of those signed filings, a 20(a) claim is inappropriate. *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008).

//

//

---

[7] In *Motorola*, there was only one category of alleged misrepresentation alleged against all the defendants. *See id.* at 524. Thus, unlike here, there was no need by Plaintiffs to disaggregate the effect of any one alleged misrepresentation.

**III.   CONCLUSION**

For the foregoing reasons, Defendant Jeffrey Ubben respectfully requests that the Court **GRANT** his motion for summary judgment.

1 | DATED this 18th day of December, 2025.

2 |                                   SNELL & WILMER L.L.P.

4 |                           By:    *s/ Patrick A. Tighe*
                                     Jennifer Hadley Catero
5 |                                  Patrick A. Tighe
                                     One East Washington Street, Suite 2700
6 |                                  Phoenix, AZ 85004

7 |                                  and

8 |                                  AKIN GUMP STRAUSS HAUER & FELD LLP
9 |                                  Neal R. Marder (Admitted *Pro Hac Vice*)
                                     Joshua A. Rubin (Admitted *Pro Hac Vice*)
10|                                  1999 Avenue of the Stars, Suite 600
                                     Los Angeles, CA 90067-6022

12|                                  M. Scott Barnard (Admitted *Pro Hac Vice*)
                                     Jessica Mannon (Admitted *Pro Hac Vice*)
                                     Tabitha Kempf (Admitted *Pro Hac Vice*)
13|                                  2300 N. Field Street, Suite 1800
                                     Dallas, TX 75201

15|                                  *Attorneys for Defendant Jeffrey Ubben*